## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EVC, Inc. t/a CORBETT & ASSOCIATES : 
n/k/a CORBETT & WILCOX, :
                  :
           Plaintiff, :
                  :
           v. :      Civil Action No. 06-549 CV
                  :
HARTFORD CASUALTY INSURANCE CO., :
                  :
           Defendant. :

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT HARTFORD
## CASUALTY INSURANCE COMPANY

Defendant Hartford Casualty Insurance Company ("Hartford"), by and through its attorneys, for its answer and affirmative defenses:

1.     Admits that Plaintiff seeks damages regarding the business liability insurance policy Hartford sold to Plaintiff, but denies the remaining averments contained in paragraph 1 of the Complaint.

2.     Admits that Plaintiff seeks a declaratory judgment as to Hartford's obligations under the business liability insurance policy Hartford sold to Plaintiff, but denies the remaining averments contained in paragraph 2 of the Complaint.

3.     Lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 3 of the Complaint, and therefore denies the averments and demands strict proof thereof at trial.

4.     Admits the averments contained in paragraph 4 of the Complaint, except denies all averments regarding service through the Insurance Commissioner of the State of Delaware as conclusions of law to which no response is required.

5.    The averments set forth in paragraph 5 of the Complaint are conclusions of law to which no response is required.

6.    With respect to the averments set forth in paragraph 6 of the Complaint, Hartford respectfully refers the Court to the business insurance policy identified as Policy No. 44 SBA TE6003 (the "Insurance Policy") for the contents thereof. A copy of the Insurance Policy is attached as Exhibit A.

7.    With respect to the averments contained in paragraph 7 of the Complaint, Hartford respectfully refers the Court to the Insurance Policy for the contents thereof. The remainder of Paragraph 7 is denied.

8 & 9.    With respect to the averments set forth in paragraphs 8 and 9 of the Complaint, Hartford respectfully refers the Court to the Complaint filed in lawsuit filed in the Delaware Court of Chancery captioned <u>Wilcox & Fetzer Ltd. v. Corbett & Wilcox</u>, C.A. No. 2037-N (the "Underlying Litigation") for the contents thereof. A copy of the Complaint in the Underlying Litigation is attached as Exhibit B.

10.    Admits the averments contained in paragraph 10 of the Complaint.

## COUNT I - BREACH OF CONTRACT

11.    Repeats and restates its responses to the preceding paragraphs as though fully set forth.

12 through14.    The averments set forth in paragraphs 12 through 14 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Hartford denies the averments contained in paragraphs 12 through 14. To the contrary, Hartford appropriately and timely denied coverage under the exclusions set forth in the Insurance Policy. The Insurance Policy explicitly excludes coverage for all personal and advertising injuries "[a]rising out of any violation of any intellectual property rights, such as…trade

2

name…or other designation of origin or authenticity." The Underlying Litigation unambiguously arises out of the Plaintiff's use of the name "Wilcox" in Plaintiff's trade name. As stated in the Complaint in the Underlying Litigation: "This is an action brought to enjoin Defendants' [EVC's] ongoing use of the name 'Wilcox' in the firm name Corbett & Wilcox in a manner which deprives Plaintiff of the valuable trademark and trade name rights it owns…."

## COUNT II - DECLARATORY JUDGMENT

15.    Repeats and restates its responses to the preceding paragraphs as though fully set forth.

16.    Denies the averments set forth in paragraph 16 of the Complaint and refers the Court to the Insurance Policy.

17.    The averments set forth in paragraph 17 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Hartford denies the averments contained in paragraph 17 and refers to its responses contained in paragraphs 12 through 14.

18.    The averments set forth in paragraph 18 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Hartford denies the averments contained in paragraph 18.

19.    The averments set forth in paragraph 19 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Hartford denies the averments contained in paragraph 19.

## COUNT III - BAD FAITH

20.    Repeats and restates its responses to the preceding paragraphs as though fully set forth.

21.     Denies the averments set forth in paragraph 21 of the Complaint. To the contrary, as set forth in paragraphs 12 through 14, Hartford appropriately and timely denied coverage under the Insurance Policy regarding the Underlying Litigation that the claim fell under the Insurance Policy's exclusion for actions arising out of any violation of intellectual property rights.

WHEREFORE, Hartford respectfully requests that judgment be entered in its favor and against plaintiff, together with such other relief, including attorneys' fees and costs, as the Court deems just and proper.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action or any claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims should be barred or reduced to the extent that they failed to mitigate their alleged damages.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff is barred from relief to the extent that any harm allegedly suffered by Plaintiff was the proximate result of Plaintiff's own conduct and not of any act or omission on the part of Hartford.

WHEREFORE, Hartford respectfully requests that judgment be entered in its favor and against plaintiff, together with such other relief, including attorneys' fees and costs, as the Court deems just and proper.

**BALLARD SPAHR ANDREWS &
INGERSOLL, LLP**


BY: /s/ William M. Kelleher
William M. Kelleher, Esquire (No. 3961)
919 N. Market Street, 12th Floor
Wilmington, DE  19801-3034
Phone: (302) 242-4465
Facsimile: (302) 252-4466

Attorney for Defendant,
Hartford Casualty Insurance Company

Dated: September 11, 2006


Of counsel:

John C. Grugan, Esquire
James C. Carroll, Esquire
**Ballard Spahr Andrews & Ingersoll, LLP**
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
215-665-8500

# EXHIBIT A



Date: __August 15, 2006_____

Based on a review of electronic and hardcopy records, I certify that the attached
is a true and correct representation of our records for

Policy:__44 sba te6003_____  ._____
     Hartford policy number

Effective: _09/01/2005_____ through __09/01/2006_____
     Effective Date              Expiration date

Issued by: ____Hartford Casualty Insurance Company _____
          Writing company

[ ] I am unable to certify the above due to missing information from the policy.
The following form or endorsement is missing and can not be replicated.

_Danielle Marlin_____
Name
Professional Support Department

__San Antonio_____
Hartford Office Location

USAA
P.O. Box 659726
San Antonio, TX 78265-3015
Toll Free 888 242 1430
Facsimile 210 732 2977

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGE

This endorsement changes the policy effective on the Inception Date of the policy unless another date is indicated below:

**Policy Number:** 44 SBA TE6003    DW                    COPY

**Named Insured and Mailing Address:**    CORBETT & ASSOCIATES

1400-1402 FRENCH STREET
WILMINGTON            DE 19801

**Policy Change Effective Date:** 09/01/05        Effective hour is the same as stated in the
Declarations Page of the Policy.

**Policy Change Number:** 001

**Agent Name:**    HARRY DAVID ZUTZ/PHS
**Code:**        430017

**POLICY CHANGES:**
IN CONSIDERATION OF NO CHANGE IN PREMIUM, IT IS AGREED THAT:
ENDT. NO.: 001 IS CANCELLED

**Form SS 12 11 03 92T** Printed in U.S.A.        **Page 001**
**Process Date:** 03/28/06
                                    **Policy Expiration Date:** 09/01/06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGE

This endorsement changes the policy effective on the Inception Date of the policy unless another date is indicated below:

**Policy Number:** 44 SBA TE6003   DW                    COPY

**Named Insured and Mailing Address:**     CORBETT & ASSOCIATES

                                           1400-1402 FRENCH STREET
                                           WILMINGTON           DE 19801

**Policy Change Effective Date:** 09/01/05        **Effective hour is the same as stated in the Declarations Page of the Policy.**

**Policy Change Number:** 001

**Agent Name:**    HARRY DAVID ZUTZ/PHS
**Code:**          430017

**POLICY CHANGES:**
ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.
                        THIS IS NOT A BILL.

NO PREMIUM DUE AS OF POLICY CHANGE EFFECTIVE DATE

NAMED INSURED IS CHANGED TO READ:     EVC INC T/A CORBETT & WILCOX

PRO RATA FACTOR: 1.000

THIS ENDORSEMENT DOES NOT CHANGE THE POLICY EXCEPT AS SHOWN.

**Form SS 12 11 03 92T** Printed in U.S.A.          Page 001
**Process Date:** 03/23/06                              **Policy Expiration Date:** 09/01/06

22351

*0100044TE60030206

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGE

This endorsement changes the policy effective on the Inception Date of the policy unless another date is indicated below:

**Policy Number:** 44 SBA TE6003    DW                    COPY

**Named Insured and Mailing Address:**        CORBETT & ASSOCIATES

1400-1402 FRENCH STREET
WILMINGTON          DE 19801

**Policy Change Effective Date:** 03/05/06        **Effective hour is the same as stated in the Declarations Page of the Policy.**

**Policy Change Number:** 002

**Agent Name:**    HARRY DAVID ZUTZ/PHS
**Code:**        430017

**POLICY CHANGES:**
ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.
                    THIS IS NOT A BILL.

NO PREMIUM DUE AS OF POLICY CHANGE EFFECTIVE DATE

NAMED INSURED IS CHANGED TO READ:    EVC INC T/A CORBETT & WILCOX

PRO RATA FACTOR: 0.493

THIS ENDORSEMENT DOES NOT CHANGE THE POLICY EXCEPT AS SHOWN.

Form SS 12 11 03 92T  Printed In U.S.A.        Page 001
Process Date: 03/28/06                    Policy Expiration Date: 09/01/06



# IMPORTANT NOTICE TO POLICYHOLDERS

To help your insurance keep pace with increasing costs, we have increased your amount of insurance . . . giving you better protection in case of either a partial, or total loss to your property.

If you feel the new amount is not the proper one, please contact your agent or broker.

# TABS

## Total Account Billing System

**You will soon receive your first bill from The Hartford. Please do not make any payment _until_ you receive your bill.**

---

**Your insurance policy is in force as of the effective date shown on the policy.**

---

## Here's how you will be billed:

o   Your total premium is displayed on the front of your policy. You will be billed according to the appropriate plan under which you are enrolled.

o   Please pay the exact amount of the "minimum due" shown on your bill, or you may choose to pay your total premium in full. (Please note: A small service fee is added to each billing installment. To save service fees, you may prepay future installments if you wish.)*

o   To avoid late payment fees, please pay the "minimum due" by the due date shown.*

*   **Service and late payment fees do not apply in all states.**

o   If you are on the installment billing plan and a credit or additional premium is due as the result of a change you make to your policy, the credit or premium will be spread equally over your future billing installments.

o   For your convenience, more than one policy may be combined on a single monthly bill. This means you can add eligible policies to your billing account at any time. Just ask your agent for details.

o   For questions you have about your coverages or bill plan options, be sure to contact your Independent Agent who represents The Hartford.

_If you have any questions about your bill, please call The Hartford's Customer Billing Service Center toll-free number reflected on your bill._

### Again, thank you for insuring with The Hartford.

Form 100722 6th Rev.    Printed in U.S.A.



# IMPORTANT NOTICE TO OUR POLICYHOLDERS

THANK YOU FOR RENEWING YOUR POLICY WITH THE HARTFORD. WITH THIS NOTICE WE ARE PROVIDING YOU ONLY WITH THE DECLARATIONS PAGE, WHICH OUTLINES YOUR COVERAGES, AND WITH THOSE POLICY FORMS, NOTICES, AND BROCHURES WHICH ARE DIFFERENT FROM THOSE WHICH WE PROVIDED WITH YOUR PREVIOUS POLICY. <u>YOU SHOULD RETAIN ALL OF THESE DOCUMENTS AND THOSE PROVIDED WITH YOUR PREVIOUS POLICY INDEFINITELY</u> SO THAT YOU WILL HAVE A COMPLETE SET OF POLICY FORMS AT ALL TIMES FOR YOUR REFERENCE.

IF YOU HAVE QUESTIONS, OR IF AT ANY TIME YOU NEED COPIES OF ANY OF THE FORMS LISTED ON YOUR POLICY, PLEASE CALL YOUR HARTFORD AGENT OR BROKER, OR THE OFFICE OF THE HARTFORD IDENTIFIED ON YOUR POLICY, AS APPROPRIATE.

Form G-3187-0

# Hartford Spectrum

Business Insurance Policy



**Form SS 00 01 04 93**   Printed in U.S.A.

03
60
TE
SBA

This **Spectrum Policy** consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the insurance company of The Hartford Insurance Group shown below.

**INSURER:**   HARTFORD CASUALTY INSURANCE COMPANY
              HARTFORD PLAZA, HARTFORD, CT 06115
COMPANY CODE: 3

Policy Number:  44 SBA TE6003  DW

## SPECTRUM POLICY DECLARATIONS                    COPY



**THE HARTFORD**

21736

**Named Insured and Mailing Address:**        CORBETT & ASSOCIATES
(No., Street, Town, State, Zip Code)

                    1400-1402 FRENCH .STREET
                    WILMINGTON        DE  19801

**Policy Period:**        **From**   09/01/05     **To**    09/01/06    1    YEAR
12:01 a.m., Standard time at your mailing address shown above. **Exception:** 12 noon in Maine, Michigan, New Hampshire, North Carolina.

**Name of Agent/Broker:** HARRY DAVID ZUTZ/PHS
**Code:**  430017

**Previous Policy Number:** 44 SBA TE6003

**Named Insured is:** ASSOCIATION

**Audit Period:** NON-AUDITABLE

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

---

**TOTAL ANNUAL PREMIUM IS:**          $2,535
IN RECOGNITION OF THE MULTIPLE COVERAGES INSURED WITH THE HARTFORD, YOUR
POLICY PREMIUM INCLUDES AN ACCOUNT CREDIT.

---

Countersigned by        *Margie K. Ape*

                    Authorized Representative              07/25/05
                                                          Date

**Form SS 00 02 11 93 T** Printed in U.S.A. (NS)        Page 001 (CONTINUED ON NEXT PAGE)
**Process Date:** 07/25/05                              Policy Expiration Date: 09/01/06

## SPECTRUM POLICY DECLARATIONS  (Continued)
POLICY NUMBER: 44 SBA TE6003

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location: 001      Building: 001

1400-1402 FRENCH STREET
WILMINGTON        DE  19801

**Description of Business:**
STENOGRAPHIC & SECRETARIAL SERVICES

Deductible:  $  500 PER OCCURRENCE

BUILDING AND BUSINESS PERSONAL PROPERTY     LIMITS OF INSURANCE

  BUILDING

    REPLACEMENT  COST                    $    402,700

  BUSINESS PERSONAL PROPERTY

    REPLACEMENT COST                     $    192,900

  PERSONAL PROPERTY OF OTHERS

    REPLACEMENT COST                     NO COVERAGE

  MONEY  AND  SECURITIES

    INSIDE  THE  PREMISES                $    10,000
    OUTSIDE  THE  PREMISES               $     5,000

LOSS PAYEE:  'A' APPLIES
LOSS PAYEE:  'B' APPLIES

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 44 SBA TE6003

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location: 001      Building: 001

PROPERTY OPTIONAL COVERAGES APPLICABLE      LIMITS OF INSURANCE
        TO THIS LOCATION

SUPER STRETCH
FORM: SS 04 74
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES.  A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

LIMITED FUNGI, BACTERIA OR VIRUS      $     50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA
EXPENSE COVERAGE FOR:              30 DAYS

Form SS 00 02 11 93 T Printed in U.S.A. (NS)      Page 003 (CONTINUED ON NEXT PAGE)
Process Date:  07/25/05              Policy Expiration Date: 09/01/06

## SPECTRUM POLICY DECLARATIONS  (Continued)
POLICY NUMBER: 44 SBA TE6003

PROPERTY OPTIONAL COVERAGES APPLICABLE     LIMITS OF INSURANCE
      TO ALL LOCATIONS

BUSINESS  INCOME AND EXTRA EXPENSE
COVERAGE                           12 MONTHS  ACTUAL LOSS  SUSTAINED
COVERAGE  INCLUDES THE FOLLOWING
COVERAGE  EXTENSIONS:

ACTION OF CIVIL AUTHORITY:           30 DAYS
EXTENDED BUSINESS  INCOME:          30 CONSECUTIVE  DAYS


EQUIPMENT BREAKDOWN  COVERAGE
  COVERAGE  FOR DIRECT PHYSICAL  LOSS
  DUE TO:
    MECHANICAL  BREAKDOWN,
    ARTIFICIALLY  GENERATED  CURRENT
    AND STEAM EXPLOSION

THIS ADDITIONAL  COVERAGE  INCLUDES
THE FOLLOWING EXTENSIONS
   HAZARDOUS  SUBSTANCES            \$   25,000
   CFC REFRIGERANTS                \$   25,000

MECHANICAL  BREAKDOWN  COVERAGE  ONLY
APPLIES WHEN BUILDING  OR BUSINESS
PERSONAL PROPERTY  IS SELECTED  ON
THE POLICY

CYBERFLEX BUSINESS  INCOME
FORM SS 40 08
WAITING  PERIOD:  12 HOURS

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 44 SBA TE6003

| BUSINESS LIABILITY | LIMITS OF INSURANCE |
|---|---|
| LIABILITY AND MEDICAL EXPENSES | $1,000,000 |
| MEDICAL EXPENSES - ANY ONE PERSON | $    10,000 |
| PERSONAL AND ADVERTISING INJURY | $1,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU ANY ONE PREMISES | $   300,000 |
| AGGREGATE LIMITS PRODUCTS-COMPLETED OPERATIONS | $2,000,000 |
| GENERAL AGGREGATE | $2,000,000 |

EMPLOYMENT PRACTICES LIABILITY
COVERAGE: FORM SS 09 01

| EACH CLAIM LIMIT | $     5,000 |
|---|---|
| DEDUCTIBLE - EACH CLAIM LIMIT NOT APPLICABLE | |
| AGGREGATE LIMIT | $     5,000 |

RETROACTIVE DATE: 09012003

This **Employment Practices Liability Coverage** contains claims made coverage. Except as may be otherwise provided herein, specified coverages of this insurance are limited generally to liability for injuries for which claims are first made against the insured while the insurance is in force. Please read and review the insurance carefully and discuss the coverage with your Hartford Agent or Broker.

The Limits of Insurance stated in this Declarations will be reduced, and may be completely exhausted, by the payment of "defense expense" and, in such event, The Company will not be obligated to pay any further "defense expense" or sums which the insured is or may become legally obligated to pay as "damages".

BUSINESS LIABILITY OPTIONAL
COVERAGES

UMBRELLA LIABILITY - SEE
SCHEDULE ATTACHED

EMPLOYEE BENEFITS LIABILITY
COVERAGE: FORM SS 04 13
  CLAIMS-MADE
  RETROACTIVE DATE: 09/01/2003
  EACH CLAIM          $1,000,000
  AGGREGATE           $2,000,000

CYBERFLEX COVERAGE
FORM SS 40 26

21738

*21000441TE60030106

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: 44 SBA TE6003

```
LOSS PAYEE 'A':                    WILMINGTON  TRUST  CO
FORM SS 12 12                      RODNEY SQUARE NORTH
                                   WILMINGTON,  DE.  19801
        PROPERTY:                  MORTGAGEE


LOSS PAYEE 'B':                    CANON FINANCIAL SERVICES,  INC
FORM SS 12 12                      200 COMMERCE SQ BLVD, PO BOX 370
                                   BURLINGTON,  NJ.  08016
        PROPERTY:                  LOSS PAYEE & ADD'L INSURED FOR
                                   LEASED EQUIPMENT
```

**Form Numbers of Forms and Endorsements that apply:**

```
SS 00 01 04 93      SS 00 05 06 96      SS 00 07 10 02      SS 00 08 04 01
SS 84 15 03 00      SS 01 41 03 92      SS 04 13 03 92      SS 04 19 06 96
SS 04 30 03 00      SS 04 39 10 02      SS 04 41 04 01      SS 04 42 03 00
SS 04 44 09 93      SS 04 45 10 96      SS 04 46 10 02      SS 04 47 10 02
SS 04 74 09 01      SS 04 78 04 01      SS 04 80 03 00      SS 04 86 03 00
SS 40 26 04 01      IH 10 01 09 86      SS 05 12 03 92      SS 05 47 09 01
SS 09 01 09 00      SS 09 42 07 99      SS 12 12 03 92      SS 40 08 04 01
SS 40 18 03 00      SS 40 93 10 02      SS 50 19 06 03      SS 50 30 06 03
SX 80 01 06 97      SS 83 76 06 03
```

Policy Expiration Date:  09/01/06

# COMMON POLICY CONDITIONS

**Form SS 00 05 06 96**  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1996

QUICK REFERENCE - SPECTRUM POLICY

DECLARATIONS
and
COMMON POLICY CONDITIONS

I.    **DECLARATIONS**

Named Insured and Mailing Address
Policy Period
Description and Business Location
Coverages and Limits of Insurance

II.    **COMMON POLICY CONDITIONS**                    Beginning on Page

| | | |
|---|---|---|
| A. | CANCELLATION | 1 |
| B. | CHANGES | 1 |
| C. | CONCEALMENT, MISREPRESENTATION OR FRAUD | 2 |
| D. | EXAMINATION OF YOUR BOOKS AND RECORDS | 2 |
| E. | INSPECTIONS AND SURVEYS | 2 |
| F. | INSURANCE UNDER TWO OR MORE COVERAGES | 2 |
| G. | LIBERALIZATION | 2 |
| H. | OTHER INSURANCE - PROPERTY COVERAGE | 2 |
| I. | OTHER INSURANCE - BUSINESS LIABILITY | 2 |
| J. | PREMIUMS | 3 |
| K. | TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US | 3 |
| L. | TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY | 4 |
| M. | SUSPENSION IN COVERAGE | 4 |

Form SS 00 05 06 96  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1996



# COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

      Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for, within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. Such refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. If the first Named Insured cancels this policy, we will retain no less than $100 of the premium.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized on behalf of all insureds to agree with us on changes in the terms of this policy. If the terms

Copyright, Hartford Fire Insurance Company, 1996

COMMON POLICY CONDITIONS

are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by you at any time as it relates to this policy. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

## D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

## E. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. Such inspections are not safety inspections. We do not undertake any duty to provide for the health or safety of any person. And we do not represent or warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

## F. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## G. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

## H. OTHER INSURANCE - PROPERTY COVERAGE

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## I. OTHER INSURANCE - BUSINESS LIABILITY

If other valid and collectible insurance is available to the insured for a loss we cover under Business Liability Coverage Form, our obligations are limited as follows:

a. **Primary Insurance**

   This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary, Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

   (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of the Business Liability Coverage Form.

   When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Form SS 00 05 06 96  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1996

COMMON POLICY CONDITIONS

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## J. PREMIUMS

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

a. Paid to us prior to the anniversary date; and

b. Determined in accordance with paragraph 2. above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

1. Applicable to Property Coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   a. Prior to a loss to your Covered Property.

   b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

      (1) Someone insured by this insurance;

      (2) A business firm:

         (a) Owned or controlled by you; or

         (b) That owns or controls you; or

      (3) Your tenant.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers. This will not restrict your insurance.

2. Applicable to Business Liability Coverage:

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

Copyright, Hartford Fire Insurance Company, 1996

COMMON POLICY CONDITIONS

## L. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## M. SUSPENSION IN COVERAGE

This provision is applicable only to the Equipment Breakdown Additional Coverage in the Special Property Coverage Form.

Suspension

When any equipment covered by the Equipment Breakdown Additional Coverage is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance provided by the Equipment Breakdown Additional Coverage against loss or damage to that equipment.

We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us.   If we suspend your insurance, you will get a pro rata refund of premium.   But the suspension will be effective even if we have not yet made or offered a refund.

Our President and Secretary have signed this policy. The Declarations page has also been countersigned by our duly authorized agent.

Brian S. Becker, Secretary

David Zwiener, President

Form SS 00 05 06 96 Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1996

# SPECIAL PROPERTY COVERAGE FORM

© 2002, The Hartford

# QUICK REFERENCE

### SPECIAL PROPERTY COVERAGE FORM
### READ YOUR POLICY CAREFULLY

**SPECIAL PROPERTY COVERAGE FORM**                            Beginning on Page

**A.    COVERAGES**                                                1

    Covered Property                                          1
    Property Not Covered                                      1
    Covered Causes of Loss                                   2
    Limitations                                              2
    Additional Coverages                                     3
    Coverage Extensions                                      11

**B.    EXCLUSIONS**                                               13

**C.    LIMITS OF INSURANCE**                                      15

**D.    DEDUCTIBLES**                                              16

**E.    PROPERTY LOSS CONDITIONS**                                 17

    Abandonment                                              17
    Appraisal                                                17
    Duties in the Event of Loss or Damage                    17
    Legal Action Against Us                                  17
    Loss Payment                                             17
    Recovered Property                                       19
    Resumption of Operations                                 19
    Vacancy                                                  19

**F.    PROPERTY GENERAL CONDITIONS**                              20

    Control of Property                                      20
    Mortgage Holders                                         20
    No Benefit to Bailee                                     20
    Policy Period, Coverage Territory                        20

**G.    PROPERTY DEFINITIONS**                                     21

Form SS 00 07 10 02

© 2002, The Hartford

# SPECIAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to the SECTION **G** - PROPERTY DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property as used in this policy, means the following types of property for which a Limit of Insurance is shown in the Declarations.

a. **Buildings,** meaning only building(s) and structure(s) described in the Declarations, including:

(1) Completed additions;

(2) Permanently installed:

    (a) Fixtures;

    (b) Machinery; and

    (c) Equipment;

(3) Outdoor fixtures;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Building Glass, meaning glass that is part of a building or structure;

(6) Personal property owned by you that is used to maintain or service the buildings or structures on the premises, including:

    (a) Fire extinguishing equipment;

    (b) Outdoor furniture;

    (c) Floor coverings; and

    (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(7) If not covered by other insurance:

    (a) Additions under construction, alterations and repairs to the buildings or structures;

    (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "scheduled premises", used for making additions, alterations or repairs to the buildings or structures.

b. **Business Personal Property** located in or on the building(s) described in the Declarations at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", including:

(1) Property you own that is used in your business;

(2) Tools and equipment owned by your employees, which are used in your business operations.

(3) Property of others that is in your care, custody or control.

(4) Your use interest in tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    (a) Made a part of the building or structure you occupy but do not own; and

    (b) You acquired or made at your expense but cannot legally remove.

(5) Leased personal property for which you have contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

### 2. Property Not Covered

Covered Property does not include:

a. Aircraft, automobiles, motor trucks and other vehicles subject to motor vehicle registration;

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

b. Currency, "money," bullion, numismatic and philatelic property and bank notes or "securities" except as provided in the Additional Coverages or Optional Coverages. Lottery tickets held for sale and postage stamps in current use and having face value are not "securities".

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas, including their lead in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other then those held for sale or sold but not delivered), all except as provided in the:

   (1) Outdoor Property Coverage Extension; or

   (2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. The cost to research, replace or restore the information on "valuable papers and records", except as provided in the Coverage Extensions or Optional Coverages.

h. "Data" and "software" which exists on electronic "media" including the cost to research, replace or restore them, except as provided in the Additional Coverages or Optional Coverages.

g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy.

3. **Covered Causes of Loss**

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

a. Excluded in Section **B., EXCLUSIONS;** or

b. Limited in Paragraph **A.4.** Limitations; that follow.

4. **Limitations**

a. We will not pay for loss of or damage to:

   (1) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Additional Coverage for "Money" and "Securities".

   (2) Property that has been transferred to a person or to a place outside the "scheduled premises" on the basis of unauthorized instructions.

   (3) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (b) The loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

b. Pets and animals are covered only if:

   (1) They are inside the building; and

   (2) They are owned by others and boarded by you, or owned by you and held for sale or sold but not delivered.

   And then we will pay **only if** they are killed, or their destruction is made necessary by any of the "specified causes of loss" or they are stolen.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

   (1) $2,500 for furs, fur garments and garments trimmed with fur;

   (2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item; and

   (3) $2,500 for patterns, dies, molds and forms.

   (4) $500 for stamps, lottery tickets held for sale and letters of credit.

d. Unless specifically provided under a separate endorsement and with a specific Limit of Insurance indicated in the Declarations, we will not pay for loss or damage to "perishable stock" caused by or resulting from:

   (1) A change in temperature or humidity resulting from"

      (a) Mechanical breakdown or failure of:

         (i) Stationary heating plants; or

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

(ii) Refrigerating, cooling, or humidity control apparatus or equipment;

(b) Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires; or

(c) Complete or partial failure of electric power on your "scheduled premises".

(2) Contamination by refrigerant.

5. **Additional Coverages**

a. **Accounts Receivable**

(1) This additional coverage applies only when a Limit of Insurance for Business Personal Property is shown in the Declarations.

We will pay up to $10,000 in any one occurrence, to cover:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss of or damage to your records of accounts receivable at the "scheduled premises".

(2) Paragraph **A.3.,** Covered Causes of Loss, and Section **B.,** Exclusions, do not apply to this Additional Coverage except for:

(a) Paragraph **B.1.c.,** Governmental Action;

(b) Paragraph **B.1.d.,** Nuclear Hazard; and

(c) Paragraph **B.1.f.,** War and Military Action.

(3) Additional Exclusions

(a) Dishonest acts by you, anyone else who has an interest in the records of accounts receivable, or your or their employees or authorized representatives, or anyone

entrusted with the records of accounts receivable, whether or not acting alone or in collusion with other persons or occurring during the hours of employment.

But this exclusion does not apply to a carrier for hire.

(b) Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money," "securities," or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(c) Bookkeeping, accounting or billing errors or omissions.

(d) Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct loss or damage caused by lightning.

(e) Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(f) Unauthorized instructions to transfer property to any person or to any place.

(4) We will not pay for loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

b. **Collapse**

(1) With respect to Buildings:

(a) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building cannot be occupied for its intended purpose;

(b) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

(c) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

(d) A building that is standing or any part of a building that is standing is

© 2002, The Hartford

**SPECIAL PROPERTY COVERAGE FORM**

not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

(2) We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

(a) The "specified causes of loss" or breakage of building glass, all only as insured against in this policy;

(b) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(c) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(d) Weight of people or personal property;

(e) Weight of rain that collects on a roof; and

(f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

(3) We will not pay for loss of or damage to the following types of property, if otherwise covered in this policy, under items **(b), (c) (d), (e)** and **(f)** unless the loss or damage is a direct result of the collapse of a building:

awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

The criteria set forth in Paragraphs **(1)(a)** through **(2)(a)** do not limit the coverage otherwise provided under this Additional Coverage for the Causes of Loss listed in Paragraph **(2)(a), (2)(d),** and **(2)(e)**

(4) If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if

(a) the collapse was caused by a cause of loss listed in Paragraph **(2)(a)** through **(2)(f)** of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph **(3)** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(4)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(5) This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this policy.

**c. Debris Removal**

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical loss or damage; or

(b) The end of the policy period.

(2) The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct loss of or damage to Covered Property; plus

(b) The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

(3) This Additional Coverage does not apply to costs to:

(a) Extract "pollutants" from land; or

(b) Remove, restore or replace polluted land or water.

© 2002, The Hartford

**d. Equipment Breakdown**

We will pay for loss or damage caused by or resulting from risks of direct physical loss due to:

(1) Mechanical Breakdown, including rupture or bursting caused by centrifugal force.

(2) Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

(3) Explosion of steam boilers, steam piping, steam engines or steam turbines owned or leased by you, or operated under your control.

(4) Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such boilers or equipment.

(5) Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

Coverage Limitation

The following coverage limitation applies only to loss or damage caused by or resulting from (1) through (5) above:

Hazardous Substances

We will pay for the cost, not to exceed $25,000, to repair or replace Covered Property because of contamination by a hazardous substance. This includes the expenses to clean up or dispose of such property. Hazardous substance means any substance other than ammonia that has been declared by a government agency to be hazardous to health.

Cost in this limitation means those beyond what would have been required had no hazardous substance been involved.

This limit is part of and not in addition to the limits of insurance for Covered Property.

**Coverage Extensions**

The following coverage extension applies only to loss or damage caused by or resulting from (1) through (5) above:

(1) CFC Refrigerants

We will pay for the additional costs, up to $25,000, to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances.

This means the additional expense to do the least expensive of the following:

(a) Repair the damaged property and replace any lost CFC refrigerant;

(b) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(c) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

(2) Defense

If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control directly caused by Equipment Breakdown we will either:

(a) Settle the claim or "suit"; or

(b) Defend you against the claim or "suit," but keep for ourselves the right to settle it at any point.

(3) Supplementary Payments

We will pay, with respect to any claim or "suit" we defend:

(a) All expenses we incur;

(b) The cost of bonds to release attachments, but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds;

(c) All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings up to $100 a day because of time off from work;

(d) All costs taxed against you in any "suit" we defend;

(e) Prejudgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

(f) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declarations.

These payments will not reduce the Limit of Insurance shown in the Declarations.

**(4) Business Income and Extra Expense Extension**

The Business Income and Extra Expense Additional Coverage is extended to provide coverage for a tenant who has a loss of income from the lack of heating, cooling or power as a result of equipment breakdown to mechanical, electrical or pressure equipment of the building owner.

**Additional Condition**

Bankruptcy

The bankruptcy or insolvency of you or your estate will not relieve us of any obligation under this Additional Coverage.

**Additional Definition** "Suit" means a civil proceeding and includes:

**(1)** An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

**Jurisdictional Inspections:**

If any boiler or pressure vessel requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**e.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $15,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**f.  Fire Extinguisher Recharge**

We will pay to cover your expenses for recharge of your hand fire extinguishers when they are emptied while fighting fire.

**g.  Forgery**

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent. This includes written instruments required in conjunction with any credit, debit, or charge card issued to you or any "employee" for business purposes.

**(2)** If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable expenses that you incur and pay in that defense.

**(3)** We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(a)** Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

**(b)** Counterfeit United States or Canadian paper currency.

**(1)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $5,000, unless a higher Limit of Insurance is shown in the Declarations.

**h.  Glass Expense**

We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing replacing window displays.

**i.  Increased Cost of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the

© 2002, The Hartford

increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in paragraphs (3) through (9) of this Additional Coverage.

(3) The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with

(5) Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(6) The most we will pay under this Additional Coverage, for each described building insured under this policy, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage for each damaged building is $10,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as possible after the loss or damage, not to exceed two years. We may extend this

period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such terms would conflict with the provisions of this Additional Coverage.

(9) The Costs addressed in the Loss Payment Property Loss Condition do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**j. Lock and Key Replacement**

We will pay up to $1,000 in any one occurrence for the re-keying of locks or the repair or replacement of locks at "scheduled premises" following the theft or the attempted theft of keys by burglars.

**k. Money and Securities**

(1) We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises", or in transit between any of these places, resulting directly from:

(a) Theft, meaning any act of stealing;

(b) Disappearance; or

(c) Destruction.

(2) In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(a) Resulting from accounting or arithmetical errors or omissions;

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

(b) Due to the giving or surrendering of property in any exchange or purchase; or

(c) Of property contained in any "money"-operated device unless a continuous recording instrument in the device records the amount of "money" deposited in it.

(3) The most we will pay for loss in any one occurrence is:

(a) The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

(i) In or on the "scheduled premises"; or

(ii) Within a bank or savings institution; and

(b) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

(4) All loss:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(5) You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**l. Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the "scheduled premises" if the discharge, dispersal, seepage, migration, release or escape of the 'pollutants' is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(1) The date of direct physical loss or damage; or

(2) The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**m. Preservation of Property**

If it is necessary to move Covered Property from the "scheduled premises" to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 10 days after the property is first moved.

**n. Theft Damage to Building**

This Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for such damage.

We will pay for loss or damage directly resulting from theft, burglary or robbery (except loss by fire or explosion) to a building:

(1) You occupy, including personal property that is used to maintain or service the building; or

(2) Containing covered personal property if you are legally liable for such loss or damage.

But we will not pay for such loss of or damage to property that is away from the "scheduled premises".

**o. Water Damage, Other Liquid, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage except as provided in the Equipment Breakdown Additional Coverage. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

**p. Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary

© 2002, The Hartford

suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from any Covered Cause of Loss.

We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

Business Income means the:

(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

(2) Continuing normal operating expenses incurred, including payroll.

**q. Extra Expense**

We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

Extra Expense means expense incurred:

(1) To avoid or minimize the suspension of business and to continue "operations":

(a) At the "scheduled premises"; or

(b) At replacement premises or at temporary locations, including:

(i) Relocation expenses; and

(ii) Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.

(2) To minimize the suspension of business if you cannot continue "operations".

(3) (a) To repair or replace any property; or

(b) To research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **k.**, Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**Limitation:** This Extra Expense Coverage does not apply to:

(1) Any deficiencies in insuring building or business personal property; or

(2) Any expense related to any recall of products you manufacture, handle or distribute.

**r. Civil Authority**

(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "Scheduled Premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "Scheduled Premises".

(2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:

(a) When access is permitted to your "Scheduled Premises"; or

(b) 30 consecutive days after the order of the civil authority.

**s. Extended Business Income**

(1) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

Ends on the earlier of:

(a) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in (1)(a) above.

Loss of Business Income must be caused by direct physical loss or damage at the "scheduled premises" caused by or resulting from any Covered Cause of Loss.

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

(2) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; and

(b) That a part or all of the "scheduled premises" is rendered untenantable as a result of a covered cause of loss.

t. **Business Income to Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume"operations", in whole or in part, by using any other available:

(a) Source of Materials; or

(b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent Property means property owned by others whom you depend on to:

(a) Deliver materials or services to you or to others for your account. But services does not include:

(i) Water, communication, or power services; or ·

(ii) Any type of web site, communication or Internet service.

(b) Accept your products or services;

(c) Manufacture your products for delivery to your customers under contract for sale; or

(d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) The coverage period for Business Income under this Additional Coverage:

(a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

(b) Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(6) The Business Income coverage period, as stated in Paragraph **(5)**, does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects "pollutants."

(7) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

u. **Tenant Glass**

The Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for such damage.

We will cover loss to glass, which is in your care, custody or control and for which the lease holds you responsible. The glass must be part of a building described in the Declarations or at a location that would be included in Coverage Extension b. Newly Acquired or Constructed Property.

The most that we will pay for each location under this Additional Coverage is $25,000.

v. **Leasehold Improvements**

If your lease is cancelled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property at the location in which you are a tenant, and you

© 2002, The Hartford

cannot legally remove Tenant Improvements and Betterments we will extend Business Personal Property coverage to apply to the unamortized value of Tenants Improvement and Betterment that remains and you were forced to abandon.

The most we will pay in any one occurrence for loss under this Additional Coverage is $25,000.

**w. Lease Assessment**

Your Business Personal Property is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical damage caused by or resulting from a Covered Cause of Loss to building property as agreed to in your written lease agreement.

We will pay no more than $2,500 in any one occurrence for this Additional Coverage.

**6. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises".

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows:

**a. Arson Reward**

In the event that a covered fire loss was the result of an act of arson, we will reimburse you up to $10,000 for rewards you pay for information leading to convictions for that act of arson.

This is additional insurance. The deductible does not apply to these reimbursements.

**b. Data and Software**

We will pay up to $10,000 in any one occurrence to cover your costs to research, replace or restore "data" or "software" which exists or existed on electronic or magnetic "media" that is lost or damaged as a result of direct physical loss or damage to "computer equipment" at the "scheduled premises".

**c. Garages, Storage Buildings and Other Appurtenant Structures**

You may extend the insurance that applies to Building to apply to garages, storage buildings and other appurtenant structures, except outdoor fixtures and paved surfaces, at the "scheduled premises".

**SPECIAL PROPERTY COVERAGE FORM**

The most we will pay for loss or damage under this Extension is 10% of the Limits of Insurance for Building shown in the Declarations but not more than $50,000 at each "scheduled premises".

You may extend the insurance that applies to Business Personal Property in garages, storage buildings and other appurtenant structures at the "scheduled premises".

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance for Business Personal Property shown in the Declarations but not more than $5,000 at each "scheduled premises".

**d. Newly Acquired or Constructed Property**

(1) You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the "scheduled premises"; and

(b) Buildings you acquire at locations other than the "scheduled premises", intended for:

(i) similar use as the Building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than $500,000 at each premises.

(2) You may extend the insurance that applies to Business Personal Property to apply to:

(a) property at any premises you acquire or construct;

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed building, or

(c) Business Personal Property that you newly acquire, located at the "scheduled premises".

This extension does not apply to:

(a) Personal Property that you temporarily acquire in the course of installing or performing work on such property;

(b) Personal property of others that you temporarily acquire in the course of your wholesaling activity.

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

The most we will pay for loss or damage under this Extension is $250,000 at each premises.

(3) You may extend the insurance that applies to Business Income and Extra Expense to apply to newly acquired or constructed locations.

The most we will pay under this Extension is $50,000.

(4) If Covered Property is moved to a new premises endorsed onto this policy, from a "scheduled premises" being endorsed off this policy, the Limit of Insurance applicable to that vacated premises will apply proportionately to both premises as the property is moved.    This coverage applies to up to 90 days after the move begins or upon completion of the move, whichever is sooner.

(5) Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

(a) This policy expires;

(b) 90 days after you acquire or begin to construct the property, or

(c) You report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

e. **Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor:

(1) Fences, signs (other than signs attached to buildings), trees, shrubs and plants including debris removal expense, caused by or resulting from any of the following causes of loss:

(a) Fire;

(b) Lightning;

(c) Explosion;

(d) Riot or Civil Commotion; and

(e) Aircraft.

The most we will pay for loss or damage under this Extension is $10,000 but not more than $1,000 for any one tree, shrub or plant.

(2) Radio and television antennas (including satellite dishes) including debris removal expense, caused by or resulting from any of the following causes of loss:

(a) Fire;

(b) Lightning;

(c) Windstorm;

(d) Ice, Snow, Sleet or Hail;

(e) Explosion;

(f) Riot or Civil Commotion; and

(g) Aircraft.

The most we will pay for loss or damage under this Extension is $2,000.

f. **Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners, or your employees.

The most we will pay for loss or damage under this Extension is $2,500 at each "scheduled premises".

g. **Property Off Premises**

(1) You may extend the insurance that applies to Building to apply to such property that is temporarily at a location you do not own, lease or operate. This Extension applies only if loss or damage is caused by a Covered Cause of Loss. This Extension does not apply to property in course of transit.

The most we will pay under this is $5,000.

(2) You may extend the insurance that applies to Business Personal Property to apply to such property, other than "money" and "securities" while:

(a) In the course of transit and more than 1,000 feet from the "scheduled premises". Property must be in or on, but not permanently attached or installed in, a motor vehicle you own, lease or operate while between points in the coverage territory; or

(b) Temporarily at a premises you do not own, lease or operate.

(c) At a premises owned, leased, operated or used by you and the Business Personal Property is a vending machine.

(d) In or on, but not permanently attached to or installed in, motor vehicles operated by your employees in the course of your business operations.

(e) On temporary public display, or while being used at fairs, exhibitions, expositions, or trade

© 2002, The Hartford

shows or while in transit to and from these temporary sites.

The most we will pay under this Extension is $2,500.

**h. Valuable Papers and Records - Cost of Research**

You may extend the insurance that applies to Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged "valuable papers and records", for which duplicates do not exist. The most we will pay under this Extension is $10,000 at each "scheduled premises". For "valuable papers and records" not at the "scheduled premises", the most we will pay is $5,000.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance or Law**

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   except as otherwise provided under the Additional Coverage A.5.h., Increased Cost of Construction

   **b. Earth Movement**

   (1) Earthquake, including any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

   But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay

for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if loss or damage by fire or volcanic action results, we will pay for that resulting damage.

   Volcanic action means direct loss or damage resulting from the eruption of a volcanic when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust, or particulate matter; or

   (c) Lava flow.

   (d) All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust, or particulate matter. That does not cause direct physical loss or damage to Covered Property.

   **c. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

   **d. Nuclear Hazard**

   Nuclear reaction or radiation, or radioactive contamination however caused.

   But if loss or damage by fire results, we will pay for that resulting loss or damage.

   **e. Power Failure**

   The failure of power or other utility service supplied to the "scheduled premises", however caused, if the failure occurs away from the "scheduled premises".   Failure includes lack of sufficient capacity and reduction in supply necessary to maintain normal operations.

   But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

   **f. War and Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mud flow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

h. **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

2. We will not pay for loss or damage caused by or resulting from:

a. **Consequential Losses:** Delay, loss of use or loss of market.

b **Smoke, Vapor, Gas:** Smoke, vapor or gas from agricultural smudging or industrial operations.

c. **Miscellaneous Types of Loss:**

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, mold, spore or other animals;

(6) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

d. **Frozen Plumbing:** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

e. **Dishonesty:** Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

f. **False Pretense:** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g. **Exposed Property:** Rain, snow, ice or sleet to personal property in the open, except as provided in the Coverage Extension for Outdoor Property.

h. **Collapse:** Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the "scheduled premises", we will pay for that resulting loss or damage.

i. **Pollution:** We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss"

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

results, we will pay for the resulting loss or damage caused by the "specified cause of loss."

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

   a. **Weather conditions:** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

   b. **Acts or Decisions:** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   c. **Negligent Work:** Faulty, inadequate or defective:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or

      (4) Maintenance of part or all of any property on or off the "scheduled premises".

4. **Business Income and Extra Expense Exclusions.** We will not pay for:

   a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

      (1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

      (2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

   b. Any other consequential loss.

5. **Equipment Breakdown Exclusions**

   We will not pay for loss or damage caused by or resulting from:

   a. Breakdown of any structure, foundation, cabinet, compartment or air supported structure or building;

   b. Breakdown of any insulating or refractory material;

   c. Breakdown of any sewer piping, any underground vessels or piping, any piping forming a part of a sprinkler system or water piping other than boiler feed water piping, boiler condensate, return piping or water piping forming a part of a refrigerating or air conditioning system;

   d. Breakdown of any vehicle, dragline, excavation or construction equipment;

   e. Breakdown of any equipment manufactured by you for sale;

   f. Any of the following tests:

      (a) A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

      (b) An insulation breakdown test of any type of electrical equipment.

**C. LIMITS OF INSURANCE**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $5,000 per sign in any one occurrence.

3. The limits applicable to:

   a. Coverage Extensions; and

   b. The following Additional Coverages:

      (1) Accounts Receivable,

      (2) Fire Department Service Charges,

      (3) Fire Extinguisher Recharge, and

      (4) Pollutant Clean Up and Removal

      are in addition to the Limits of Insurance.

4. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

   a. Preservation of Property; or

   b. Debris Removal; but if:

      (1) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

      (2) The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage.

      We will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

5. **Building Limit - Automatic Increase**

   a. The Limit of Insurance for Building(s) will automatically increase annually by 4%.

   b. The amount of increase will be:

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

(1) The Limit of Insurance for Building that applied on the most recent of the policy inception date, policy anniversary date, or any other policy change amending the Building limit, times

(2) The percentage of annual increase shown above, expressed as a decimal (.04); times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Building, divided by 365.

Example: The applicable Limit of Insurance for Building is $100,000. The annual percentage increase is 4%. The number of days since the beginning of policy period (or last policy change) is 146.

The amount of increase is:

$100,000 X .04 X 146 divided by 365 = $1,600

6. **Business Personal Property Limit - Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if all Limits of Insurance shown in the Declarations for Business Personal Property is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

**D. DEDUCTIBLES**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. A $250 deductible applies to the following Glass Coverages:

a. Building Glass

b. Glass Expense

c. Tenant Glass

3. Except as listed below, the deductible applicable to Coverage Extensions and

Additional Coverages in the Special Property Coverage form is $100.

a. No deductible applies to the following Coverage Extensions and Additional Coverages:

(1) Fire Extinguisher Recharge;

(2) Preservation of Property;

(3) Fire Department Service Charge;

(4) Business Income, Extra Expense, Civil Authority and Extended Business Income;

(5) Arson Reward; and

(6) Lock and Key Replacement

b. The deductible applicable to the following Additional Coverages is $250:

(1) "Money" and "Securities"; and

(2) Personal Effects

c. The deductible applicable to the following Additional Coverages is the policy deductible which is shown in the Declarations of this policy

(1) Equipment Breakdown;

(2) Increased Cost of Construction; and

(3) Leasehold Improvements unless a separate Deductible is shown in the Declarations.

4. The deductible applicable to the following coverages is $100 whether the coverage is provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a STRETCH endorsement;

a. Accounts Receivable;

b. Employee Dishonesty;

c. Outdoor Signs;

d. Glass;

e. Temperature Change; and

f. "Valuable Papers and Records"

unless a separate Deductible is shown in the Declarations.

5. No Deductible is applicable to the following coverages whether the coverage is provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a STRETCH endorsement:

a. ERISA - Employee Dishonesty

b. Fine Arts.

6. Each deductible shall be applied separately but only to the coverage specified, and the total deductible for all losses in any one occurrence

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

shall be the highest deductible amount that applies to this occurrence.

## E. PROPERTY LOSS CONDITIONS

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss.

If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3. Duties In The Event Of Loss Or Damage

You must see that the following are done in the event of loss of or damage to Covered Property:

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the loss or damage. Include a description of the property involved.

**c.** As soon as possible, give us description of how, when and where the loss or damage occurred.

**d.** Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limits of Insurance.

**e.** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**f.** Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

**g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

**h.** Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**i.** Cooperate with us in the investigation or settlement of the claim.

**j.** Resume part or all of your "operations" as quickly as possible.

### 4. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

### 5. Loss Payment

In the event of loss or damage covered by this policy:

**a.** At our option we will either:

(1) Pay the value of lost or damaged property, as described in paragraph **d.** below;

(2) Pay the cost of repairing or replacing the lost or damaged property, plus any reduction in value of repaired items;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

**b.** We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We will determine the value of Covered Property as follows:

(1) At replacement cost (without deduction for depreciation), except as provided in (2) through (7) below.

(a) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost

© 2002, The Hartford

basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(b) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

(c) We will not pay more for loss or damage on a replacement cost basis than the least of:

(i) The cost to replace, on the same premises, the lost or damaged property with other property of comparable material and quality and used for the same purpose; or

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(2) If the **Actual Cash Value - Buildings** option applies, as shown in the Declarations, paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

(a) Manuscripts;

(b) Works of art, antiques or rare articles, including etchings, pictures, statuary, objects of marble, bronzes, porcelains and bric-a-brac.

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and Betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing, if others pay for repairs or replacement.

(6) "Valuable Papers and Records", at the cost of:

(a) Blank materials for reproducing the records; and

(b) Labor to transcribe or copy the records.

(7) "Money" and "Securities":

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

The value of United States Government Internal Revenue taxes and custom duties and refundable state and local taxes paid or fully determined on the following property held for sale will not be considered in determining the value of Covered Property:

(a) Distilled spirits;

(b) Wines;

(c) Rectified products; or

(d) Beer.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of

© 2002, The Hartford

lost or damaged property if other than you. If we pay the owners, such payment will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn statement of loss, if:

(1) You have complied with all of the terms of this policy; and

(2) (a) We have reached agreement with you on the amount of loss, or

(b) An appraisal award has been made.

h. The following condition applies to any loss payment for Extra Expense:

We will deduct from the total Extra Expense to be paid:

(1) The salvage value that remains of any property bought for temporary use during the Period of Restoration, once business operations are resumed:

and

(2) Any Extra Expense that is paid for by other insurance.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**7. Resumption of Operations**

In the event of loss or damage at the "scheduled premises" you must resume all or part of your "operations" as quickly as possible.

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "scheduled premises" or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

a. **Description of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**9. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

a. We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1) Vandalism;

(2) Sprinkler leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Water damage;

(5) Theft; or

(6) Attempted theft.

b. With respect to Covered Causes of Loss other than those listed in a.(6) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

## F. PROPERTY GENERAL CONDITIONS

1. **Control of Property**

   Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

   The breach of any condition of this Coverage Form at one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

2. **Mortgage Holders**

   a. The term mortgage holder includes trustee.

   b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

   c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

      (1) Pays any premium due under this policy at our request if you have failed to do so;

      (2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

      All of the terms of this policy will then apply directly to the mortgage holder.

   e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

      (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

      (2) The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

      At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event,

   your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   f. If we cancel this policy, we will give written notice to the mortgage holder at least:

      (1) 10 days before the effective date of cancellation if we cancel for your non payment of premium; or

      (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

3. **No Benefit to Bailee**

   No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

4. **Policy Period, Coverage Territory**

   Under this form:

   a. We cover loss or damage commencing:

      (1) During the policy period shown in the Declarations; and

      (2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

      But we do not cover loss or damage that is also covered by a preceding policy.

   b. The coverage territory is:

      (1) The United States of America (including its territories and possessions);

      (2) Puerto Rico; and

      (3) Canada.

5. Additional Conditions

   The following conditions apply to paragraph **A.5.u.**, Forgery Additional Coverage:

   a. We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

   b. You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

   c. The Coverage Territory is revised to cover loss you sustain anywhere in the world.

© 2002, The Hartford

Form SS 00 07 10 02

SPECIAL PROPERTY COVERAGE FORM

## G. PROPERTY DEFINITIONS

1. "Computer" means a programmable electronic device that can store, retrieve and process "data".

2. "Computer Equipment" means "computers", "peripheral devices", "media", and manuals that are purchased to be used in conjunction with hardware and "software".

3. "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

4. "Data" means information or facts stored in a "computers" memory, on "software" or on "media".

5. "Finished Stock" means stock you have manufactured.

   "Finished Stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

6. "Manager" means a person serving in a directorial capacity for a limited liability company.

7. "Media" means the magnetic material used solely with the "computer" or "peripheral device" upon which "software" or "data" is stored, such as tapes or disks.

8. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

9. "Money" means:

   a. Currency, coins and bank notes whether or not in current use; and

   b. Travelers checks, registered checks and money orders held for sale to the public.

10. "Operations" means the type of your business activities occurring at the "scheduled premises" and tenantability of the "scheduled premises".

11. "Period of Restoration" means the period of time that:

    a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the "scheduled premises", and

    b. Ends on the date when the property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

    "Period of Restoration" does not include any increased period required due to enforcement of any law that:

    a. Regulates the construction, use or repair, or required the tearing down of any property; or

    b. Regulates the prevention, control, repair, clean up or restoration of environmental damage.

       The expiration date of this policy will not cut short the "period of restoration".

12. "Peripheral Device" means any physical unit used to operate the "computer' that cannot be used for purposes other than as part of the computers system, such as tape or disk drives, printers, or modems.

13. "Perishable Stock" means personal property:

    a. Maintained under controlled conditions for its preservation; and

    b. Susceptible to loss or damage if the controlled conditions change.

14. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

15. "Scheduled Premises" means any premises listed by location address in the Scheduled Premises section of the Declarations.

16. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets except Lottery Tickets, revenue and other non-postage stamps whether or not in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue;

    but does not include "money."

17. "Software" means instructions or programs that are stored on "media" and which instruct the hardware as to how to process "data".

18. "Specified Causes of Loss" means the following:

    Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

action of water on limestone or dolomite. It does not include the cost of filling sinkholes.

b. Falling objects does not include loss of or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

19. "Suspension" means:

a. The partial or complete cessation of your business activities; and

b. That a part or all of the "scheduled premises" is rendered untenantable as a result of a covered cause of loss.

20. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" and "securities", "data" and "software" or the materials on which the "data" and "software" is recorded.

© 2002, The Hartford

# BUSINESS LIABILITY COVERAGE FORM

**Form SS 00 08 04 01**

© 2001, The Hartford

# QUICK REFERENCE
## BUSINESS LIABILITY COVERAGE FORM
## READ YOUR POLICY CAREFULLY

BUSINESS LIABILITY COVERAGE FORM

Beginning on Page

**A.    COVERAGES**
Business Liability                                           1
Medical Expenses                                            1
Professional Services Coverages                             1
Incidental Malpractice Coverage                            2
Coverage Extension - Supplementary Payments                2
                                                            3

**B.    EXCLUSIONS**
                                                            4

**C.    WHO IS AN INSURED**
                                                            9

**D.    LIABILITY AND MEDICAL EXPENSES
        LIMITS OF INSURANCE**
                                                           12

**E.    LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**      13

1.   Bankruptcy                                            13

2.   Duties In The Event of Occurrence, Claim or Suit      13

3.   Financial Responsibility Laws                         14

4.   Legal Action Against Us                               14

5.   Separation of Insureds                                14

6.   Unintentional Failure To Disclose Hazards             14

7.   Other Insurance – Primary Additional Insured          14

**F.    OPTIONAL COVERAGES**                                    15

Additional Insureds                                        15

**G.    LIABILITY AND MEDICAL EXPENSES DEFINITIONS**            17

Form SS 00 08 04 01



# BUSINESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the stock insurance company member of THE HARTFORD providing this insurance.

The word "insured" means any person or organization qualifying as such under Section C. - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section G. - Liability And Medical Expenses Definitions.

In consideration of the payment of the premium when due, and:

a.  In reliance upon the statements made in the Declarations; and

b.  Subject to the Limits Of Insurance, Exclusions, Definitions, Conditions and all other terms of this policy, including those modified, replaced by or added by endorsements we issue forming a part of this policy,

we agree with you as follows:

## A. COVERAGES

### 1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)

**Insuring Agreement**

a.  We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section D. - Liability And Medical Expenses Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

b.  This insurance applies to:

(1) "Bodily injury" and "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(b) The "bodily injury" or "property damage" occurs during the policy period.

(2) "Personal and advertising injury" caused by an offense arising out of your business, but only if the offense is committed in the "coverage territory" during the policy period.

c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. MEDICAL EXPENSES

**Insuring Agreement**

a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations; provided that:

    (a) The accident takes place in the "coverage territory" and during the policy period;

    (b) The expenses are incurred and reported to us within three years of the date of the accident; and

    (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    (1) First aid administered at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

## 3. PROFESSIONAL SERVICES COVERAGES

When your operations include:

a. Optical or hearing aid establishments, Exclusion j. (7) in Section **B.** - EXCLUSIONS does not apply.

b. Retail druggist or drugstore, Exclusion **j.** (10) in Section **B.** - EXCLUSIONS does not apply.

c. Funeral director or funeral parlors, the following professional services coverage is added:

    (1) The Business Liability Coverage applies to damages arising out of professional services by you or your "employees" in the course of your mortician or funeral parlor business. Subject to the Limits of Insurance stated in Section D. of this form, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages for "bodily injury" including mental anguish, and "property damage" because of any:

        (a) Professional malpractice, error or omission in the

           (i) Removal;

           (ii) Handling;

           (iii) Disposition;

           (iv) Cremation;

           (v) Burial;

           (vi) Embalming; or

           (vii) Disinterment, of any "deceased human body";

           (viii) Conduct of any memorial service even though no "deceased human body" actually be present; and

           (ix) Injury to, destruction of or interference with the right of burial of a "deceased human body".

        (b) Professional service by any insured as a member of a:

           (i) Formal accreditation board; or

           (ii) A similar professional board or committee.

    (2) This insurance also applies to damages for "property damage" caused by an "occurrence" to:

        (a) Urns;

        (b) Caskets, linings or fittings;

        (c) Casket cases;

        (d) Crypts or mausoleums; or

        (e) Other facilities belonging to others that are in the care, custody or control of the insured and used for the purpose of burying or caring for a "deceased human body".

    (3) Only Exclusions **d., e., f.** and **k.** in Section **B.** - EXCLUSIONS apply to this coverage.

    **(4) Additional Definition**

        "Deceased human body" includes any part of a human body severed therefrom and ashes of a deceased human body after legal cremation.

## 4. INCIDENTAL MALPRACTICE COVERAGE

a. The definition of "bodily injury" in Section **G.** - LIABILITY AND MEDICAL EXPENSES DEFINITIONS is amended to include injury arising out of the rendering or failure to render medical or paramedical services to persons by any physician, dentist, nurse, emergency medical technician or paramedic who is employed by you to provide such services.

Form SS 00 08 04 01

b. Paragraph **2.a.(1)(d)** in Section **C.** - WHO IS AN INSURED does not apply to nurses, emergency medical technicians or paramedics referred to in **a.** above.

c. Paragraph **(1)** of Exclusion **e.** in Section **B.** - EXCLUSIONS does not apply to injury to the emotions or reputation of a person arising out of such services.

This Incidental Malpractice Coverage does not apply if you are engaged in the business or occupation of providing any services referred to in **a.** above.

## COVERAGE EXTENSION - SUPPLEMENTARY PAYMENTS

1. We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation of the claim or defense of the "suit", including actual loss of earnings up to $500 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   Any amounts paid under **a.** through **g.** above will not reduce the Limits of Insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

**BUSINESS LIABILITY COVERAGE FORM**

Not withstanding the provisions of paragraph 1.b.(b) of Section B. – EXCLUSIONS, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## B. EXCLUSIONS

1. **Applicable to Business Liability Coverage**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      (1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

      (2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

   b. **Contractual Liability**

      (1) "Bodily injury" or "property damage"; or

      (2) "Personal and advertising injury"

      for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

      This exclusion does not apply to liability for damages because of:

      (a) "Bodily injury", "property damage" or "personal and advertising injury" that the insured would have in the absence of the contract or agreement; or

      (b) "Bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the

execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for an indemnitee are deemed to be damages because of "bodily injury" or "property damage" provided:

   (i) Liability to such indemnitee for, or for the cost of, that indemnitee's defense has also been assumed in the same "insured contract", and

   (ii) Such attorney fees and litigation expenses are for defense of that indemnitee against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. **Workers Compensation and Similar Laws**

      Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   e. **Employer's Liability**

      "Bodily injury" to:

      (1) An "employee" of the insured arising out of and in the course of:

         (a) Employment by the insured; or

         (b) Performing duties related to the conduct of the insured's business, or

BUSINESS LIABILITY COVERAGE FORM

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out ·of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

BUSINESS LIABILITY COVERAGE FORM

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or

rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) An aircraft that is:

(a) Hired, chartered or loaned with a paid crew; but

(b) Not owned by any insured;

(2) A watercraft ashore on premises you own or rent; or

(3) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons for a charge.

This provision (3) applies to any person who, with your expressed or implied consent either uses or is responsible for use of a watercraft.

Provisions under paragraphs (1) and (3) of this Exclusion g. do not apply if the insured has any other insurance for "bodily injury" or "property damage" liability that would also be covered under those provisions, whether the other insurance is primary, excess, contingent or on any other basis. In that case, provisions (1) and (3) above do not provide any insurance.

(4) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(5) Liability assumed under any "insured contract" for the ownership, maintenance, or use of aircraft or watercraft; or

(6) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraphs f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incidental to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement.

j. Professional Services

"Bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;

(3) Supervisory, inspection, architectural or engineering activities;

(4) Medical, surgical, dental, x-ray or nursing services or treatment;

(5) Any health service or treatment;

(6) Any cosmetic or tonsorial service or treatment;

(7) Optical or hearing aid services including prescribing, preparation, fitting, demonstration, or distribution of ophthalmic products or hearing aid devices;

(8) Optometric services including but not limited to examination of the eyes and prescribing of ophthalmic lenses and exercises;

(9) Ear piercing services;

(10) Services in the practice of pharmacy.

(11) Computer consulting, design or programming services, including web site design.

## BUSINESS LIABILITY COVERAGE FORM

Paragraphs (4) and (5) of this exclusion do not apply to Incidental Malpractice coverage afforded under paragraph 4. in Section A. - COVERAGE.

k. Damage to Property

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Section D. - LIMITS OF INSURANCE.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3) and (4) of this exclusion do not apply to the use of elevators.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (4) of this exclusion does not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

BUSINESS LIABILITY COVERAGE FORM

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. "Personal and Advertising Injury":**

(1) Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of a criminal act committed by or at the direction of the insured;

(4) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

(5) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(6) Arising out of the wrong description of the price of goods, products or services;

(7) Arising out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of

(a) Copyright;

(b) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

(c) Title of any literary or artistic work;

(8) Arising out of an offense committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to paragraphs **a.**, **b.** and **c.** under the definition of "personal and advertising injury" in Section **G. – LIABILITY AND MEDICAL EXPENSES DEFINITIONS.**

For the purposes of this exclusion, placing an "advertisement" for or linking to others on your web site, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

(9) Arising out of an electronic chat room or bulletin board you host, own, or over which you exercise control;

(10) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers;

(11) Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

(12) Arising out of:

   (a) An "advertisement" for others on your web site;

   (b) Placing a link to a web site of others on your web site; or

   (c) Content from a web site of others displayed within a frame or border on your web site. Content includes information, code, sounds, text, graphics or images;

(13) Arising out of a violation of any anti-trust law; or

(14) Arising out of the fluctuation in price or value of any stocks, bonds or other securities.

Exclusions c. through i., k., l., m. and n. do not apply to damage by fire, lightning or explosion to premises rented to you. A separate Limit of Insurance applies to this coverage as described in Section D. - LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE.

**2.** **Applicable to Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** **Any Insured**

To any insured, except "volunteer workers".

**b.** **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** **Athletics Activities**

To a person injured while taking part in athletics.

**f.** **Products-Completed Operations Hazard**

Included with the "products-completed operations hazard".

**g.** **Business Liability Exclusions**

Excluded under Business Liability Coverage.

**h.** **War**

Due to war, whether or not declared, or any act or condition incidental to war. War includes civil war, insurrection, rebellion or revolution.

## C. WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your manager.

**d.** An organization other than a partnership or joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

Form SS 00 08 04 01

**BUSINESS LIABILITY COVERAGE FORM**

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

  (1) "Bodily injury" or "personal and advertising injury":

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

    (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

    (d) Arising out of his or her providing or failing to provide professional health care services.

  (2) "Property damage" to property:

    (a) Owned, occupied or used by; or

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

  (1) With respect to liability arising out of the maintenance or use of that property; and

  (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

e. Any "employee" of the insured while acting in the scope of his/her duties as a retail pharmacist, or optician or optometrist.

f. **Additional Insureds by Contract, Agreement or Permit**

Any person or organization with whom you agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this Business Liability Coverage Form, but only with respect to your operations, "your work" or facilities owned or used by you.

However, coverage under this provision does not apply:

  (1) Unless the written contract or agreement has been executed or a permit has been issued prior to the "bodily injury", "property damage" or "personal and advertising injury".

  (2) To any person or organization included as an insured under provision g. (Broad Form Vendors).

  (3) To any other person or organization shown in the Declarations as an Additional Insured.

**Coverage under this provision includes the following:**

  (1) When an **engineer, architect** or **surveyor** becomes an insured under provision 2.f., the following additional exclusion applies:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you including:

    (a) The preparing, approving, or failure to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; and

    (b) Supervisory, inspection, architectural or engineering activities.

  (2) When a **lessor of leased equipment** becomes an insured under provision 2.f., the following additional exclusions apply:

(a) To any "occurrence" which takes place after the equipment lease expires; or

(b) To "bodily injury" or "property damage" arising out of the sole negligence of the lessor.

(3) When **owners or other interests from whom land has been leased** become an insured under provision **2.f.,** the following additional exclusions apply:

(a) Any "occurrence" which takes place after you cease to lease that land; or

(b) Structural alterations, new construction or demolition operations performed by or on behalf of the owners or other interests from whom land has been leased.

(4) When **managers or lessors of premises** become an insured under provision **2.f.,** the following exclusions apply:

(a) Any "occurrence" which takes place after you cease to be a tenant in that premises: or

(b) Structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessors of the premises.

g. **Additional Insured - Broad Form Vendors**

Any person or organization with whom you agreed, because of a written contract or agreement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

(1) The insurance afforded the vendor does not apply to:

(a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(b) Any express warranty unauthorized by you;

(c) Any physical or chemical change in product made intentionally by the vendor;

(d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f) Demonstration, installation, servicing or repair operations except such operations performed at the vendor's premises in connection with the sale of the product;

(g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

(2) This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

(3) This provision **g.** does not apply to any vendor included as an insured by an endorsement issued by us and made a part of this Coverage Part.

(4) This provision **g.** does not apply if "bodily injury" or "property damage" included within the "products-completed operation hazard" is excluded either by the provisions of the Coverage Part or by endorsement.

h. **Broad Form Named Insured**

Any subsidiary and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

BUSINESS LIABILITY COVERAGE FORM

The insurance afforded herein for any subsidiary not shown in the Declarations as a named insured does not apply to injury or damage with respect to which an insured under this insurance is also an insured under another policy or would be an insured under such policy but for its termination or upon the exhaustion of its limits of insurance.

i. **Newly Formed or Acquired Organizations**

Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

(1) Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

(2) Coverage under this provision does not apply to:

(a) "Bodily injury" or "property damage" that occurred; or

(b) "Personal and advertising injury" arising out of an offense

committed before you acquired or formed the organization.

j. **Additional Insured – Volunteer Workers**

Your "volunteer workers", but only while performing duties related to the conduct of your business.

(1) However, no "volunteer workers" are insureds for:

(a) "Bodily injury", "property damage" or "personal and advertising injury" arising out of rendering or the failure to render professional services.

(b) "Bodily injury" or "personal and advertising injury":

(i) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), your other "volunteer workers" or to your "employees" arising out of and in the course of their duties for you;

(ii) To the spouse, child, parent, brother or sister of your "volunteer workers" or your "employees" as a consequence of paragraph (1) (a) above; or

(c) "Property damage" to property:

(i) Owned, occupied or used by,

(ii) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your other "volunteer workers", your "employees", your partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

3. **Additional Insured - Mobile Equipment**

With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. **LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. **Aggregate Limits**

The most we will pay for:

a. Injury or damages under the "products-completed operations hazard" arising from all "occurrences" during the policy period is the Products-Completed Operations Aggregate Limit shown in the Declarations.

b. All other injury or damages, including medical expenses, arising from all "occurrences" during the policy period is the General Aggregate Limit shown in the Declarations.

This General Aggregate Limit applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway or right-of-way of a railroad.

This aggregate limit does not apply to "property damage" to premises rented to you arising out of fire, lightning or explosion.

3. Subject to item **2.** above, the most we will pay for the sum of all damages because of all "bodily injury", "property damage" and medical expenses arising out of any one "occurrence" is the Liability and Medical Expenses Limit shown in the Declarations.

The most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

4. Subject to item **2.** above, the most we will pay for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization is the Personal and Advertising Injury Limit shown in the Declarations.

5. The most we will pay under Business Liability Coverage for damages because of "property damage" to premises rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner, is the Damage To Premises Rented To You Limit shown in the Declarations.

The Damage to Premises Rented To You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of the three.

If more than one limit of insurance under this policy and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this policy and the endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit". However, this paragraph does not apply to the Medical Expenses limit set forth in paragraph **3.** above.

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under the policy.

2. **Duties in The Event of Occurrence, Offense, Claim or Suit**

a. You must see to it that we are notified promptly of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place; and

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

This condition applies only when the "occurrence" or offense is known to:

(1) You, if you are an individual;

(2) A partner, if you are a partnership; or

(3) A manager if you are a limited liability company;

(4) An "executive officer" or insurance manager, if you are a corporation; or

(5) Any elected or appointed official, if you are a political subdivision or public entity.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

BUSINESS LIABILITY COVERAGE FORM

(2) Notify us as soon as practicable.

You must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

But this condition will not be considered breached unless the breach occurs after such claim or "suit" is known to anyone listed in **2 .a. (1)** through **(5)** above.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Financial Responsibility Laws**

a. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this coverage form:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this coverage form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom a claim is made or "suit" is brought.

**6. Unintentional Failure to Disclose Hazards**

It is agreed that based on our reliance on your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we shall not deny any coverage under this Coverage Form because of such failure.

**7. Other Insurance    -    Primary Additional Insured**

If the written contract or agreement or permit requires this insurance to be primary for any person or organization with whom you agree to include in WHO IS AN INSURED, this Other Insurance Provision is applicable.

If other valid and collectible insurance is available for a loss we cover under this Business Liability Coverage Form, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary. We will not seek contributions from other insurance available to the person or organization with whom you agree to include in WHO IS AN INSURED, except when b. applies.

b. **Excess Insurance**

This insurance is excess over:

(1) Any other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section A. – Coverages.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

This provision provides such insurance as is afforded under this coverage form, but only with respect to your operations, "your work" or facilities owned or used by you.

## F. OPTIONAL COVERAGES

If listed or shown as applicable in the Declarations, one or more of the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to Business Liability Coverage in this policy, except as provided below:

**1. Additional Insured - Designated Person or Organization**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person or organization shown in the Declarations, but only with respect to liability arising out of your operations or premises owned by or rented to you.

**2. Additional Insured - Managers or Lessors of Premises**

**a.** WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) shown in the Declarations; but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Declarations and subject to the following additional exclusions:

**b. Additional Exclusions**

This insurance does not apply to:

**(1)** Any "occurrence" which takes place after you cease to be a tenant in that premises; or

**(2)** Structural alterations, new construction or demolition operations performed by or for that person or organization.

**3. Additional Insured - Grantor of Franchise**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) shown in the Declarations, but only with respect to their liability as grantor of franchise to you.

**4. Additional Insured - Lessor of Leased Equipment**

**a.** WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) shown in the Declarations, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s).

**b. Additional Exclusions:**

This insurance does not apply:

BUSINESS LIABILITY COVERAGE FORM

(1) To any "occurrence" which takes place after the equipment lease expires; or

(2) To "bodily injury" or "property damage" arising out of the sole negligence of the lessor.

**5. Additional Insured - Owners or Other Interests From Whom Land Has Been Leased**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person or organization shown in the Declarations, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you and shown in the Declarations and subject to the following additional exclusion:

This insurance does not apply to:

a. Any "occurrence" that takes place after you cease to lease that land; or

b. Structural alterations, new construction or demolition operations performed by or for the person or organization shown in the Declarations.

**6. Additional Insured - State or Political Subdivision - Permits**

a. WHO IS AN INSURED under Section **C.** is amended to include as an insured the state or political subdivision shown in the Declarations, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

b. Additional Exclusions

This insurance does not apply to:

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or political subdivision; or

(2) "Bodily injury" or "property damage" included in the "product-completed operations" hazard.

**7. Additional Insured - Vendors**

a. WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) (referred to below as vendor) shown in the Declarations, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

b. Additional Exclusions

(1) The insurance afforded the vendor does not apply to:

(a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(b) Any express warranty unauthorized by you;

(c) Any physical or chemical change in the product made intentionally by the vendor;

(d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

(g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

(2) This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

(3) This Provision 7. does not apply to any vendor included as an insured by an endorsement issued by us and made a part of this Coverage Form.

(4) This Provision 7. does not apply if "bodily injury" or "property damage" included within the "products-completed operations hazard" is excluded either by the provisions of this Coverage Form or by endorsement.

8. **Additional Insured – Controlling Interest**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or organization(s) shown in the Declarations but only with respect to their liability arising out of:

a. Their financial control of you; or

b. Premises they own, maintain or control while you lease or occupy these premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

9. **Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization.**

WHO IS AN INSURED under Section **C.** is amended to include as insured the person or organization shown in the Declarations, but only with respect to liability arising out of your ongoing operations performed for that insured.

10. **Additional Insured – Co-Owner of Insured Premises**

WHO IS AN INSURED under Section **C.** is amended to include as an insured the person(s) or Organization(s) shown in the Declarations, but only with respect to their liability as co-owner of the premises shown in the Declarations.

## G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS

1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

   a. (1) Radio;
      (2) Television;
      (3) Billboard;
      (4) Magazine;
      (5) Newspaper;

   b. The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or

   c. Any other publication that is given widespread public distribution.

However, "advertisement" does not include:

a. The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

b. An interactive conversation between or among persons through a computer network.

2. "Advertising idea" means any idea for an "advertisement".

3. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

5. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above;

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

BUSINESS LIABILITY COVERAGE FORM

8. "Hostile fire" means one which becomes un-controllable or breaks out from where it was intended to be.

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement:

if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement;

   d. Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement; or

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of municipality in connection with work performed for a municipality) under which you assume the liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

     Paragraph f. does not include that part of any contract or agreement

     (1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

       (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

       (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

     (2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (1) above and supervisory, inspection, architectural or engineering activities.

11. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

12. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

13. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, on which are permanently mounted:

     (1) Power cranes, shovels, loaders, diggers or drills; or

     (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

BUSINESS LIABILITY COVERAGE FORM

e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

Paragraphs (a), (b) and (c) above do not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral, written or electronic publication of material that violates a person's right of privacy;

f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

(1) Not done intentionally by or at the direction of:

(a) The insured; or

(b) Any executive officer, director, stockholder, partner or member of the insured; and

(2) Not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured.

This paragraph h. does not apply in the States of Nebraska and Kansas.

16. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. "Products-completed operations hazard";

a. Includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

Form SS 00 08 04 01

BUSINESS LIABILITY COVERAGE FORM

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

18. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

Computerized or electronically stored data, programs or software are not tangible property.

19. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

20. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

21. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

22. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

23. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

Form SS 00 08 04 01



# SUPER STRETCH SUMMARY

### SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the STRETCH Coverage form SS 04 74 which is included in this policy. No coverage is provided by this summary. Refer to coverage form SS 04 74 to determine the scope of your insurance protection.

| Blanket Coverage Limit : $150,000 |
| --- |
| **Blanket Coverages** |
| Accounts Receivable |
| Computer and Media |
| Debris Removal |
| Personal Property of Others |
| Temperature Change |
| Valuable Papers and Records |

| Coverage | Limit |
| --- | --- |
| Backup of Sewer or Drain Water Damage | Included |
| Brands and Labels | Included |
| Claims Expense | $ 5,000 |
| Consequential Loss to Stock | Included . |
| Employee Dishonesty (including ERISA) | $ 25,000 |
| Fine Arts | $ 25,000 |
| Forgery | $ 25,000 |
| Increased Cost of Construction (Buildings) | $ 10,000 |
| Laptop Computers Worldwide Coverage | $ 10,000 |
| Newly Acquired or Constructed Property - Building | $1,000,000 |
| Newly Acquired or Constructed<br>         - Business Personal Property | $ 500,000 |
| Off Premises Service – Direct Damage | $ 25,000 |
| Outdoor Property ( $1000 limit per item) | $ 25,000 aggregate |
| Outdoor Signs | Included |
| Personal Effects | $ 10,000 |
| Property at Other Premises | $ 10,000 |
| Property Off Premises | $ 25,000 |
| Salespersons' Samples | $  5,000 |
| Tenants Improvements Due to Ordinance or Law | $ 20,000 |
| Tenants Building Equipment Under Lease | $ 20,000 |
| Transit Coverage | $ 10,000 |
| Valuation Changes | Included |

The following changes apply only if Business Income and Extra Expense are covered under this policy.

| | |
| --- | --- |
| Business Income at Newly Acquired Premises | $ 250,000 |
| Business Income Extension for Off Premises Service | $ 25,000 |
| Business Income Extension for Web Sites | $ 50,000/7 days |
| Dependent Properties - Anchor Store or Major Supplier | $ 50,000 |

Form SS 84 15 03 00

Page 1 of 1

© 2000, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DELAWARE CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

## COMMON POLICY CONDITIONS

**A.** If this policy covers buildings that contain no more than 4 dwelling units, one of which is the principal place of·residence of the insured, paragraph 2.a.(5) of the **CANCELLATION** Common Policy Condition is replaced by the following:

    (5) Failure to:

        (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

        (b) Pay property taxes that are owing and have been outstanding for more than two years following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**B.** The following are added to the **CANCELLATION** Common Policy Condition:

    7. If this policy:

        a. has been in effect for more than 60 days; or

        b. is renewal of a policy we issued; and

        c. covers buildings that contain no more than 4 dwelling units, one of which is the principal place of residence of the insured,

    we may cancel this policy only for one or more of the following reasons:

        (1) Nonpayment of premium;

        (2) Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under this policy;

        (3) Discovery of willful or reckless acts or omissions on your part that increase any hazard insured against;

        (4) The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

        (5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

        (6) A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the Delaware insurance laws; or

        (7) Real property taxes owing on the insured property have been delinquent for two or more years and continue delinquent at the time notice of cancellation is issued.

    Notice of cancellation will state the specific reason for cancellation.

**C.** The following is added:

    1. **NONRENEWAL**

        a. If we decide not to renew this policy, we will mail or deliver to the first **Named Insured** written notice of nonrenewal, along with the reasons for nonrenewal, at least 60 days before the expiration date or the anniversary date if this is a policy written for a term of more than one year.

        b. We will mail or deliver this notice to the first **Named Insured's** last mailing address known to us.

        c. If notice of nonrenewal is mailed, it will be sent by certified mail.

**Form SS 01 41 03 92**  Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1992



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS IS CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

If shown in the Declarations as applicable, the following coverage applies. This coverage is subject to the provisions of the Business Liability Coverage Form except as provided below.

For purpose of this insurance:

## A. COVERAGE

This Section is replaced by the following:

### 1. Employee Benefits Liability

a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "employee benefits injury" to which this insurance applies. NO other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance does not apply to "employee benefits injury" which occurred before the Retroactive Date, if any, shown in the Declarations or which occurs after the policy period. The negligent act, error or omission must take place in the "coverage territory."

We will have the right and duty to defend any "claim" or "suit" seeking such "damages." But:

(1) The amount we will pay for "damages" is limited as described in **SECTION D - LIMITS OF INSURANCE.**

(2) We may, at our discretion, investigate any alleged act, error or omission and settle any "claim" or "suit" that may result; and

(3) Our right and duty to defend end when we have used up the applicable limit of

insurance in the payment of judgments or settlements under this Employee Benefits Liability Coverage. This applies both to "claims" and "suits" pending at that time and to those filed thereafter.

b. This insurance applies to an "employee benefits injury" only if:

(1) A "claim" for "damages" because of the "employee benefits injury" is first made against any insured during the policy period; and

(2) At the time you applied for this insurance you had no knowledge of any "claim" or "suit" or of any "employee benefits injury" which might reasonably be expected to result in a "claim" or "suit," except as you had reported to us in writing at the time you so applied.

c. A "claim" by a person or organization seeking "damages" will be deemed to have been made when notice of such "claim" is received and recorded by an insured or by us, whichever comes first.

d. All "claims" for "damages" because of "employee benefits injury" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured.

### 2. Coverage Extension - Supplementary Payments

We will pay, with respect to any "claim" or "suit" we defend:

a. All expenses we incur.

Copyright, Hartford Fire Insurance Company, 1992

b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit," including actual loss or earnings up to $250 a day because of time off from work.

d. All costs taxed against the insured in the "suit."

e. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## B. EXCLUSIONS

This Section is replaced by the following:

This insurance does not apply to:

1. Any liability imposed on the insured under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sections 1001-1381 (1976) (ERISA) or any changes to it.

2. "Bodily injury," "property damage," "personal injury" or "advertising injury."

3. Any dishonest, fraudulent, criminal or malicious act.

4. The failure of any investment or saving program to perform as represented by an insured.

5. An "employee benefits injury" that arises out of advice given by any insured to an employee to participate or not to participate in any "employee benefits program."

6. The failure of any person or organization to perform any obligation or to fulfill any guarantee with respect to:

a. The payment of benefits under "employee benefit programs"; or

b. The providing, handling or investing of funds related thereto.

## C. WHO IS AN INSURED

This Section is replaced by the following:

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

b. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## D. LIMITS OF INSURANCE

This Section is replaced with the following:

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. "Claims" made or "suits" brought; or

c. Persons or organizations making "claims" or bringing "suits."

2. The Employee Benefits Liability Aggregate Limit is the most we will pay for all "damages" to which this insurance applies.

3. Subject to 2. above the Each Claim Limit is the most we will pay for all "damages" with respect to any one "claim."

The limits of this Endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the

Form SS 04 13 03 92  Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1992

Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### E. EMPLOYEE BENEFITS LIABILITY CONDITIONS

This Section is replaced by the following:

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Insurance.

2. Duties in The Event of Employee Benefits Injury, Claim or Suit

   a. You must see to it that we are notified as soon as practicable of an "employee benefits injury" which may result in a "claim." To the extent possible, notice should include:

      (1) How, when and where the "employee benefits injury" took place; and

      (2) The names and addresses of any injured persons and witnesses.

      Notice of an "employee benefits injury" is not notice of a "claim."

   b. If a written "claim" is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the "claim" or "suit."

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "employee benefits injury" to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

   No person or organization has a right under this Coverage form:

   a. To join us as a party or otherwise bring us into "suit" asking for "damages" from an insured; or

   b. To sue us on this insurance unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "damages" that are not payable under the terms of this insurance or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

   If other valid and collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

   a. Primary Insurance

      This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in c. below.

   b. Excess Insurance

      This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, that is effective prior to the beginning of this policy period shown in the Declarations and applies to "damages" on other than a claims-made basis, if:

      (1) No retroactive date is shown in the Declarations; or

      (2) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations.

      When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Form SS 04 13 03 92   Printed in U.S.A. (NS)

**Page 3 of 6**

Copyright, Hartford Fire Insurance Company, 1992

When this insurance is excess, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations for this insurance.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

6. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom "claim" is made or "suit" is brought.

7. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this insurance those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

F. EXTENDED REPORTING PERIODS

The following provisions are added:

1. We will provide one or more Extended Reporting Periods, as described below, if:

a. This Employee Benefits Liability insurance is cancelled or not renewed; or

b. We renew or replace this insurance with insurance that:

(1) Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

(2) Does not apply to "employee benefits injury" on a claims-made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a. One year for "claims" arising out of an "employee benefits injury" reported to us, not later than 90 days after the end of the policy period, in accordance with paragraph 2.a. of EMPLOYEE BENEFITS LIABILITY CONDITIONS; or

b. Ninety days for all other "claims."

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims."

3. A Supplemental Extended Reporting Period of three years duration is available, but only by an endorsement and for an extra charge. This supplemental period starts:

a. One year after the end of the policy period for "claims" arising out of an "occurrence" reported to us, not later than 90 days after the end of the policy period, in accordance with paragraph 2.a. of

Form SS 04 13 03 92  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1992

EMPLOYEE BENEFITS LIABILITY CONDITIONS; or

b. Ninety days after the end of the policy period for all other "claims."

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

Additional premium will be the annual premium as of the inception date of this insurance.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

4. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" for "employee benefits injury" that occur before the end of the policy period (but not before the Retroactive Date, if any, shown in the Declarations).

"Claims" for such injury which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the policy period.

Once in effect, Extended Reporting Periods may not be cancelled.

5. Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any "claim" to which this insurance applies, except to the extent described in paragraph 6. of this Section.   ..

6. If the Supplemental Extended Reporting Period is in effect, we will provide the separate aggregate limit of insurance described below, but only for "claims" first received and recorded during Supplemental Extended Reporting Periods.

The separate aggregate limit of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period.

Paragraph 2. of LIMITS OF INSURANCE will be amended accordingly.

G. DEFINITIONS

This Section is replaced by the following:

As used in this Employee Benefits Liability insurance:

1. "Administration" means:

a. Giving counsel to your employees or their dependents and beneficiaries, with respect to interpreting the scope of your "employee benefits program" or their eligibility to participate in programs;

b. Handling records in connection with "employee benefits programs; and

c. Starting or stopping any employee's participation in your "employee benefits program."

2. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Claim" means a written demand received by any insured for "damages" alleging "employee benefits injury," including the institution of a "suit" for such "damages" against any insured.

5. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the "employee benefits injury" does not occur in the course of travel or transportation to or from any place not included in a. above.

Form SS 04 13 03 92  Printed in U.S.A.  (NS)

Page 5 of 6

Copyright, Hartford Fire Insurance Company, 1992

6. "Damages" include prejudgment interest awarded against the insured on that part of the judgment we pay. "Damages" do not include:

    a. Fines;

    b. Penalties; or

    c. Damages for which insurance is prohibited by the law applicable to the construction of this policy.

7. "Employee benefits injury" means injury that arises out of any negligent act, error or omission in the "administration" of your "employee benefits program."

8. "Employee benefits program" means a formal program or programs of employee benefits maintained in connection with your business or operations, such as but not limited to:

    a. Group life insurance, group accident or health insurance, profit sharing plans and stock subscription plans, provided that no other than an employee may subscribe to such insurance or plans; and

    b. Unemployment insurance, social security benefits, workers' compensation and disability benefits.

9. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's; or organization's goods, products or services; or

    e. Oral or written publication of material that violates a person's right of privacy.

10. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property; or

    b. Loss of use of tangible property that is not physically injured.

11. "Suit" means a civil proceeding in which "damages" because of "employee benefits injury" to which this insurance applies are alleged.    "Suit" includes an arbitration proceeding alleging such "damages" to which you must submit or submit with our consent.

Form SS 04 13 03 92   Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME EXTENSION FOR OFF-PREMISES UTILITY SERVICES

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This insurance applies only when Business Income and Extra Expense Optional Coverage is shown in the Declarations as applicable. Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. BUSINESS INCOME EXTENSION FOR OFF-PREMISES UTILITY SERVICES**

This Coverage Extension applies only when the Business Income Additional Coverage is included in this policy.

We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on described premises:

1. "Water Supply Services";

2. "Communication Supply Services"; or

3. "Power Supply Services".

**B. WAITING PERIOD.**

We will only pay for loss you sustain after the first 8 consecutive hours following the direct physical loss of or damage to the off-premises property to which this endorsement applies. We will not pay for any reduction in business income or extra expense after electricity, steam or gas has been restored to the described premises.

**C. LIMIT OF INSURANCE**

The most we will pay for loss under this extension is $25,000 at each described premises.

**D. ADDITIONAL DEFINITIONS**

1. "Water Supply Services", meaning the following types of property supplying water to the describes premises:

   a. Pumping stations; and

   b. Water mains.

2. "Communication Supply Services", meaning property supplying communication services, including telephone, radio, microwave or television services, including overhead transmission lines to the described premises, such as:

   a. Communication transmission lines, including optic fiber transmission lines;

   b. Coaxial cables; and

   c. Microwave radio relays except satellites.

3. "Power Supply Services", meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the described premises:

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission Lines.

Form SS 04 19 06 96   Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1996

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TRANSIT COVERAGE

This endorsement modifies insurance provided under the following:

SPECIAL PROPERTY COVERAGE FORM

Except as otherwise stated in this endorsement the terms and conditions of the policy and of the Special Property Coverage Form apply to the insurance stated below.

A. With respect to this Transit Coverage only, the following changes are made to the Special Property Coverage Form:

1. Under **A.4.** Limitations, subparagraph **e.(3)** which limits coverage for patterns, dies, molds and forms, is deleted.

2. Under B. Exclusions

   a. Exclusions **1.b.** (Earth Movement) and **1.g.** (Water) do not apply to property in transit.

   b. Exclusions **2.e.** (Dishonesty) and **2.g.** (Exposed Property) do not apply to property in custody of a carrier for hire.

   c. Exclusion **2.f.** (False Pretense) does not apply to loss or damage caused by your good faith acceptance of false bills of lading or shipping receipts.

   d. The following Exclusion is added:

      We will not pay for loss or damage caused by or resulting from poor or insufficient packaging or packing.

B. Transit Coverage

1. The insurance that applies to your Business Personal Property and Personal Property of Others is extended to apply to shipments of that property while in transit at your risk, by motor vehicle, railroad car or aircraft between points within the Coverage Territory. This includes property you have sold and your responsibility continues until it is delivered.

2. The Transit Coverage also applies to:

   a. **Expenses to Inspect, Repackage and Reship Damaged Shipments**

      The necessary additional expenses you incur to inspect, repackage and reship Covered Property which is damaged as a result of a Covered Cause of Loss.

   b. **Expenses to Protect Covered Property from Spoilage or Change in Temperature**

      The necessary additional expense you incur to temporarily store Covered Property in a temperature controlled environment in order to avoid or minimize loss or damage to such property from spoilage or change in temperature. Such temporary storage must be made necessary by the sudden and accidental breakdown of heating or refrigeration unit(s) on transporting conveyances.

      This additional expense will not include:

      (1) Expenses to repair or replace heating or refrigeration unit(s);

      (2) Costs or penalties due to detention or delay of any vehicles, trailers, conveyances or containers; or

      (3) Costs for additional wages, room, board or meals.

   c. **F.O.B. Shipments**

      Outgoing shipments where the risk of loss or damage is transferred to the buyer when such property leaves your premises.

      You must use all reasonable means to collect the amount due you from the buyer before making a claim under this Transit Coverage.

Form SS 04 30 03 00

We will not make payment until you grant us the right of recovery against the buyer.

**d. Loading and Unloading**

Shipments during loading or unloading and within 500 feet of any transporting conveyance.

**e. Return Shipments**

Outgoing shipments which have been rejected by the consignee or are not deliverable, while:

(1) In due course of transit, being returned to you; or

(2) Up to 10 days after delivery or attempted delivery awaiting return shipment to you.

Payment under paragraphs **a., b., c., d. and e.** above will not increase the Transit Coverage Limit of Insurance.

**C. Under this Transit Coverage, we will not pay for:**

1. Property in the care, custody or control of your salespersons.

2. Mail shipments in the custody of the U.S. Postal Service.

3. Property of Others for which you are responsible as a:

a. Carrier for hire; or

b. Carloader, consolidator, broker, freight forwarder, shipping association, or other arranger of transportation.

4. Property in or on a motor vehicle you own, lease or operate.

**D. Limit of Insurance**

The Limit of Insurance shown in the Declarations for Transit Coverage is the most we will pay for all loss or damage in any one occurrence to property insured under this endorsement.

**E. Deductible**

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $250. We will then pay the amount of loss or damage in excess of $250 up to the applicable Limit of Insurance.

**F. Additional Conditions**

1. Valuation

Property Loss Condition **E.6.** is deleted and replaced by the following:

a. Valuation

(1) Property You Own

The value of Covered Property will be the amount of invoice plus accrued charges, prepaid charges and charges since shipment; or

(2) In the absence of an invoice, the value of Covered Property will be its actual cash value, with proper deduction for depreciation, at the point of destination on the date of expected arrival.

b. Property of Others

The most we will pay for Covered Property owned by others is the lesser of:

(1) Your legal liability for direct physical loss or damage to such property; or

(2) What we would pay if you had owned the property.

2. Impairment of Rights of Recovery

We will not pay for loss or damage, if you impair our rights to recover damages from any carrier for hire. But you may accept from carriers for hire bills of lading, receipts or contracts of transportation which contain a limitation of value.

Form SS 04 30 03 00



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ACCOUNTS RECEIVABLE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** When shown in the Declarations as applicable, the Limit of Insurance stated in paragraph **(1)** of the Additional Coverage entitled Accounts Receivable is replaced by the Limit of Insurance for Accounts Receivable shown in the Declarations. All other terms and conditions of Accounts Receivable Additional Coverage apply to this Optional Coverage.

**B.** With respect to this Optional Coverage, Coverage Extension A.5.g., Property Off-Premises in the Standard Property Coverage Form and Coverage Extension A.6.g., Property Off-Premises in the Special Property Coverage Form are replaced by the following:

The most we will pay for loss or damage under this Coverage Extension is 25% of the Limit of Insurance shown in the Declarations for Accounts Receivable but not more than $2,500.

**C. Limit of Insurance**

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Declarations for Accounts Receivable.

**D. Deductible**

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in paragraph **D.4.** of the Standard Property Coverage Form and the Special Property Coverage Form, whichever form applies to this policy. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**E. Additional Conditions**

**(1)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage the following method will be used:

    **(a)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurred; and

    **(b)** Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(2)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

    **(a)** The amount of the accounts for which there is no loss or damage;

    **(b)** The amount of the accounts that you are able to re-establish or collect;

    **(c)** An amount to allow for probable bad debts that you are normally unable to collect; and

    **(d)** All unearned interest and service charges.

© 2002, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMPUTERS AND MEDIA

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A. COMPUTER EQUIPMENT**

1. We will pay for direct physical loss of or damage, to "computer equipment", subject to the Limit of Insurance shown in the Declarations for Computers And Media while anywhere within the policy territory, and while in transit, but only if:

   a. Owned by you; or

   b. Owned by others but in your care, custody and control regardless of whether you use it for personal or business needs.

2. "Computer Equipment" as used in this Optional Coverage means:

   a. "Computers";

   b. "Peripheral devices";

   c. "Media"; and

   d. Manuals that are purchased to be used in conjunction with hardware and "software".

3. "Computer Equipment" does not include:

   a. "Data" or "software".

   b. Source documents, other than manuals purchased with hardware or "software";

   c. Worksheets and printouts;

   d. Property held for sale or lease;

   e. Property leased or rented to others; or

   f. Currency, "money", deeds, notes, "securities" or other financial instruments, including such instruments in electronic form.

4. Direct physical loss or damage to "Computer Equipment" is extended to include the following:

   a. Electromagnetic injury caused by:

      (1) Blackout or brownout;

      (2) Transients, spikes, surges and other power failure; and

      (3) Airport security check, and radio or telephone line interference;

   b. Headcrash, meaning physical damage to disks, tapes or hardware caused by a contact of electromagnetic heads (which read or write information) with such disks or tapes; and

   c. Damage caused by a "computer virus".

   d. Theft of "computer equipment".  Theft means an act of stealing or an attempt to steal.  Theft includes loss of property from a known place when it is likely that the property has been stolen.

5. **DEDUCTIBLE**

   We will not pay for loss or damage in any one occurrence to "computer equipment" until the amount of loss or damage exceeds $250.

**B. DATA AND SOFTWARE**

1. We will pay to research, replace or restore lost or damaged "data" or "software" subject to the Limit of Insurance shown in the Declarations for Computers And Media while anywhere within the policy territory, and while in transit, but only if:

   a. Owned by you; or

   b. Owned by others but in your care, custody and control regardless of whether you use it for personal or business needs.

© 2001, The Hartford

However, this coverage is provided only when such loss or damage is caused by one or more of the following:

a. Direct physical loss or damage to "computer equipment" for which coverage is provided by this endorsement.

b. Electrical or magnetic injury to, or disturbance or erasure of covered "data" or "software" which results from power failure originating at your premises or within 1000 feet from the building containing the "data" and "software".

c. Loss of or damage to "data" or "software" caused by a "computer virus".

2. We will not pay to research, replace or restore lost or damaged "data" or "software" which is licensed, leased or rented to others.

## C. Additional Coverage

1. Unless Business Income Coverage has been deleted from this policy, the Additional Coverage in the Standard or Special Property Coverage Form for Business Income, Extra Expense, Civil Authority and Extended Business Income apply to the "computer equipment", "data" and "software" which are covered in this endorsement. However, the Additional Coverage for Business Income is subject to the following:

   a. **Waiting Period**

   We will not pay for any covered Business Income loss you sustain under this provision due to loss or damage to "data", or "software" caused by a computer virus which results in the necessary suspension (slowdown or cessation) of your business described in the Declarations during the first 12 hours that immediately follow the start of such suspension.

   b. Such Waiting Period applies independent of the deductible applicable to Computer Equipment.

   c. The Limit of Insurance for Computers And Media shown in the Declarations.

2. When this endorsement is attached to the Special Property Coverage Form, the Additional Coverage for Equipment Breakdown applies.

3. When this policy provides Earthquake Coverage, the Limit of Insurance for Computers and Media is in addition to the Limit of Insurance shown in the Declarations for Earthquake Coverage.

D. The provisions of this endorsement do not override or in any way affect the application of the Exclusion Of Certain Computer Related Losses if such exclusion is endorsed to or otherwise made a part of this policy. That exclusion addresses the inability of a computer system to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

E. Paragraph A.3. Covered Causes of Loss, and Section B., Exclusions, do not apply to coverage provided by this endorsement, except for:

1. Paragraph B.1.b., Earth Movement; and

2. Paragraph B.1.c., Governmental Action;

3. Paragraph B.1.d., Nuclear Hazard;

4. Paragraph B.1.f., War and Military Action;

5. Paragraph B.1.g., Water.

## F. Additional Exclusions

We will not pay for loss or damage caused by or resulting from:

1. Input, programming or processing errors;

2. Mechanical breakdown or failure, however headcrash will not be considered as a mechanical breakdown or failure. This exclusion does not apply to coverage provided under the Additional Coverage provisions of this endorsement;

3. Faulty construction, materials or workmanship;

4. Error, omission or deficiency in design;

5. Short circuit blowout or other electrical disturbance within the computer system. This exclusion does not apply to coverage provided under the Additional Coverage provisions of this endorsement;

6. Rust, corrosion, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

7. Dryness or dampness of atmosphere; changes in or extremes of temperature;

8. Wear and tear, marring or scratching,

9. Insects, birds, rodents, or other animals

10. Obsolescence;

11. Dishonest or criminal acts by you, any of your partners, employees, trustees, authorized representatives or anyone to whom you entrust the property for any purpose, whether acting alone or in collusion with others;

12. Unexplained disappearance, however we cover theft of "computer equipment" as provided in provision A.4.d.

© 2001, The Hartford

13. Unlawful trade, or seizure by orders of governmental authority.

14. Delay or loss of market; and

15. Theft of laptop, palmtop or similar portable property while in transit as checked baggage.

G. Exclusion F.5. does not apply to short circuits or the internal electromagnetic damage by an electromagnetic disturbance outside the system.

H. Limit of Insurance

The most we will pay for loss or damage in any one occurrence is the Limits of Insurance for Computers And Media shown in the Declarations.

I. Loss Payment

This Loss Payment condition is applicable to the "computer equipment", "data", and "software" coverage provided by this endorsement. We will determine the value of Covered Property as follows:

1. "Computers," "peripheral devices," "media" and manuals at the full cost of repair or replace the property subject to the Limit of Insurance. However, we will not pay more for loss or damage on a replacement cost basis than the lesser of and the following:

   a. The amount necessary to replace the item with similar property possessing the minimum characteristics necessary to perform the same functions when replacement with identical property is not possible or practical.

   b. The amount necessary to repair or replace the item with one substantially identical to the lost or damaged item. In the event of a covered total loss to one or more items, we will allow up to 20% over the current replacement cost as described in this provision, as an Optional Upgrade Allowance for the purchase of new property with upgraded

processing or performance characteristics. This Optional Upgrade Allowance will, at our option, be payable after you have purchased the replacement property and have provided us with written proof of such purchases; or

   c. If the item is not repaired or replaced, we will pay not more than the actual cash value of the item at the time of loss or damage. If you elect this option, you have the right to make further claim within 180 days after loss for any additional payment on a replacement cost basis.

2. In the event of loss or damage to "data" or "software", we will pay the reasonable amount you actually spend to reproduce, restore, or replace the lost or damaged "data" or "software". This includes the cost of computer consultation services for restoration and the cost of research to reconstruct lost or damaged information. But we will not pay more than the Limit of Insurance for Computers And Media specified in the Declarations.

3. In the event of loss or damage to any part of "computer equipment", "data" or "software", we will pay only what it would cost to replace, reproduce, or restore the lost or damaged part.

J. Additional Definitions

1. "Computer Virus" means a program, which is intentionally created to cause damage or disruption in the computer operations of a party using or coming in contact in any way with the program.

2. "Computer Equipment" means "computers", "peripheral devices", "media", and manuals that are purchased to be used in conjunction with hardware and "software".



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE DISHONESTY COVERAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**The following is added to Additional Coverages:**

**A. COVERAGE**

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Causes of Loss.

1. **Covered Property**

   Covered Property means "money", "securities", and other tangible property of intrinsic value and not otherwise excluded.

2. **Covered Causes of Loss**

   Covered Causes of Loss means dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you, with the manifest intent to:

   a. Cause you to sustain loss; and also

   b. Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions or other employee benefits earned in the normal course of employment) for:

      (1) The "employee"; or

      (2) Any person or organization intended by the employee" to receive that benefit.

3. **Additional Coverages**

   a. **Employees Temporarily Outside Coverage Territory**

      We will pay for loss caused by any "employee" while temporarily outside the Coverage Territory for a period of not more than 90 days.

   b. **Employees at Client or Customer Premises**

      We will pay for any loss caused by your "employee" while at the premises of your client or customer.

      Any claim for loss sustained by any client or customer and covered by this policy may only be made by you in your Proof of Loss. No third party has a direct right against this insurance and no third party may make a direct claim against us as the writer of your insurance.

   c. **Welfare and Pension Plan ERISA Compliance**

      In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA):

      (1) "Employee" also includes any natural person who is:

         (a) A trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare of Pension Benefit Plan (hereafter called Plan) insured under this insurance, and

         (b) Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.

      (2) If any Plan is insured jointly with any other entity under this

Form SS 04 42 03 00

© 2000, The Hartford

insurance, you or the Plan Administrator must select a Limit of Insurance under this Employee Dishonesty Coverage Form that is sufficient to provide an amount of insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) If the insured first named in the Declarations is an entity other than a Plan, any payment we make to that insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

(4) If two or more Plans are insured under this insurance, any payment we make for loss:

(a) Sustained by two or more plans or

(b) Of commingled funds or other property of two or more Plans

that arises out of one Occurrence, is to be shared by each Plan sustaining loss in the proportion that the amount of insurance required for each such Plan under ERISA provisions bears to the total of those amounts.

(5) The Deductible provision does not apply to loss sustained by any Plan subject to ERISA which is insured under this insurance.

## B. EXCLUSIONS

The following Exclusions apply in addition to the Exclusions in the Crime Common Conditions and Exclusions.

1. **Employee Terminated Under Prior Insurance**

   We will not pay for loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been terminated and not reinstated since the last such termination.

2. **Insurance Operations**

   We will not pay for direct or indirect loss resulting from contractual or extra-contractual liability sustained by you in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

3. **Inventory Shortages**

   We will not pay loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

   a. An inventory computation; or

   b. A profit and loss computation.

4. **Partners**

   We will pay only for loss, caused by any partner or member of a limited liability corporation, that is in excess of the sum of:

   a. Any amounts you owe that partner or member; and

   b. The value of that partner's or member's ownership interest determined by the closing of you organization's books on the date of discovery of the loss by anyone in your organization not involved in the Employee Dishonesty; and

   c. Any applicable deductible amount.

5. **Trading Loss**

   We will not pay for loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

## C. ADDITIONAL CONDITIONS

The following conditions apply.

**Termination As To Any "Employee"**

This insurance is terminated as to any "employee":

1. Immediately upon discovery by;

   a. You; or

   b. Any of your partners, officers or directors not in collusion with the "employee";

   of any dishonest act committed by that "employee" whether before or after becoming employed by you.

2. On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing.

   The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

## D. LIMIT OF INSURANCE

The most we will pay for each Occurrence of loss under this Endorsement is the Employee Dishonesty Limit of Insurance stated in the Declarations.

The Additional Coverages are included in this Limit of Insurance.

## E. OCCURRENCE DEFINITION

As used in this Endorsement, **Occurrence** means all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.

Form SS 04 42 03 00



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OUTDOOR SIGNS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations.  The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

A. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

   (1) Owned by you; or

   (2) Owned by others but in your care, custody and control.

B. Paragraph **A.3.**, Covered Causes of Loss, and Section **B.**, Exclusions, do not apply, to this Optional Coverage, except for:

   (1) Paragraph **B.1.c.**, Governmental Action;

   (2) Paragraph **B.1.d.**, Nuclear Hazard; and

   (3) Paragraph **B.1.f.**, War and Military Action.

C. **Additional Exclusion**

   We will not pay for loss or damage caused by or resulting from:

   (1) Wear and tear;

   (2) Hidden or latent defect;

   (3) Rust;

   (4) Corrosion; or

   (5) Mechanical breakdown.

D. **Limit of Insurance**

   The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

E. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

Form SS 04 44 09 93  Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1993



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PERSONAL PROPERTY OF OTHERS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

We will pay, on replacement cost basis, for direct physical loss or damage by the Covered Causes of Loss to Personal Property of Others that is in your care, custody and control.
The most we will pay for loss or damage in any one occurrence is the Limit of Insurance applicable to Personal Property of Others shown in the Declarations.

Form SS 04 45 10 96   Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1993

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEMPERATURE CHANGE

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

A. We will pay for direct physical loss or damage to "perishable stock" at the described premises caused by or resulting from:

  1. A change in temperature or humidity resulting from:

    (a) Mechanical breakdown or failure of:

      (1) Stationary heating plants; or

      (2) Refrigerating, cooling or humidity control apparatus or equipment;

      But only while such plants, equipment or apparatus are at the described premises.

    (b) Complete or partial failure of electric power, either on or away from your described premises. Such failure of power must be due to conditions beyond your control; or

  2. Contamination by a refrigerant.

B. SELLING PRICE

We will determine the value of finished "perishable stock" in the event of loss or damage at:

  1. The selling price, as if no loss or damage had occurred;  ..

  2. Less discounts and expenses you otherwise would have had.

C. We will not pay for loss or damage to "perishable stock" located:

  1. On buildings;

  2. In the open; or

  3. In vehicles.

D. Exclusions

  1. The following exclusions under paragraph B.1. of SECTION B - EXCLUSIONS are deleted:

    (a) Ordinance or Law;

    (b) Power Failure; and

    (c) Mechanical Breakdown in the Standard Property Coverage Form.

  2. The following exclusions are added:

    We will not pay for loss or damage caused by or resulting from:

    (a) The disconnecting of any of the following systems from the source of power:

      (1) Refrigerating;

      (2) Cooling; or

      (3) Humidity control.

    (b) The loss of electrical power caused by the shutting off of any switch or other device used to control the flow of electric power or current.

    (c) The inability of an electrical utility company, your stationary heating plant or any other power source to provide sufficient heat or power due to:

      (1) Lack of fuel;

      (2) Lack of capacity to make enough heat or power; or

      (3) Order of the government.

    (d) Breaking of any glass that is a permanent part of refrigerating, cooling or humidity control unit.

E. Deductible

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in paragraph **D.4.** of the Standard Property Coverage Form or the Special Property Coverage Form., unless a different deductible is stated in the Declarations for Temperature Change. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

Form SS 04 46 10 02

Page 1 of 2

© 2002, The Hartford

F.  Limit of Insurance

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Temperature Change shown in the Declarations.

G.  Additional Conditions

1.  We will pay for loss or damage under this Optional Coverage only when:

(a) Such loss or damage is not covered elsewhere in this policy or any other policy that insures the "perishable stock" at the described premises; and

(b) This Temperature Change coverage is shown as a specific item of insurance in the Declarations.

2.  In the event of loss or damage, none of the other coverage under this policy or any other policy will share in its payment unless the provisions of the policy are similar to the provisions of this Optional Coverage.

3.  But in no event will we pay more than the Limit of Insurance shown in the Declarations for the Temperature Change.

H.  Additional Definitions

For the purpose of this insurance:

1.  "Mechanical breakdown" means:

(a) Breaking or separation of any mechanical part(s) other than gas pipes or lines; or

(b) Burning out of any electrical motor servicing such unit; and

requiring replacement of the damaged parts to become functional.

But "mechanical breakdown" does not mean faulty operation or failure of equipment which results in temperature change but does not require replacement of broken parts.

We will not pay for loss or damage to "perishable stock" caused by such faulty operation or failure of equipment.

2.  "Perishable stock" means personal property:

(a) Maintained under controlled conditions for its preservation; and

(b) Susceptible to loss or damage if the controlled conditions change.

Form SS 04 46 10 02



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VALUABLE PAPERS AND RECORDS

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

A. We will pay for direct physical loss of or damage to the following types of property at the described premises that is your property or property of others in your care, custody or control:

Valuable Papers and Records, meaning inscribed, printed or written:

(1) Documents;

(2) Manuscripts; or

(3) Records including patient records ; or

(4) X-Rays

including abstracts, books, deeds, drawings, films, maps or mortgages.

**But Valuable Papers and Records does not include:**

(1) Property that cannot be reproduced, replaced or restored.

(2) "Money" and "Securities",

(3) Converted data; or

(4) Programs or instructions used in your data processing operations, including the material on which the data is recorded.

B. **Limit of Insurance**

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Valuable Papers and Records shown in the Declarations.

C. **Deductible**

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in paragraph **D.4.** of the Standard Property Coverage Form or the Special Property Coverage Form, whichever form applies to this policy. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

D. Under this Optional Coverage we will not pay for property:

(1) Held as samples or for delivery after sale;

(2) In storage away from the premises shown in the Declarations; or

(3) If such property can not be replaced with other property of like kind and quality.

E. With respect to this Optional Coverage, Coverage Extension **A.5.g.**, Property Off-Premises in the Standard Property Coverage Form and Coverage Extension **A.6.g.**, Property Off-Premises in the Special Property Coverage Form are replaced by the following:

You may apply the insurance provided under this Optional Coverage to Valuable Papers and Records while such property is not at the described premises, including while in transit. The most we will pay for loss or damage under this Coverage Extension is 25% of the Limit of Insurance shown in the Declarations for Valuable Papers and Records but not more than $5,000.

This coverage does not apply to property in storage.

F. The Valuable Papers and Records Coverage Extension, paragraph **A.5.h.** in the Standard Property Coverage Form and paragraph **A.6.h.** in the Special Property Coverage Form., do not apply to any premises where this Optional Coverage applies.

G. With respect to coverage provided by this endorsement, paragraph **E.5.d.(6)** in the Standard Property Coverage Form and in the Special Property Coverage Form are replaced by the following:

(6) We will determine the value of "Valuable Papers and Records" at the cost of:

a. Blank materials for reproducing the records; and

© 2002, The Hartford

    b.  The reasonable cost to research, replace or restore the lost information.

H.  Paragraph **A.3.**, Covered Causes of Loss, and **Section B.**, Exclusions, do not apply to this Optional Coverage except for:

    (1)  Paragraph **B.1.c.**, Governmental Action;

    (2)  Paragraph **B.1.d.**, Nuclear Hazard; and

    (3)  Paragraph **B.1.f.**, War and Military Action.

I.   **Additional Exclusions**

We will not pay for loss or damage caused by or resulting from any of the following:

    (1)  Dishonest acts by:

        (a)  You, or your employees or authorized representatives;

        (b)  Anyone else with an interest in the property, or their employees or authorized representatives; or

        (c)  Anyone else to whom the property is entrusted.

        This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

        But this exclusion does not apply to a carrier for hire.

    (2)  Errors or omissions in processing or copying.

        But we will pay for direct loss or damage caused by resulting fire or explosion.

    (3)  Electrical or magnetic injury, disturbance or erasure of electronic recordings.

        But we will pay for direct loss or damage caused by lightning.

    (4)  Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

    (5)  Unauthorized instructions to transfer property to any person or to any place.

Form SS 04 47 10 02



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SUPER STRETCH

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

A. The following changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

1. **Blanket Coverage Limit of Insurance**

   The following Additional Coverage is added:

   We will pay up to $150,000 as a Blanket Coverage Limit of Insurance to apply at each described premises and to apply to the sum of all covered losses under the coverages described in this section **A.1.a.** through **A.1.f.** arising out of a single Covered Cause of Loss occurrence. You may apportion this Limit among these coverages as you choose.

   This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for these coverages.

   a. **Accounts Receivable**

      Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or damage to your records of accounts receivable.

      This Additional Coverage is subject to the provisions of Accounts Receivable, Form SS 04 39, with the exception of the Limit of Insurance provision contained in that form. Accounts Receivable, Form SS 04 39 is made a part of this policy whether or not Accounts Receivable coverage is indicated in the Declarations.

   b. **Computers and Media**

      Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or damage to your computer systems.

      This Additional Coverage is subject to the provisions of Computers and Media, Form SS 04 41, with the exception of the Limit of Insurance provision contained in that form. Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

   c. **Debris Removal**

      Within the Blanket Coverage Limit of Insurance, we will pay for increases under Debris Removal additional limit, **C.4.b.** This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

   d. **Personal Property of Others**

      Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or damage to personal property of others that is in your care, custody or control.

      This Additional Coverage is subject to the provisions of Personal Property of Others, Form SS 04 45, with the exception of the statement concerning Limit of Insurance applicable to Personal Property of Others shown in the Declarations, contained in that form. Personal Property of Others, Form SS 04 45 is made a part of this policy whether or not Personal Property of Others coverage is indicated in the Declarations.

© 2001, The Hartford

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

e. **Temperature Change**

Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or damage to perishable stock caused by a change of temperature or contamination by a refrigerant.

This Additional Coverage is subject to the provisions of the Temperature Change Coverage, Form SS 04 46, with the exception of the Limit of Insurance provision contained in that form. Temperature Change, Form SS 04 46 is made a part of this policy whether or not Temperature Change coverage is indicated in the Declarations.

This Temperature Change coverage is for direct damage only and does not apply to any loss due to interruption of business.

f. **Valuable Papers and Records**

Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or damage to your valuable papers and records.

This Additional Coverage is subject to the provisions of the Valuable Papers and Records Coverage, Form SS 04 47, with the exception of the Limit of Insurance provision contained in that form. Valuable Papers and Records Coverage, Form SS 04 47 is made a part of this policy whether or not Valuable Papers and Records coverage is indicated in the Declarations.

2. **Back Up of Sewer or Drain Water Damage.**

The following Additional Coverage is added:

We will pay for loss or damage to Covered Property solely caused by water that backs up from a sewer or drain.

This coverage is included within the Covered Property Limits of Insurance.

**THIS IS NOT FLOOD INSURANCE**

We will not pay for water or other materials that back up from any sewer or drain when it is caused by any flood. This applies regardless of the proximity to the flood. Flood means the overflow of surface water, streams or other bodies of water, or their spray, all whether driven by wind or not.

3. **Brands and Labels**

The following Additional Coverage is added:

In the event of covered loss or damage to merchandise that is branded or labeled, we will take all or part of the damaged property at an agreed or appraised value and we will pay for:

a. Expenses you incur to:
   (1) Stamp salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or
   (2) Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise and its containers to comply with the law.

b. Any reduction in the salvage value of the damaged merchandise as the result of the removal of the brand or label.

This Additional Coverage is included within the Business Personal Property Limit of Insurance.

4. **Claim Expenses**

The following Additional Coverage is added:

In the event of covered loss or damage we will pay up to $5,000 as an additional Limit of Insurance to cover reasonable expenses incurred by you at our specific request to assist us in:

a. The investigation of a claim or suit; or·

b. The determination of the amount of loss, such as taking inventory, or auditing business records.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

5. **Consequential Loss to Stock**

The following Additional Coverage is added:

If pairs or sets of stock are damaged by a Covered Cause of Loss, we will pay any reduction in value of the undamaged parts of such damaged pairs or sets.

As used in this Additional Coverage, the term stock means merchandise held in storage or for sale, raw materials, and goods in-process or finished.

This coverage is included within the Business Personal Property Limit of Insurance.

6. **Employee Dishonesty (including ERISA)**

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to cover loss from employee dishonesty. This

includes ERISA coverage. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Employee Dishonesty Coverage, Form SS 04 42, with the exception of the Limit of Insurance provision contained in that form Employee Dishonesty Coverage, Form SS 04 42 is made a part of this policy whether or not Employee Dishonesty Coverage is indicated in the Declarations.

7. **Fine Arts**

The following Additional Coverage is added:

We will pay up to $25,000 as an additional Limit of Insurance at each described premises to extend the insurance that applies to Business Personal Property to apply to Fine Arts that are:

a. Your property; or

b. The property of others that is in your care, custody or control.

As used in this Additional Coverage, **Fine Arts** means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, and similar property, of rarity, historical value or artistic merit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

The value of Fine Arts will be the market value at the time of loss or damage.

8. **Forgery**

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to cover loss from forgery or alteration. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Forgery Coverage, Form SS 04 86, with the exception of the Limit of Insurance provision contained in that form.    Forgery Coverage, Form SS 04 86 is made a part of this policy, whether or not Forgery Coverage is indicated in the Declarations.

9. **Increased Cost of Construction (Buildings and Tenant Improvements)**

The following Additional Coverage is added:

If a Covered Cause of Loss occurs to covered Building property and tenant's improvements and betterments, we will pay for the increased cost to

repair, rebuild or construct the damaged property caused by enforcement of building, zoning or land use law.  The repaired or rebuilt property must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use law.

a. **Limitation**

We will not pay for increased construction costs:

(1) When the Actual Cash Value - Buildings applies; or

(2) Until the property is actually repaired or replaced, at the same or another premises.

b. **Exclusion**

We will not pay for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

c. **Limit of Insurance**

The most we will pay for increased construction costs at each described property:

(1) For Building property is $10,000; and

(2) For Tenant Improvement and Betterments is $20,000.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

d. The terms of these Coverages apply separately to each building.

10. **Laptop Computers - Worldwide Coverage**

The following Additional Coverage is added:

We will pay up to $10,000 as a Limit of Insurance to apply to laptop, palmtop and similar portable computer equipment and accessories anywhere in the world, including while in transit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**Limitation:**  We will not pay for loss or damage caused by, resulting from, arising out of the theft of this property which in transit as checked baggage.

This Additional Coverage is subject to the provisions of Computers and Media, Form SS 04 41, with the exception of the Limit of Insurance provision contained in that form.  Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

**11. Off-Premises Utility Services - Direct Damage**

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to apply at each described premises to cover direct physical loss or damage to Covered Property caused by the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Off-Premises Utility Services - Direct Damage, Form SS 40 18, with the exception of the Utility Services Limit of Insurance contained in that form. Off-Premises Utility Services – Direct Damage, Form SS 40 18 is made a part of this policy, whether or not Off-Premises Utility Services – Direct Damage coverage is indicated in the Declarations.

**12. Outdoor Signs**

The following Additional Coverage is added and supercedes any other coverage for signs in this policy:

This Additional Coverage is in addition to any recoverable Limits of Insurance applicable to Building or Business Personal Property.

We will pay up to full value of outdoor signs at each described premises to cover direct physical loss or damage to outdoor signs.

This Additional Coverage is subject to the provisions of Outdoor Signs, Form SS 04 44, with the exception of the Limit of Insurance provision and paragraph E. of that form. Outdoor Signs, Form SS 04 44 is made a part of this policy whether or not Outdoor Signs coverage is indicated in the Declarations.

**13. Personal Effects**

The following Additional Coverage is added:

We will pay up to $10,000 as an additional Limit of Insurance to apply at each described premises to extend coverage that applies to Business Personal Property to cover personal effects owned by you, your officers, your partners, or your employees.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**14. Property at Other Premises**

The following Additional Coverage is added:

We will pay up to $10,000 to extend Business Personal Property and Valuable Papers and Records to apply at any premises not described in the Declarations. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This includes property that you have sold under an installation agreement and your responsibility continues until the property is accepted by the customer.

This Extension does not apply to:

a. Property in the care, custody or control of your salespersons; or

b. Property at any fair or exhibition.

This Limit of Insurance is in addition to any other Limit shown in the Declarations for this coverage.

**15. Salespersons' Samples**

The following Additional Coverage is added:

We will pay up to $5,000 as an additional Limit of Insurance to extend Business Personal Property to cover:

a. Samples of your stock in trade (including containers); and

b. Similar property of others;

but only while such property is in: (1) your custody while acting as a sales representative or (2) in the custody of your sales representatives or agents.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**16. Tenant Building Coverage - Required by Lease**

The following Additional Coverage is added:

We will pay up to $20,000 as a Limit of Insurance to apply to direct physical loss of or damage to Building and Business Personal Property for which you have a contractual responsibility to insure. This includes building fixtures, machinery and equipment. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**17. Transit Coverage**

This Additional Coverage is added only if your policy includes the Special Property Coverage Form.

We will pay up to $10,000 as a Limit of Insurance to apply to direct physical loss of or damage to property while in transit at your risk. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Transit Coverage, Form SS 04 30, with the exception of the Limit of Insurance provision contained in that form.    Transit

Coverage, Form SS 04 30 is made a part of this policy whether or not Transit Coverage is indicated in the Declarations.

**18. Valuation Changes**

The following are added to the Loss Payment Property Loss Condition E.5.d.:

**a. Commodity Stock**

We will determine the value of merchandise and raw materials that are bought and sold at an established market exchange. We will determine the value at:

(1) The posted market price as of the time and place of loss;

(2) Less discounts and expenses you otherwise would have had.

**b. Manufactured Goods**

We will determine the value of goods that you have manufactured at the selling price less discounts and expenses you otherwise would have had.

**c. Mercantile Stock - Sold**

We will determine the value of goods you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**B.** The following changes apply to the Standard Property Coverage Form, Coverage Extensions, A.5., or to the Special Property Coverage Form, Coverage Extensions, A.6.:

**1. Newly Acquired or Constructed Property**

The following changes are made to Newly Acquired or Constructed Property:

**a. Building**

The most we will pay in subparagraph **(1)** is increased to $1,000,000 at each premises.

**b. Business Personal Property**

The most we will pay in subparagraph **(2)** is increased to $500,000 at each premises.

**2. Outdoor Property**

In the Outdoor Property Coverage Extension, the most we will pay is increased to $25,000, but not more than $1,000 for any one tree, shrub or plant.

**3. Property Off Premises**

The following changes are made to subparagraph **c.(2)** of Property Off Premises:

**a.** The most we will pay is increased to $25,000.

**C.** The following changes apply only if Business Income and Extra Expenses are covered under this policy. These changes apply to the Standard Property Coverage Form, Additional Coverages, A.4., or to the Special Property Coverage Form, Additional Coverages, A.5.:

**1. Business Income at Newly Acquired Premises**

The following Additional Coverage is added:

**Business Income at Newly Acquired Premises**

We will pay up to $250,000 as a Limit of Insurance to apply to Business Income and Extra Expense to cover at any location you acquire, other than fairs or exhibitions. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**a.** This policy expires;

**b.** 90 days expire after you acquire or begin to construct the property, or

**c.** You report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

**2. Business Income Extension for Off-Premises Utility Services**

The following Additional Coverage is added:

We will pay up to $25,000 as a Limit of Insurance to apply at each described premises to cover loss of Business Income and Extra Expense caused by the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Business Income Extension For Off-Premises Utility Services, Form SS 04 19, with the exception of the Limit of Insurance provision contained in that form. Business Income Extension For Off Premises Utility Services, Form SS 04 19 is made a part of this policy whether or not Business Income Extension For Off-Premises Utility Services coverage is indicated in the Declarations.

**3. Business Income Extension for Web Sites**

The following Additional Coverage is added:

We will pay up to $50,000 as a Limit of Insurance to cover loss of Business Income you sustain due to the necessary interruption of business

operations caused by direct physical loss or damage to your Web Site operation at the premises of a vendor acting as your service provider. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

Such interruption must be caused by or result from a Covered Cause of Loss.

a. **Coverage Time Period**

We will only pay for loss you sustain during the 7-day period immediately following the first 12 hours after the Covered Cause of Loss.

b. **Conditions**

This coverage applies only:

(1) If you have a back-up copy of your Web Page stored at a location other than the site of the Web Site vendor.

(2) To the extent that Business Income is permanently lost.

4. **Dependent Properties - Anchor Stores and Major Suppliers**

The following Additional Coverage is added:

We will pay up to $50,000 as a Limit of Insurance to apply to loss of Business Income and Extra Expense due to direct physical damage at property of others you depend on. This Limit of Insurance is in addition to any other Limit shown in the Declarations for specific Dependent Properties.

This additional coverage is subject to the provisions of Dependent Properties - Anchor Stores/Major Suppliers, Form SS 04 78, with the exception of the Limit of Insurance provision

contained in that form. Anchor Stores/Major Suppliers, Form SS 04 78 is made a part of this policy whether or not Anchor Stores/Major Suppliers coverage is indicated in the Declarations.

There is no requirement for Dependent Properties to be scheduled for the coverages provided by this STRETCH endorsement to apply.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEPENDENT PROPERTIES - ANCHOR STORES AND MAJOR SUPPLIERS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of this policy apply to the insurance stated below

**The following is added to Additional Coverages:**

**Dependent Properties**

1.  **Coverage**

    Your Business Income and Extra Expense coverages are extended to apply to covered loss at your described premises, caused by direct physical loss or damage by a Covered Cause of Loss to the Dependent Properties stated in the Declarations.

    Dependent Properties means property operated by others that you depend on to:

    a.  Deliver materials or services to you or to others for your account.   This does not include:

        (1)  Water, communication, power supply or any other utility service; or

        (2)  Any type of web site or internet service.

    b.  Accept your products or services;

    c.  Manufacture products for delivery to your customers under contract of sale; or

    d.  Attract customers to your business premises.

2.  **Additional Conditions**

    The following conditions also apply:

    a.  Coverage provisions respecting direct physical loss or damage will apply separately to each Dependent Property premises.

    b.  This Additional Coverage will end when the Dependent Property should be rebuilt or replaced with reasonable speed and similar quality.

3.  **Limit of Insurance**

    The most we will pay for each occurrence of loss under this Additional Coverage is the Limit of Insurance for this coverage stated in the Declarations.

© 2001, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CRIME COMMON CONDITIONS AND EXCLUSIONS

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

The following conditions are added the **Standard Property Coverage Form** and the **Special Property Coverage Form.**

## A.  CRIME COMMON CONDITIONS

1.  **Consolidation - Merger**

   If through consolidation or merger with, or purchase of assets of, some other entity:

   a.  Any additional persons become "employees"; or

   b.  You acquire the use and control of any additional premises;

   any insurance afforded for "employees" or premises also applies to those additional "employees" and premises, but only if you:

   (1) Give us written notice within 60 days thereafter; and

   (2) Pay us an additional premium.

2.  **Discovery Period for Loss**

   We will pay only for covered loss discovered no later than one year from the end of the policy period.

   Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this policy has been, or may be incurred even though the exact amount or the details of the loss may not then be known.

   Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts, which if true, would be a covered loss under this policy.

3.  **Joint Insured**

   a.  If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance.  If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

   b.  If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

   c.  An "employee" of any Insured is considered to be an "employee" of every Insured.

   d.  If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

   e.  We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

4.  **Legal Action Against Us**

   The following replaces the Legal Action Against Us in the Property Loss Conditions:

   No one may bring a legal action against us under this Coverage Part unless:

   a.  There has been full compliance with all of the terms of this Coverage Part; and

   b.  The action is brought within 2 years after the date on which you discover the loss .

Form SS 04 80 03 00

© 2000, The Hartford

Page 1 of 3

5. **Loss Sustained During Prior Insurance**

   a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

      (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

      (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

   b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

      (1) This insurance as of its effective date; or

      (2) The prior insurance had it remained in effect.

6. **Non-Cumulation of Limit of Insurance**

   Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

7. **Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate**

   If any loss is covered under this policy and under any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest, we will not pay more that the highest single Limit of Insurance. We will settle such claim as follows:

   a. We will first pay the Limit of Insurance applicable under this policy subject to this policy's applicable deductible; then

   b. If the Limit of Insurance under that prior policy is equal to or less than the Limit of Insurance under this policy, we will make no further payment; or

   c. If the Limit of Insurance under that prior policy is higher than the Limit of Insurance under this policy, we will then pay for any remaining part of the loss.

   But in no event will our total payment for loss be more than would be payable under the policy with the highest Limit of Insurance.

We will also apply any deductible under that prior policy to the extent it exceeds the deductible under this policy.

8. **Ownership of Property, Interests Covered**

   The property covered under this insurance is limited to property:

   a. That you own or hold; or

   b. For which you are legally liable.

   However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

9. **Policy Period**

   a. The Policy Period is stated in the Declarations.

   b. Subject to the Loss Sustained During Prior Insurance condition, A.5. above, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

10. **Recoveries**

    The following replaces the Recovered Property in the Property Loss Conditions:

    a. Any recoveries less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

       (1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

       (2) Then to us, until we are reimbursed for the settlement made;

       (3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

    b. Recoveries do not include any recovery:

       (1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

       (2) Of original "securities" after duplicates of them have been issued.

B. **CRIME COMMON EXCLUSIONS**

The following are Exclusions replace the Exclusions in Section B:

1. **Governmental Action**

   We will not pay for loss resulting from seizure or destruction of property by order of governmental authority.

Form SS 04 80 03 00

2. **Indirect Loss**

We will not pay for loss that is an indirect result of any act or occurrence covered by this insurance including, but not limited to, loss resulting from:

   a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

   b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

   c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. **Legal Expenses**

We will not pay for expenses related to any legal action.

4. **Nuclear Hazard**

We will not pay for loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

5. **War and Similar Actions**

We will not pay for loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

## C. CRIME COMMON DEFINTIONS

The following is added to Definitions

**"Employee" means:**

1. Any natural person:

   a. While in your service (and for 60 days after termination of service); and

   b. Whom you compensate directly by salary, wages or commissions; and

   c. Whom you have the right to direct and control while performing services for you;

2. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises;

3. Any natural person who is your partner or member of a limited liability corporation.

4. Any natural person, whether or not compensated, while performing services for you as the chairman or a member of any committee;

5. Any natural person who is a non-compensated officer;

6. Any natural person who is a director or trustee while acting as a member of any of your elected or appointed committees or while acting within the scope of the usual duties of an "employee";

7. Any natural person who is a non-compensated volunteer, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee";

8. Any natural person who is a former employee, director, partner, member, representative or trustee retained as a consultant while performing services for you;

9. Any natural person who is a student intern who is pursuing studies or acting within the scope of the usual duties of an "employee";

10. Any natural person, who is a student enrolled in your facility, while handling or has possession of property or funds in connection with sanctioned student activities;

11. The spouses of and children over 18 years old who reside with any "employee" who is a building manager, superintendent or janitor.

    Each family is deemed to be, collectively, one "employee" for the purposes of this insurance, except that any Termination Condition applies individually to the spouse and children.

**"Employee" does not mean:**

(1) An agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any manager, director, partner, member or trustee, except while acting within the scope of the usual duties of an "employee".



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FORGERY COVERAGE

### (Including Credit Cards, Currency and Money Orders)

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**The following is added to Additional Coverages:**

**A.  FORGED OR ALTERED INSTRUMENTS COVERAGE**

1.  **Covered Property**

    Covered Property means the following instruments:

    a.  Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

    (1)  Made or drawn by or drawn upon you;

    (2)  Made or drawn by one acting as your agent;

    or that are purported to have been so made or drawn; and

    b.  Written instruments required in conjunction with any credit, debit or charge card issued to you or any "employee" for business purposes.

2.  **Covered Causes of Loss**

    Covered Causes of Loss means forgery or alteration.

3.  **Legal Expense Additional Coverage**

    If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we

will pay for any reasonable legal expenses that you incur and pay in that defense. This payment is in addition to the applicable Limit of Insurance. The Deductible does not apply to this Coverage Extension.

4.  **Additional Conditions**

    The following conditions apply in addition to the Common Policy Conditions and the Crime Common Conditions and Exclusions Form.

    a.  We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

    b.  You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

    c.  The Coverage Territory is revised to cover loss you sustain anywhere in the world.

5.  **Exclusion**

    The following Exclusion applies in addition to the Exclusions in the Crime Common Conditions and Exclusions.

    We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, or trustees:

    a.  Acting alone or in collusion with other persons; or

    b.  While performing services for you or otherwise.

Form SS 04 86 03 00

© 2000, The Hartford

**B. COUNTERFEIT CURRENCY AND MONEY ORDERS COVERAGE**

**1. Covered Property**

Covered Property means the following:

We will pay for loss directly resulting from

a. Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

b. Counterfeit United States or Canadian paper currency.

**2. Covered Causes of Loss**

Covered Causes of Loss means the acceptance of Covered Property in good faith, in exchange for merchandise, money or services, during the regular course of business.

**3. Exclusions**

The following Exclusion applies in addition to the Exclusions in the Crime Common Conditions and Exclusions.

a. We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

(1) Acting alone or in collusion with other persons; or

(2) While performing services for you or otherwise.

b. We will not pay for loss resulting from the giving or surrendering of property in any exchange or purchase.

c. We will not pay for loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**C  DEDUCTIBLE**

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**D. LIMIT OF INSURANCE**

The most we will pay for each Occurrence of loss under this Endorsement is the Forgery Limit of Insurance stated in the Declarations.

The Additional Coverages are included in this Limit of Insurance.

**E. OCCURRENCE DEFINITION**

1. For Forged or Altered Instruments Coverage, **Occurrence** means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments of Covered Property.

2. For Counterfeit Currency and Money Order Coverage, **Occurrence** means an:

a. Act or series of related acts involving one or more persons; or

b. Act or event, or series of related acts or events not involving any person.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBERFLEX COVERAGE

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

A. Exclusion **1.p.** (Section **B. - EXCLUSIONS**) is deleted and replaced by the following:

1. **Applicable to Business Liability Coverage**

   This insurance does not apply to:

   p. **"Personal and Advertising Injury":**

   (1) Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (2) Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

   (3) Arising out of a criminal act committed by or at the direction of the insured;

   (4) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site";

   (5) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site";

   (6) Arising out of the wrong description of the price of goods, products or services;

   (7) Arising out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

   However, this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of

   (a) Copyright;

   (b) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

   (c) Title of any literary or artistic work;

   (8) Arising out of an offense committed by an insured whose business is:

   (a) Advertising, broadcasting, publishing or telecasting;

   (b) Designing or determining content of web sites for others; or

   (c) An Internet search, access, content or service provider.

   However, this exclusion does not apply to Subparagraphs **a.**, **b.** and **c.** under the definition of "personal and advertising injury" in Paragraph **B.2.** of this endorsement.

   For the purposes of this exclusion, placing an "advertisement" for or linking to others on "your web site", by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

   (9) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers;

   (10) Arising out of the violation of a person's right of privacy created by any state or federal act.

   However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

Form SS 40 26 04 01

© 2001, The Hartford

(11) Arising out of a violation of any anti-trust law; or

(12) Arising out of the fluctuation in price or value of any stocks, bonds or other securities.

B. Section G. – LIABILITY AND MEDICAL EXPENSES DEFINITIONS is amended as follows:

1. The definition of "advertisement" is deleted and replaced by the following:

"Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

a. (1) Radio;

(2) Television;

(3) Billboard;

(4) Magazine;

(5) Newspaper;

(6) The Internet; or

b. Any other publication that is given widespread public distribution.

However, "advertisement" does not include the design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products.

2. The definition of "personal and advertising injury" is deleted and replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral, written or electronic publication of material that violates a person's right of privacy;

f. Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";

g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site"; or

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

(1) Not done intentionally by or at the direction of:

(a) The insured; or

(b) Any executive officer, director, stockholder, partner or member of the insured; and

(2) Not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured.

Paragraph h. does not apply in the States of Nebraska and Kansas.

As used in this definition, oral, written or electronic publication includes publication of material by someone not authorized to access or distribute that material. This would include publication of material as a result of someone's hacking into a computer network or "your web site".

3. The following definition is added:

"Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, that is accessible over a computer network.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PERILS SPECIFICALLY EXCEPTED

As used herein, "Peril" means a cause of physical loss or damage to property.  It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are **SPECIFICALLY EXCEPTED FROM THIS POLICY.  WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:**

A.  **ACTS, ERRORS OR OMISSIONS** by you or others in:

1.  Planning, zoning, developing, surveying, testing or siting property;

2.  Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;

3.  The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:

    a.  Land or buildings or other structures;

    b.  Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or

    c.  Other improvements or changes in or additions to land or other property.

4.  The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or

5.  The maintenance of any of such property or facilities.

This exception A. applies whether or not the property or facilities described above are:

1.  Covered under this policy; or

2.  On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

1.  If this policy is written to cover the risk of loss from specifically named causes.  "Covered Peril" means any Peril specifically named as covered; or

2.  If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B.  **COLLAPSE, "CRACKING" OR "SHIFTING"** of buildings, other structures or facilities, or their parts, if the collapse, "cracking" or "shifting":

1.  Occurs during "earth movement," "volcanic eruption" or "flood" conditions or within 72 hours after they cease; and

2.  Would not have occurred but for "earth movement," "volcanic eruption" or "flood."

But if loss or damage by a covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, "cracking" or "shifting" of buildings, other structures or facilities, or their parts.  Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

1.  Earthquake;

2.  Flood;

3.  Volcanic action;

4.  Volcanic eruption; or

5.  Sinkhole collapse,

this exception B. will not reduce that coverage.

As used in this exception B.:

---

Form IH 10 01 09 86   Printed in U.S.A.

Copyright, Hartford Fire Insurance Company, 1986

1. "Cracking" means cracking, separating, shrinking, bulging, or expanding;

2. "Shifting" means shifting, rising, settling, sinking, or lateral or other movement;

3. "Earth movement" means any earth movement, including but not limited to "earthquake," landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other "shifting" of earth; all whether or not combined with "flood" or "volcanic eruption." It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;

4. "Earthquake" means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or "shifting" of rock beneath the surface of the ground from natural causes. An "Earthquake" includes all related shocks and after shocks;

5. "Volcanic eruption" means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;

6. "Flood" means:

    a. Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

    b. Release of water held by a dam, levy or dike or by a water or flood control device;

    c. Water that backs up from a sewer or drain; or

    d. Water under the ground surface pressing on, or flowing, leaking or seeping through:

        (1) Foundations, walls, floors or paved surfaces;

        (2) Basements, whether paved or not; or

        (3) Doors, windows or other openings.

Copyright, Hartford Fire Insurance Company, 1986



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS HAZARD EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to any damages, judgments, settlements, loss, costs or expenses that:

1. May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2. Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos hazard; or

3. Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

Form SS 05 12 03 92  Printed in U.S.A. (NS)

© 1992, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - NUCLEAR ENERGY LIABILITY

1. This insurance does not apply:

   a. To any injury or damage:

   (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

   (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

   (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments or Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   c. To any injury or damage resulting from the "hazardous properties" of "nuclear material"; if:

   (1) The "nuclear material":

   (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

   (b) Has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (3) The injury or damage arises out of the furnishing by any insured of any "technology services" in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; or

   (4) The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (4) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this exclusion:

   a. "Byproduct material", "source material" and "special nuclear material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   b. "Hazardous properties" include radioactive, toxic or explosive properties.

   c. "Nuclear facility" means:

   (1) Any "nuclear reactor";

   (2) Any equipment or device designed or used for:

© 2001, The Hartford

(a) Separating the isotopes of uranium or plutonium;

(b) Processing or utilizing "spent fuel"; or

(c) Handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

d. "Nuclear material" means "byproduct material", "source material" or "special nuclear material".

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f. Injury or damage and "property damage" include all forms of radioactive contamination of property.

g. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

h. "Technology services" means:

(1) Consulting, analysis, design, installation, training, maintenance, support and repair of or on: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

(2) Integration of systems;

(3) Processing of, management of, mining or warehousing of data;

(4) Administration, management, operation or hosting of: another party's systems, technology or computer facilities;

(5) Manufacture, sale, licensing, distribution, or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

(6) Design and development of: code, software or programming; or

(7) Providing software application: services, rental or leasing.

i. "Waste" means any waste material:

(1) Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

(2) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."



# EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
# (CLAIMS MADE)

THE INSURANCE AFFORDED BY THIS COVERAGE IS CLAIMS MADE COVERAGE. THIS COVERAGE, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED TO US AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 60 DAYS AFTER THE END OF THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED. CLAIMS EXPENSES SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND SHALL BE INCLUDED IN THE DEDUCTIBLE.

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine your rights, duties and what is and is not covered. Please discuss the coverage provided by this policy with your insurance agent or broker.

Throughout this policy the words **you** and **your** refer to the **Named Insured** in the Declarations. The words **we, us and our** refer to the stock insurance company member of THE HARTFORD shown on the Declarations Page.

The word **Insured** means any person or organization qualifying as such under the definition of **Insured** as defined in **DEFINITIONS (SECTION II)**

Other words and phrases that appear in **bold** are defined in **DEFINITIONS (SECTION II)** of this Coverage Part.

In consideration of, and subject to, the payment of the premium by **you** and in reliance upon the accuracy and completeness of the **Application**, including but not limited to the statements, attachments and exhibits contained in and submitted with the **Application**, we agree with **you**, subject to all terms, exclusions and conditions of this coverage form, as follows:

## I.  INSURING AGREEMENT

A.  **We** will pay on behalf of the **Insured** all **Damages** which the **Insured** becomes legally obligated to pay as a result of a **Wrongful Act** alleged in any **Claim**, if the **Claim** is first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased, and reported to **us** as soon as practicable but in no event later than 60 days after the end of the **Policy Period** or the **Extended Reporting Period**, if purchased.

For the purposes of this coverage, a **Claim** shall be deemed first made against the **Insured** when the **Claim** is received by the **Insured**, not when the **Claim** is filed or initiated by the party or parties asserting the **Claim**.

B.  **We** shall have the right and duty to defend any such **Claim** to which this insurance may apply, even if the allegations of the **Claim** are groundless, false or fraudulent. The duty to defend provided by this coverage form will end when **we** have used up the applicable limit of insurance for the payment of **Damages** or **Claims Expenses**.

C.  **We** shall select defense counsel with the consent of the **Insured**, which consent shall not be unreasonably withheld. The **Insured** shall cooperate fully with **our** investigation and defense of any **Claim** as provided in **SECTION VIII.** below.

D.  **We** shall investigate the **Claim** and, with written consent of the **Insured**, shall settle or compromise any **Claim** as **we** deem appropriate. If the **Insured** refuses to consent to any settlement or compromise recommended by **us** and acceptable to the claimant, then **our** liability to pay **Damages** and **Claims Expenses** shall not exceed the amount which **we** would have paid for **Damages** and **Claim Expenses** at the time the **Claim** could have been settled or compromised, less any deductible.

E.  This insurance applies only if on or before the effective date of this coverage, the **Insured** had no knowledge of any circumstances involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, which could reasonably be expected to result in a **Claim** made against **you**, any **Insured** or any **Subsidiary** under this insurance.

Form SS 09 01 09 00

© 2000, The Hartford

## II.  DEFINITIONS

When the following terms are used in this coverage form in boldface type, whether in singular or in plural, they shall have the meanings indicated.

A. **Application** means the written application and the proposal or application for any policy in an uninterrupted series of policies issued by **us** of which this coverage form is a renewal or replacement.

B. **Claim** means:

(1) any written demand received by the **Insured** which seeks monetary relief from the **Insured** for a **Wrongful Act** and which has been received within the Coverage Territory set forth in Section VI;

(2) any civil proceeding or lawsuit received by the **Insured**, whether through service or otherwise, which seeks monetary relief from the **Insured** for a **Wrongful Act** and which has been filed within the Coverage Territory set forth in Section VI;

(3) any investigative order or notice of charge received by the **Insured** relative to an administrative or regulatory proceeding initiated before the Equal Employment Opportunity Commission or a similar state agency, which alleges a **Wrongful Act** committed by the **Insured** and which has been filed within the Coverage Territory set forth in Section VI; and

(4) any written notice received by the **Insured** of an arbitration, mediation or other form of alternative dispute resolution proceeding, which seeks monetary relief from the **Insured** for a **Wrongful Act** and which has been commenced within the Coverage Territory set forth in Section VI;

however, **Claim** shall not include any organized labor or grievance proceeding or arbitration subject to a collective bargaining agreement.

C. **Claim Expenses** means:

(1) the reasonable and necessary fees charged by any lawyer designated by **us** or by the **Insured** with **our** written consent in defending the **Insured** in connection with any **Claim**; and

(2) all other reasonable and necessary fees, costs and expenses incurred on behalf of the **Insured** by **us** or by the **Insured** with **our** written consent in the investigation, adjustment, defense and appeal of any **Claim**;

however, **Claim Expenses** shall not include **Damages**, salaries, wages, remuneration, overhead or benefit expenses associated with any **Insured** or any of the employees or officials of any **Insured**.

D. **Damages** means all sums which the **Insured** is legally obligated to pay solely as a result of a **Claim** insured by this coverage form, including judgments, settlements, damages (including back pay, front pay and other damages for loss of future earnings), attorneys' fees, costs or expenses awarded to a prevailing claimant or plaintiff, pre-judgment interest and post-judgment interest;

however, **Damages** shall not include:  .

(1) matters deemed uninsurable under the law pursuant to which this Policy is construed;

(2) taxes, civil or criminal fines or penalties imposed by law;

(3) punitive, exemplary or liquidated damages or the portion of any multiplied damages award which exceeds the amount that was multiplied, unless these damages are included within **Damages** by an endorsement attached to this coverage form and are insurable under the law pursuant to which this Policy is construed;

(4) the costs associated with any form of non-monetary relief awarded against **you** or any **Insured**; or

(5) judgments, awards, or settlements or any other amounts owed to any claimant's domestic partner, spouse, child, parent or sibling.

E. **Insured** means:

(1) **you;**

(2) any **Subsidiary** of yours;

(3) if **you** are a corporation or an organization other than a partnership or a joint venture, any past, present or future directors and officers of **yours** or any **Subsidiary** of **yours**, but only for acts within the scope of their capacity as **your** director or officer or **your Subsidiary's** director or officer;

(4) if **you** are a partnership or joint venture, any general or limited partner of **yours**, but only for acts within the scope of **your** partnership or joint venture;

(5) if **you** are a limited liability company, any member or manager of **yours**, but only for acts within the scope of their capacity as **your** member or managers;

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

(6) any past, present or future employee, whether such employee was or is in a supervisory, co-worker, subordinate, part-time, seasonal and/or temporary position, of **yours** or any **Subsidiary** of yours, but only for acts within the scope of their employment by **you** or **your Subsidiary**; however independent contractors are not employees and are not **Insureds**;

(7) any individual who is a leased or loaned employee to **you** or any **Subsidiary** of **yours**, provided that **you** or **your Subsidiary** provides indemnification for such individual for services rendered in the same manner as if those services were rendered by an employee of **yours** or **your Subsidiary**; and

(8) the heirs, executors, administrators, assigns or legal representatives of each of the above **Insureds** in the event of their death, incapacity or bankruptcy.

However, no person or organization is an **Insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a **Named Insured** in the Declarations.

F. **Named Insured** means the individual, partnership or corporation designated in the Declarations.

G. **Policy Period** means the period from the Policy Inception Date and hour to the Policy Expiration Date and hour stated in the Declarations or the earlier cancellation date of the Policy, if any.

H. **Related Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

I. **Subsidiary** means any entity in which, and only for the period of time that, more than 50% of the outstanding securities or voting rights representing the present right to vote for the election of directors of such entity are owned by **you** directly or through one or more of **your Subsidiaries**, if such entity:

(1) was so owned at the Policy Inception Date; or

(2) becomes so owned after the Policy Inception Date provided the provisions of Section IX. C. (2) are fulfilled.

J. **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **Insured** in connection with any:

(1) wrongful dismissal, discharge or termination in employment, whether actual or constructive;

(2) wrongful failure to hire or promote;

(3) wrongful discipline or demotion;

(4) wrongful failure to create, apply or enforce any employment-related policy or procedure;

(5) wrongful failure to grant tenure;

(6) employment-related misrepresentation or defamation;

(7) employment-related invasion of privacy;

(8) employment-related infliction of emotional distress;

(9) employment-related unlawful discrimination, including, but not limited to, discrimination based upon age, gender, sex, pregnancy, race, color, national origin, religion, sexual orientation, sexual preference, marital status, disability or any other class of persons protected under any federal, state, municipal or local law;

(10) employment-related unlawful sexual harassment or other form of workplace harassment, including hostile work environment and quid pro quo harassment, prohibited by any federal, state, municipal or local law;

(11) employment-related unlawful retaliation against a past, present or future employee of **yours** or any **Subsidiary** of **yours**, prohibited by any federal, state, municipal or local law;

(12) violation of the Family and Medical Leave Act, as amended;

(13) negligent hiring, evaluation, retention or supervision related to any of the above actual or alleged acts only;

provided that the actual or alleged **Wrongful Act** is directed against a past, present or future employee (whether supervisory, co-worker, subordinate, part-time, seasonal and/or temporary, leased or loaned) of **yours** or any **Subsidiary** of **yours**, or an applicant for employment with **you** or **your Subsidiary**.

## III. EXCLUSIONS

This coverage form shall not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

A. in fact any dishonest, fraudulent, criminal, or malicious act or omission committed by or at the direction of the **Insured**;

provided, however, the dishonest, fraudulent, criminal, or malicious act or omission of one **Insured** shall not be imputed to any other **Insured** or to **your** strictly vicarious liability for the purpose of determining the applicability of this exclusion;

B. any act, incident or omission which has been the subject of any notice of circumstance or notice of claim given under any policy or coverage of which this coverage form is a renewal or replacement, or any policy or coverage with an inception date which precedes the inception date stated in the Declarations;

C. any actual or alleged violation of the responsibilities, obligations or duties imposed by the Fair Labor Standards Act (other than the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the Immigration and Nationality Act, Title IX of the Education Amendments of 1972, the Immigration Reform and Control Act or any statute relating to the benefits, compensation or employment of veterans; or any amendment to any of the foregoing statutes, any rules or regulations promulgated under the foregoing statutes or any other similar law;

D. the **Insured's** activities and or capacity as:

(1) an officer, director, partner, trustee or employee of a business enterprise not named in the Declarations;

(2) an officer, director, partner, trustee or employee of a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust; or

(3) a fiduciary under the Employment Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto, or any other pension, welfare, retirement or other employee benefit plan or trust sponsored, established or maintained in whole or in part for the benefit of any of **your** employees or the employees of **your Subsidiary**;

whether or not such activities were at the request of any other **Insured**;

E. bodily injury to or sickness, disease or death of any person, damage to or destruction of tangible property, including loss of use thereof, assault or battery; provided, that this exclusion shall not apply to employment-related infliction of emotional distress;

F. the failure of the **Insured** to comply with any law governing worker's compensation, unemployment insurance, social security, disability benefits or any similar law;

G. a lockout, strike, picket line, replacement or any other action resulting from or related to organized labor disputes or labor negotiations;

H. damages, costs or expenses incurred by an **Insured** in making physical changes, modifications, alterations or improvements as a part of an accommodation of any disabled person pursuant to the Americans With Disabilities Act of 1990 (ADA), the rules and regulations promulgated thereunder, or any similar federal, state or local law, as amended;

I. any actual or alleged breach of contract, whether oral, written, express or implied.

J. Any injury or damage arising from:

(1) The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

IV. DISCOVERY CLAUSE

If during the **Policy Period** or the **Extended Reporting Period**, if purchased, any **Insured** first becomes aware of a specific **Wrongful Act**, and if the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased, gives written notice to **us** of:

A. the specific **Wrongful Act**;

B. the **Damages** which have or may result from such **Wrongful Act**; and

C. the circumstances by which the **Insured** first became aware of such **Wrongful Act**,

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this insurance to have been made on the date on which written notice was given to **us**.

V. EXTENDED REPORTING PERIOD

Subject to provisions A. through E. below, if this policy is canceled or non-renewed other than for non-payment of premium, **you** shall have the right to purchase an extended period to report **Claims** under this coverage form for any **Claim** first made during the period of time set forth in the Supplemented Extended Reporting Period Endorsement, and following the effective date of such cancellation or nonrenewal and reported in writing during such period or within 60 days thereafter, but only with respect to any **Wrongful Act** which takes place prior to the effective date of such cancellation or nonrenewal.

A. The **Extended Reporting Period** shall be effective only upon the payment of an additional premium. The additional premium will be 200% of the annual advance premium for this coverage. At the commencement of the **Extended Reporting Period**, the entire premium therefor shall be deemed fully earned and non-refundable.

B. The quotation of a different premium or deductible or limit of liability for renewal is not a cancellation or refusal to renew for the purposes of this provision.

C. **You** shall have no right to purchase the **Extended Reporting Period**, unless **you** have satisfied all conditions of the coverage form and all premiums and Deductibles outstanding have been paid.

D. **Your** right to purchase the **Extended Reporting Period** shall terminate unless written notice together with full payment of the premium for the **Extended Reporting Period** is given to **us** no later than 60 days following the effective date of cancellation or nonrenewal.

E. The fact that the period of time to report **Claims** is extended by virtue of the **Extended Reporting Period** shall not increase or reinstate the Limit of Liability stated in the Declarations, shall not extend the **Policy Period** or change the scope of coverage provided.

VI. COVERAGE TERRITORY

The insurance afforded by this coverage form applies worldwide, provided that the **Claim** is made and any legal action is pursued within the United States of America, its territories, possessions or commonwealths, or Canada.

VII. LIMIT OF LIABILITY AND DEDUCTIBLE

A. **We** will pay all **Damages** and **Claim Expenses** resulting from each **Claim** in excess of the Deductible the Declarations, subject to Sections VII B. through VII G.

B. The maximum **we** will pay for each **Claim** is the Each Claim Limit of Liability stated in the Declarations, subject to the Annual Aggregate Limit of Liability the Declarations.

C. The maximum **we** will pay for all **Claims** under this Coverage Part is the Annual Aggregate Limit of Liability stated in the Declarations, regardless of the number of **Claims**.

D. **Claim Expenses** shall be part of and not in addition to the Limit of Liability and payments of **Claim Expenses** and **Damages** shall reduce the Limit of Liability.

E. If the applicable Limit of Liability is exhausted by:

(1) payment of **Damages**;

(2) payment of **Claim Expenses**, or

(3) any combination of the above,

all of **our** obligations under the this Coverage Part with respect to any **Claim**, including the duty to defend, shall terminate immediately.

F. Deductible

(1) The Deductible stated in the Declarations shall be paid by **you**, shall apply to each **Claim** and shall include **Damages** and **Claim Expenses**.

(2) **We** may from time to time advance payments for **Damages** and **Claim Expenses** within the Deductible. Any amounts within the Deductible shall, upon written demand by **us**, be paid by **you** within 30 days.

Form SS 09 01 09 00

G. Multiple Insureds, Claims and Claimants

   (1) Two or more **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be treated as a single **Claim** and shall be considered first made at the earlier of the following times:

     (a) The time at which the earliest **Claim** involving the same **Wrongful Act** or **Related Wrongful Act** is first made, or

     (b) The time at which the **Claim** involving the same **Wrongful Act** or **Related Wrongful Act** is deemed to have been first made pursuant to Section IV.

   (2) The inclusion of more than one **Insured** in the making of a single **Claim**, the bringing of more than one **Claim** regarding the same **Wrongful Act** or **Related Wrongful Acts** or the making of a **Claim** by more than one person or organization shall not increase the Limit of Liability.

The Limit of Liability for this coverage form applies separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Liability.

## VIII. DUTIES IN THE EVENT OF CLAIM

As a condition precedent to any coverage provided by this insurance and any obligations of **ours** under this coverage form, the **Insured** must comply with each of the following duties in the Event of a **Claim**.

A. Notice of **Claim**

   (1) The **Insured** shall provide **us** with written notice of any **Claim** as soon as practicable, but in no event later than 60 days after the end of the **Policy Period** or the **Extended Reporting Period**, if purchased.

   (2) The **Insured** must include with any notice of **Claim** a description of the **Claim**, the nature of the alleged **Wrongful Act**, a summary of the facts upon which the **Claim** is based, the nature of the alleged damage, the names of the claimants, the names of the **Insureds** against whom the **Claim** has been made, the manner in which the **Insured** first became

aware of the **Claim** and any documents received directly by the **Insured** or by the **Insured's** representatives in connection with the making and handling of the **Claim**, such as any letters, demands, or summonses.

B. Assistance and Cooperation of the Insured

   (1) The **Insured** shall fully assist and cooperate with **us** in the investigation, settlement and defense of all **Claims** and upon **our** request shall authorize the release of records and other information, secure and give evidence, attend hearings and trials and obtain the location and cooperation of witnesses.

   (2) The **Insured** shall not, except at the **Insured's** own cost, voluntarily make any payment, assume any obligation, incur any expenses, or admit any liability in connection with any **Claim**, incur any **Claim Expenses**, or settle any **Claim** without **our** written consent. The **Insured** further agrees not to take any action which may increase **our** exposure under this coverage form.

C. Subrogation

   (1) In the event of any payment under this coverage form, we shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver all instruments and papers required and do whatever else is necessary to secure and preserve such rights and to enable **us** to effectively bring suit in **our** name. The **Insured** shall do nothing to prejudice such rights and shall provide all assistance and cooperation which we may reasonably require.

   (2) We shall not exercise any such right against any persons, firms or corporations included in the definition of **Insured**. Notwithstanding the foregoing, we reserve the right to exercise any rights of subrogation against an **Insured** with respect to any **Claim** brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of such **Insured**.

D. False or Fraudulent Claims

If any **Insured** commits any false or fraudulent act in connection with the submission of a **Claim** under this coverage form, this insurance shall be rendered null and void as to that **Insured** from the date such fraudulent **Claim** is received by **us**.

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

## IX. CONDITIONS

### A. Application

In granting coverage under this coverage form, we have relied on the representations in the **Application**. All such representations are the basis of coverage under this insurance.

By acceptance of this Policy, the **Insured** agrees that with respect to the statements in the **Application**:

(1) that the statements in the **Application** are the true and correct representations of the **Insured**, each shall be deemed material to the acceptance of the risk or the hazard assumed by **us** under this insurance, and this coverage form is issued in reliance upon the truth and accuracy of such representations;

(2) that in the event the **Application** contains misrepresentations or fails to state facts which materially affect either the acceptance of the risk or the hazard assumed by **us** under this coverage form, this insurance in its entirety shall be void and of no effect whatsoever, and

(3) that this coverage form shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual insurance contracts with each **Insured**.

### B. Other Insurance

This insurance shall apply in excess of the amount of the Deductible and any other valid and collectible insurance available to the **Insured**, whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance specifically applies as excess insurance over the Limit of Liability provided herein.

### C. Changes in Exposure

(1) If after the Inception Date of this Policy:

(a) **you** merge into or consolidate with another organization such that the other organization is the surviving organization;

(b) another organization or person or group of organizations and/or persons acting in concert acquires all or substantially all of **your** assets;

(c) another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by such other organization or person or group of organizations or persons of more than 50% of the outstanding securities

representing the present right to vote for the election of **your** directors; or

(d) **you** experience a cumulative change of 50% or more of the persons occupying positions on **your** Board of Directors,

then coverage under this coverage form shall continue to apply to the **Insured**, but only with respect to any **Claims** first made during the **Policy Period** or the **Extended Reporting Period**, if purchased, for **Wrongful Acts** committed or allegedly committed prior to the effective date of such merger, consolidation, acquisition or change in positions and only if the following conditions are met:

(i) the **Insured** provides written notice of such event or transaction to **us** within 30 days of the effective date of such event or transaction;

(ii) the **Insured** provides **us** with such information in connection therewith as we may deem necessary; and

(iii) the **Insured** accepts any special terms, conditions, or exclusions or pays additional premium charge as may be required.

(2) If after the Inception Date of this Policy, the **Insured** merges or consolidates with another entity such that the **Insured** is the surviving entity, acquires another entity or substantially all of the assets of another entity or creates or acquires a **Subsidiary** as defined in Section II. I., no coverage shall be afforded under this coverage form for any **Claim** involving the assets acquired, the entity which is merged or consolidated with or acquired, the **Subsidiary**, or any of the assets, liabilities, directors, officers or employees of such entity or such **Subsidiary** unless:

(a) the **Insured** provides written notice of such merger, consolidation, creation or acquisition to **us** within 30 days after the effective date of such merger, consolidation, creation or acquisition;

(b) the **Insured** provides **us** with such information in connection therewith as we may deem necessary;

(c) the **Insured** accepts any special terms, conditions, or exclusions or pays additional premium charge as may be required; and

(d) **we**, at our sole discretion, agree to provide such coverage.

(3) In the event of sale or dissolution of any **Subsidiary** of **yours** after the Inception Date of this Policy, the Coverage Part shall continue to apply to such **Subsidiary** and to the partners, executive officers, directors, stockholders and employees of such **Subsidiary**, but only with respect to any **Claim** first made during the **Policy Period** or the **Extended Reporting Period**, if purchased, for **Wrongful Acts** committed or allegedly committed prior to the effective date of sale or dissolution.

D. Action Against **Us**

No action shall lie against **us** unless, as a condition precedent thereto, the **Insured** has fully complied with all the terms of this insurance and both the **Insured's** liability and the amount of the **Insured's** obligation to pay have been fully and finally determined either by judgment against the **Insured** or by written agreement between the **Insured**, the claimant and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this coverage form to the extent of the insurance afforded by this coverage form. Nothing contained in this coverage form shall give any person or organization any right to join **us** as a party to any **Claim**. The **Insured** or any of its legal representatives shall not implead **us** in any **Claim**.

E. Bankruptcy or Insolvency

Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve **us** of any of our obligations under this Coverage Part.

F. Authorization

By acceptance of this Policy, the **Insureds** agree that **you** shall act on behalf of all **Insureds** with respect to the purchase and negotiation of this Policy, the giving and receiving of all notices as provided herein, the cancellation of this Policy, the payment of premiums and Deductibles, the receiving of any return premiums that may become due and the purchase of the **Extended Reporting Period**.

G. When We Do Not Renew

If **we** decide not to renew this coverage, **we** will mail or deliver to the first **Named Insured** shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## X – NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)

A. This policy does not apply:

(1) To any **damages**:

(a) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) Resulting from the **hazardous properties** of **nuclear material** and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(2) To any **damages** resulting from the **hazardous properties** of **nuclear material**, if:

(a) The **nuclear material** (i) is at any **nuclear facility** owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom;

(b) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) The **damages** arise out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any **nuclear facility**.

2. As used in this exclusion:

**Hazardous properties** include radioactive, toxic or explosive properties;

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

Nuclear material means source material, special nuclear material or by-product material;

Source material, special nuclear material, and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

Waste means any waste material (1) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility. Nuclear facility means:

(a) Any nuclear reactor;

(b) Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging waste;

(c) Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

Damages include all forms of radioactive contamination of property.

Form SS 09 01 09 00



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT PRACTICES - EXCLUSION - PRIOR ACTS

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE FORM**

Section **I INSURING AGREEMENT** is changed to add the following paragraph:

I.  **INSURING AGREEMENT**

F.  This insurance applies only if the **claim** is for a **wrongful act** that did not occur before the Retroactive Date set forth in the Declarations, or after the end of the policy period.

A **wrongful act** occurs at the moment such **wrongful act** first takes place.

© 1999, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS
STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

The following is added to the Standard or Special Property Coverage Form PROPERTY LOSS CONDITION, as shown in the Declarations by description of location, property, name and address of loss payee and the following applicable Loss Payable Provision (A, B or C):

## A. LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

## B. LENDER'S LOSS PAYABLE

1. The Loss Payee shown in the Declarations is a creditor (including a mortgageholder or trustee) with whom you have entered a contract for the sale of Covered Property, whose interest in that Covered Property is established by such written contracts as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading; or

   d. Financing statements.

2. For Covered Property in which both you and a Loss Payee have insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   (1) Pays any premium due under this policy at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All the terms of the Property Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

Form SS 12 12 03 92  Printed in U.S.A. (NS)

**Page 1 of 2**

Copyright, Hartford Fire Insurance Company, 1992

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. CONTRACT OF SALE

1. The Loss Payee shown in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the OTHER INSURANCE Common Policy Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

Page 2 of 2

Form SS 12 12 03 92   Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1992



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CYBERFLEX BUSINESS INCOME

This endorsement modifies insurance provided under the following:

### STANDARD PROPERTY COVERAGE FORM
### SPECIAL PROPERTY COVERAGE FORM

This coverage applies only when your policy includes Business Income Coverage and only when it is indicated in the Declarations that the CyberFlex Business Income endorsement is made a part of this policy. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A. Web Site and Internet Services**

We will pay for the actual loss of Business Income and Extra Expense you sustain due to the necessary interruption of your Internet business operations caused by direct physical loss or damage by a Covered Cause of Loss to property that you depend on for "Web Site and Internet Services", anywhere in the world, but only to the extent that the income from such interruption is permanently lost.

1. **Waiting Period:** We will not pay for any Business Income loss under this coverage that you sustain during the first 12 hours that immediately follow the time when you first discovered the Covered Cause of Loss.

2. **Condition:** With respect to web sites, this coverage applies only if you have a back-up copy of your web page stored at a location other than the site of the web site vendor.

3. **Limit of Insurance:** The most we will pay for each occurrence of covered loss under this coverage is $50,000.

**B. Denial of Service**

We will pay for the actual loss of Business Income due to a "Denial of Service Attack".

1. This coverage applies to "Denial of Service Attacks":

   a. That originate anywhere in the world; and

   b. Whether or not there has been any physical damage to "computer equipment".

2. **Waiting Period:** We will not pay for any Business Income loss that you sustain during the first 12 hours that immediately follow the time when you first discovered the "Denial of Service Attack".

3. **Limit of Insurance:** The most we will pay for the sum of all loss in each occurrence under this coverage is $10,000.

**C. Web Site Vandalism**

We will pay up to $2,500 for the actual loss of business income and extra expense you incur due to the willful or malicious alteration of your web site by others without your knowledge or permission. However, this coverage does not apply to alterations made by your software contractor or web site vendor.

This is an additional amount of insurance.

**D. Good Faith Advertising Expense**

If we make payment for a covered loss under this endorsement, we will pay for advertising expenses you incur solely to regain customer faith and approval.

Limit of Insurance: The most we will pay for the sum of all expenses under this Additional Coverage in any 12 month time period is $5,000.

This is an additional amount of insurance.

**E.** The provisions of this endorsement do not override or in any way affect the application of the Exclusion Of Certain Computer Related Losses

Form SS 40 08 04 01

© 2001, The Hartford

Page 1 of 2

if such exclusion is endorsed to or otherwise made a part of this policy. That exclusion addresses the inability of a computer system to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

**F.  Additional Definitions**

1.  "Denial of Service Attack" means a type of attack designed to overload a computer or network system, with useless traffic, denying or limiting legitimate electronic mail or web site usage.

2.  "Web Site and Internet Services" means services that enable your Internet access, including e-mail and operation of a web site. This includes:

(a)  Web hosting application software service;

(b)  Communications infrastructure services, including radio, telephone and wireless, excluding satellites, outside the insured premise boundary, including telephone and cable transmission lines.

(c)  Web/Internet infrastructure Servers, switching or relay locations, cable and transmission lines that are used or are dependent upon to conduct Intranet, Extranet and Internet operations.

© 2001, The Hartford

Form SS 40 08 04 01



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OFF-PREMISES UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. DIRECT DAMAGE EXTENSION FOR OFF-PREMISES UTILITY SERVICES**

This Coverage Extension applies only to the described premises shown in the Declarations with a Utility Services Limit of Insurance. The Utility Services Limit of Insurance is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the Covered Property.

We will pay for loss of or damage to Covered Property described in the Declarations caused by the interruption of utility service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises:

1. "Water Supply Services";

2. "Communication Supply Services"; or

3. "Power Supply Services".

**B. ADDITIONAL DEFINITIONS**

1. **"Water Supply Services"**, meaning the following types of property supplying water to the describes premises:

   a. Pumping stations; and

   b. Water mains.

2. **"Communication Supply Services"**, meaning property supplying communication services, including telephone, radio, microwave or television services, including overhead transmission lines to the described premises, such as:

   a. Communication transmission lines, including optic fiber transmission lines;

   b. Coaxial cables; and

   c. Microwave radio relays except satellites.

3. **"Power Supply Services"**, meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the described premises:

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission Lines.

Form SS 40 18 03 00

© 2000, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**
**STANDARD PROPERTY COVERAGE FORM**
**PERSONAL PROPERTY OF OTHERS**
**COMPUTERS AND MEDIA COVERAGE**

**A. Fungi, Bacteria or Virus Exclusions**

1. Paragraph A.5.i.(5). of the Increased Cost of Construction Additional Coverage of the Special Property Coverage Form is replaced by the following:

    (5) Under this Additional Coverage, we will not pay for:

    (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling, or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, bacteria or virus; or

    (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet or dry rot, bacteria or virus.

2. The following exclusion is added to Paragraph **B.1.** Exclusions of the Standard Property Coverage Form and the Special Property Coverage Form; Paragraph **F.,** Additional Exclusions of Computers and Media, form **SS 04 41,** and to form **SS 04 45,** Personal Property of Others:

    **i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus**

    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

    (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

    (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".

    This exclusion does not apply:

    (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or

    (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.

    This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**B.** The following **Additional Coverage** is added to Paragraph A.4. of the Standard Property Coverage Form or Paragraph A.5. of the Special Property Coverage Form, and applies to the optional coverage form **SS 04 41,** Computers and Media and **SS 04 45,** Personal Property of Others and form:

Form SS 40 93 10 02

Page 1 of 3

© 2002, The Hartford

1. **Limited Coverage For "Fungi", Wet Rot, Dry Rot, Bacteria and Virus**

   a. The coverage described in **1.b.** below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

      (1) A "specified cause of loss" other than fire or lightning;

      (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises; or

   b. We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:

      (1) Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;

      (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and

      (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot, dry rot, bacteria or virus are present.

   c. Unless a higher Limit of Insurance is shown in the Declarations for Limited "Fungi", Bacteria or Virus Coverage, the coverage described under this Limited Coverage is no more than the Limit of Insurance stated in the Declarations for Building and Business Personal Property, but not greater than $50,000. If form **SS 04 41**, Computers and Media, and form **SS 04 45**, Personal Property of Others, are made a part of this policy, then the Limits of Insurance for Computers and Media, and Personal Property of Others is included within this coverage limit. This coverage is made applicable to separate "scheduled premises" as described in the

   Declarations. Regardless of the number of claims, this limit is the most we will pay per "scheduled premises" for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Equipment Breakdown Accident that occurs to Equipment Breakdown Property which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet or dry rot, bacteria or virus, we will not pay more than the total of $50,000 unless a higher Limit of Insurance is shown in the Declarations even if the "fungi", wet or dry rot, bacteria, or virus continues to be present or active, or recurs, in a later policy period.

   d. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot, dry rot, bacteria or virus, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot, dry rot, bacteria or virus, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot, bacteria or virus causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

   e. The terms of this Limited Coverage do not increase or reduce the coverage for Water Damage provided under provision **B.1.h., Exclusion – Water Damage** of the Standard Property Coverage Form or Additional Coverage provision **A.5.n., Water Damage, Other Liquid, Powder or Molten Material Damage** of the Special Property Coverage Form.

   f. The following applies only if Business Income and/or Extra Expense Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

Form SS 40 93 10 02

© 2002, The Hartford

(1) If the loss which resulted in "fungi", wet or dry rot, bacteria or virus does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot, bacteria or virus, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days unless another number of days in indicated in the Declarations. The days need not be consecutive.

(2) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet or dry rot, bacteria or virus, but remediation of "fungi", wet or dry rot, bacteria or virus prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay

(3) (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive.

C. Fungi Definition

1. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

Form SS 40 93 10 02

Page 3 of 3

© 2002, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under the Standard Property Coverage Form and the Special Property Coverage Form, and to any endorsements modifying those forms, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Form SS 50 19 06 03

Page 1 of 1

© 2003, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

A. With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Form SS 50 30 06 03

Page 1 of 1

© 2003, The Hartford

Insurer: HARTFORD CASUALTY INSURANCE COMPANY
HARTFORD PLAZA, HARTFORD, CT 06115



This Declarations Page, with Policy Provisions Form SX 80 02 and Endorsements, if any, issued to form a part thereof, shall together constitute this Umbrella Liability Supplemental Contract, which in turn forms a part of Policy Number shown below.

None of the provisions of the policy to which this Supplemental Contract is attached applies to the Umbrella Liability Insurance provided hereunder.

Wherever the word "policy" appears in this form or in endorsements attached to or made a part of this Supplemental Contract, it means "Supplemental Contract".

POLICY NUMBER: 44 SBA TE6003

## DECLARATIONS

**Named Insured and Mailing Address:** CORBETT & ASSOCIATES

1400-1402 FRENCH STREET
WILMINGTON          DE 19801

**Policy Period**          From: 09/01/05  To: 09/01/06
12:01 A.M., Standard time at the address of the named insured as stated herein.

**Premium**                $ INCLUDED ADVANCE PREMIUM

Self Insured Retention        $10,000      each occurrence

The Limits of Insurance subject to all the terms of this policy that apply are:

| Each Occurrence | $ 1,000,000 | Products-Completed Operations Aggregate Limit | $ 1,000,000 |
|---|---|---|---|
| General Aggregate Limit (Other than Products - Completed Operations, Bodily Injury By Disease and Automobile) | $ 1,000,000 | Bodily Injury By Disease Aggregate Limit | $ 1,000,000 |

**Schedule of Underlying Insurance Policies**
*See Attached "Extension Schedule of Underlying Insurance Policies"*

**Form Numbers of Forms and Endorsements that apply.**

| | | | |
|---|---|---|---|
| SX80120703 | SX80020401 | SX80040300 | SX04150697 |
| SX21040697 | SX21050697 | SX21090603 | SX21270697 |
| SX21310901 | SX21610697 | SX21750697 | SX21820697 |
| SX22840300 | SX24010401 | | |

Countersigned by   *Margie K. Ape*
Authorized Representative

07/25/05
Date

Form SX 80 01 06 97 T Printed in U.S.A. (NS)
Process Date: 07/25/05

Policy Expiration Date: 09/01/06

*21739*

*2100044TE6003010G*



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

Paragraph A. of INSURING AGREEMENTS (SECTION I – COVERAGES) is replaced by the following:

**INSURING AGREEMENTS**

**A. Umbrella Liability Insurance**

1. We will pay those sums that the "insured" becomes legally obligated to pay as "damages":

   a. In excess of the "underlying insurance"; or of

   b. The "self-insured retention" when no "underlying insurance" applies,

   because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies, caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in SECTION IV – LIMITS OF INSURANCE.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION II – INVESTIGATION, DEFENSE, SETTLEMENT.

2. This insurance applies to:

   a. "Bodily injury" and "property damage" only if the "bodily injury" or "property damage" occurs during the "policy period".

   b. "Personal and advertising injury" caused by an offense arising out your business, but only if the offense was committed during the "policy period".

© 2003, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UMBRELLA LIABILITY PROVISIONS

This supplemental contract modifies insurance provided under the policy to which it is attached.

In this policy the words "you" and "your" refer to the Named Insured first shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. "We", "us" and "our" refer to the stock insurance company member of The Hartford Financial Services Group Inc. shown in the Declarations.

Other words and phrases that appear in quotation marks also have special meanings. Refer to DEFINITIONS (Section VII).

IN RETURN FOR THE PAYMENT OF THE PREMIUM, in reliance upon the statements in the Declarations made a part hereof and subject to all of the terms of this policy, we agree with you as follows:

## SECTION I - COVERAGES

### INSURING AGREEMENTS

**A. Umbrella Liability Insurance**

We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance", or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies caused by an "occurrence".

**B. Exclusions**

This policy does not apply to:

1. **Pollution**

   To any obligation:

   a. To pay for the cost of investigation, defense or settlement of any claim or "suit" against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard; or

   b. To pay any "damages", judgments, settlements, loss, costs or expenses that may be awarded or incurred:

      i. By reason of any such claim or "suit" or any such injury or damage; or

      ii. In complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion, pollution hazard means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal:

a. Pollutants;

b. Contaminants;

c. Irritants; or

d. Toxic substances;

Including:

Smoke;

Vapors;

Soot;

Fumes;

Acids;

Alkalis;

Chemicals, and

Waste materials consisting of or containing any of the foregoing. Waste includes materials to be recycled, reconditioned or reclaimed.

**EXCEPTION**

This exclusion does not apply:

a. To "bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

b. To injury or damage as to which valid and collectible "underlying insurance" with at least the minimum limits shown in the Schedule of

Form SX 80 02 04 01

Page 1 of 12

© 2001, The Hartford

UMBRELLA LIABILITY PROVISIONS

Underlying Insurance Policies is in force and applicable to the "occurrence". In such event, any coverage afforded by this policy for the "occurrence" will be subject to the pollution exclusions of the "underlying insurance" and to the conditions, limits and other provisions of this policy. In the event that "underlying insurance" is not maintained with limits of liability as set forth in the Extension Schedule of Underlying Insurance Policies, coverage under any of the provisions of this exception does not apply.

Exception b. does not apply to:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) That are, or that are contained in any property that is:

   a. Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

   b. Otherwise in the course of transit by or on behalf of the "insured"; or

   c. Being stored, disposed of, treated or processed in or upon any "auto";

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned the "insured".

Paragraph (1) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

(a) The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(b) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b and 6.c. of the definition of "mobile equipment".

Paragraphs (2) and (3) above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. **Workers Compensation and Similar Laws**

To any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law, except for liability of others assumed by the "insured" under any contract or agreement.

3. **Contractual Liability**

To liability assumed by the "insured" under any contract or agreement with respect to an "occurrence" taking place before the contract or agreement is executed.

4. **Personal and Advertising Injury**

This policy does not apply to "personal and advertising injury".

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

5. **Underlying Insurance**

To any injury or damage:

   a. Covered by "underlying insurance" but for any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

   b. For which "damages" would have been payable by "underlying insurance" but for the actual or alleged insolvency or financial impairment of an underlying insurer.

6. **Aircraft**

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any aircraft:

   a. Owned by any "insured"; or

   b. Chartered or loaned to any "insured".

UMBRELLA LIABILITY PROVISIONS

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any aircraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to aircraft that is:

a. Hired, chartered or loaned with a paid crew; but

b. Not owned by any "insured".

This exclusion does not apply to "bodily injury" to any of your "employees" arising out of and in the course of their employment by you.

7. Watercraft

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any watercraft.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any watercraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to:

a. Watercraft you do not own that is:

i. Less than 51 feet long; and

ii. Not being used to carry persons for a charge;

b. "Bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

c. Any watercraft while ashore on premises owned by, rented to or controlled by you.

8. War

To "bodily injury" or "property damage" due to war (whether war be declared or not). War includes invasion, act of foreign power, hostilities, civil war, rebellion, revolution, riot, riot attending a strike, civil commotion, insurrection or military power.

This exclusion applies only to "occurrences" which take place outside the United States of America, its territories or possessions, Puerto Rico or Canada.

9. Damage to Property

To "property damage" to property you own.

10. Damage to Your Product

To "property damage" to "your product" arising out of it or any part of it.

11. Damage to Your Work

To "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

12. Damage to Impaired Property or Property Not Physically Injured

To "property damage" to "impaired property" or property that has not been physically injured arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

13. Recall of Products, Work or Impaired Property

To "damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a. "Your product";

b. "Your work"; or

c. "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

14. Employer Liability

With respect to coverage afforded any of your employees to "bodily injury" or "personal and advertising injury":

a. To other "employees" arising out of and in the course of their employment;

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of such "bodily injury" to that "employee";

UMBRELLA LIABILITY PROVISIONS

c. To you, or any of your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company); or

d. Arising out of the providing or failing to provide professional health care services.

**EXCEPTION**

Subparagraphs a. and b. of this exclusion apply:

a. Whether the "insured" may be liable as an employer or in any other capacity; and

b. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

Subparagraphs a. and b. of this exclusion do not apply if "underlying insurance" is maintained providing coverage for such liability with minimum underlying limits, as described in the Schedule of Underlying Insurance Polices.

**15. Property Damage to Employee's Property**

With respect to coverage afforded any of your "employees" to "property damage" to property owned or occupied by or rented or loaned to:

a. That "employee";

b. Any of your other "employees";

c. Any of your partners or members (if you are a partnership or joint venture);

d. Any of your members (if you are a limited liability company);

**16. Uninsured or Underinsured Motorists**

To any claim for:

a. Uninsured or Underinsured Motorists Coverage;

b. Personal injury protection;

c. Property protection; or

d. Any similar no-fault coverage by whatever name called;

unless this policy is endorsed to provide such coverage.

**17. Employment Practices Liability**

For any injury or damage to:

1. A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person, as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

i. Whether the "insured" may be liable as an employer or in any other capacity; and

ii. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

**18. Expected or Intended**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**SECTION II - INVESTIGATION, DEFENSE, SETTLEMENT**

A. With respect to "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies (whether or not the "self-insured retention" applies) and

1. For which no coverage is provided under any "underlying insurance"; or

2. For which the underlying limits of any "underlying insurance" policy have been exhausted solely by payments of "damages" because of "occurrences" during the "policy period",

We:

1. Will have the right and the duty to defend any "suit" against the "insured" seeking "damages" on account thereof, even if such "suit" is groundless, false or fraudulent; but our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under coverages afforded by this policy;

2. May make such investigation and settlement of any claim or "suit" as we deem expedient;

3. Will pay all expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the entire amount of any judgment therein which accrues after the entry of the judgment and before we have paid or tendered or deposited in court that part of the judgment which does not exceed the applicable limit of insurance;

**UMBRELLA LIABILITY PROVISIONS**

4. Will pay all premiums on appeal bonds required in any such "suit", premiums on bonds to release attachments in any such "suit" for an amount not in excess of the applicable limit of insurance, and the cost of bail bonds required of the "insured" because of an accident or traffic law violation arising out of the operation of any vehicle to which this policy applies, but we will have no obligation to apply for or furnish any such bonds;

5. Will pay all reasonable expenses incurred by the "insured" at our request in assisting us in the investigation or defense of any claim or "suit", including actual loss of earnings not to exceed $500 per day per "insured";

and the amounts so incurred, except settlement of claims and "suits", are not subject to the "self-insured retention" and are payable in addition to any applicable limit of insurance.

The "insured" agrees to reimburse us promptly for amounts paid in settlement of claims or "suits" to the extent that such amounts are within the "self-insured retention".

B. You agree to arrange for the investigation, defense or settlement of any claim or "suit" in any country where we may be prevented by law from carrying out this agreement. We will pay defense expenses incurred with our written consent in connection with any such claim or "suit" in addition to any applicable limit of insurance. We will also promptly reimburse you for our proper share, but subject to the applicable limit of insurance, of any settlement above the "self-insured retention" made with our written consent.

C. If a judgment is rendered in excess of the limits of "underlying insurance" and we are willing to contribute to it but the underlying insurers elect to appeal it:

1. The cost and the duty of obtaining an appeal bond with respect to liability in excess of the limits of "underlying insurance"; and

2. The taxable costs, disbursements and additional interest incidental to such appeal;

shall be borne by the "Insured" and its underlying insurers.

D. We will have the right to associate at our expense with the "insured" or any underlying insurer in the investigation, defense or settlement of any claim or "suit" which in our opinion may require payment hereunder. In no event, however, will we contribute to the cost and expenses incurred by any underlying insurer.

**SECTION III - WHO IS AN INSURED**

A. If you are doing business as:

1. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

3. A limited liability company, you are an "insured". Your members are also "insureds", but with only respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

5. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts:

   a. Within the scope of their employment by you or while performing duties related to the conduct of your business; and

   b. Only if such "employees" are insureds in the "underlying insurance" with limits of liability at least as high as set forth in the Extension Schedule of Underlying Insurance Policies, subject to all the limitations upon coverage and all other policy terms and conditions of such "underlying insurance" and this policy.

2. Any person or organization with whom you agreed, because of a written contract, agreement or permit, to provide insurance, such as is afforded under this supplemental contract, but only with respect to your operations, "your work" or facilities owned or used by you. This provision does not apply unless the written contract or agreement has been executed, or the permit has been issued prior to the "bodily injury", "property damage", or "personal and advertising injury".

3. Any person or organization having proper temporary custody of your property if you die, but only:

**UMBRELLA LIABILITY PROVISIONS**

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to his or her duties as such. That representative will have all your rights and duties under this policy.

C. With respect to any "auto", any "insured" in the "underlying insurance" is an "insured" under this insurance policy, subject to all the limitations of such "underlying insurance".

D. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   1. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   2. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

E. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will be deemed to be an "insured" if there is no other similar insurance available to that organization.

   However:

   1. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   2. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   3. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

F. Each person or organization, not included as an "insured" in Paragraphs A., B., C., D., or E., who is an "insured" in the "underlying insurance" is an "insured" under this insurance subject to all the limitations, other than the limits of the underlying insurer's liability, of such "underlying insurance".

No person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

With respect to any person or organization who is not an "insured" under "underlying insurance", coverage under this policy shall apply only to loss in excess of the amount of the "underlying insurance" or "self-insured retention" applicable to you.

**SECTION IV - LIMITS OF INSURANCE**

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made or "suits" brought; or

   3. Persons or organizations making claims or bringing "suits".

B. The Limit of Insurance stated as the General Aggregate Limit is the most we will pay for the sum of "damages", other than "damages":

   1. Because of injury or damage included within the "products-completed operations hazard";

   2. Because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you; and

   3. Because of "bodily injury" and "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any "auto".

C. The Limit of Insurance stated as the Products Completed Operations Aggregate Limit is the most we will pay for "damages" because of injury or damage included within the "products-completed operations hazard".

D. The Limit of Insurance stated as the Bodily Injury By Disease Aggregate Limit is the most we will pay for "damages" because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you.

E. Subject to B., C., or D. above, whichever applies, the Each Occurrence Limit is the most we will pay for "damages" because of all "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

F. Our obligations under this insurance end when the applicable Limit of Insurance available is used up. If we pay any amounts for "damages" in excess of that Limit of Insurance, you agree to reimburse us for such amounts.

G. The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations. However, if the "policy period" is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

## SECTION V - NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)

A. The insurance does not apply:

1. To "bodily injury" or "property damage":

    a. With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

    a. The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    c. The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the

United States of America, its territories or possessions or Canada, this exclusion (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

B. As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used ,or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

UMBRELLA LIABILITY PROVISIONS

## SECTION VI - CONDITIONS

### A. Premium

All premiums for this policy shall be computed in accordance with the Premium Section of the Declarations. The premium stated as such in the Declarations is a deposit premium only which shall be credited to the amount of any earned premium. At the close of each "policy period", the earned premium shall be computed for such period, and upon notice thereof to the Named Insured first shown in the Declarations shall become due and payable by such Named Insured. If the total earned premium for the "policy period" is less than the premium previously paid and more than the minimum premium, we shall return to such Named Insured the unearned portion paid by such Named Insured.

The Named Insured first shown in the Declarations shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the "policy period" and at such times during the "policy period" as we may direct.

### B. Inspection and Audit

We shall be permitted but not obligated to inspect your property and operations at any time. Neither our right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on your behalf or for your benefit or that of others to determine or warrant that such property or operations are:

1. Safe;

2. Healthful; or

3. In compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the "policy period" and extensions thereof and within three years after the final termination of this policy, insofar as they relate to the subject matter of this policy.

### C. Duties In The Event Of Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim under this policy. This requirement applies only when such "occurrence" is known to any of the following:

    (a) You, if you are an individual;

    (b) A partner, if an insured is a partnership;

    (c) A manager, if a limited liability company; or

    (d) An "executive officer" or insurance manager, if you are a corporation.

To the extent possible, notice should include:

(a) How, when and where the "occurrence" took place;

(b) The names and addresses of any injured persons and witnesses; and

(c) The nature and location of any injury or damage arising out of the "occurrence" or "offense".

2. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us in writing as soon as practicable if the claim is likely to exceed the amount of the "self-insured retention" or "underlying insurance", whichever applies.

3. You and any other involved insured must:

    (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of any "self-insured retention" or "underlying insurance", whichever applies";

    (b) Authorize us to obtain records and other information;

    (c) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (d) Assist us, upon our request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this policy or any "underlying insurance" or "self-insured retention" may apply.

4. No insured will, except at that insured's own cost, make or agree to any settlement for a sum in excess of:

    (a) The total limits of "underlying insurance"; or

    (b) The "self-insured retention" if no "underlying insurance" applies

    without our consent.

5. No insureds will, except at that insured's own cost, make a payment, assume any obligation, or incur any expenses, other than first aid, without our consent.

### D. Assistance and Cooperation of the Insured

The "insured" shall:

1. Cooperate with us and comply with all the terms and conditions of this policy; and

UMBRELLA LIABILITY PROVISIONS

2. Cooperate with any of the underlying insurers as required by the terms of the "underlying insurance" and comply with all the terms and conditions thereof.

The "insured" shall enforce any right of contribution or indemnity against any person or organization who may be liable to the "insured" because of "bodily injury", "property damage" or "personal and advertising injury" with respect to this policy or any "underlying insurance".

### E. Legal Action Against Us

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms and those of the "underlying insurance" have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but, we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the limit of liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### F. Appeals

In the event the "insured" or the "insured's" underlying insurer elects not to appeal a judgment in excess of the "underlying insurance" or the "self-insured retention", we may elect to make such appeal, at our cost and expense. If we so elect, we shall be liable in addition to the applicable Limit of Insurance, for the:

1. Taxable costs;

2. Disbursements; and

3. Additional interest incidental to such appeal;

but in no event will we be liable for "damages" in excess of the .. applicable aggregate Limit of Insurance.

### G. Other insurance

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible. It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1. Primary;

2. Contributing;

3. Excess; or

4. Contingent;

Provided that if such other insurance provides umbrella coverage in excess of underlying insurance or a self-insured retention, this policy shall contribute therewith with respect to "damages".

However, we shall not be liable for a greater proportion of such loss than the amount which would have been payable under this policy bears to the sum of:

1. Said amount; and

2. The amounts which would have been payable under each other umbrella policy applicable to such loss, had each such policy been the only policy so applicable.

### H. Transfer Of Rights Of Recovery Against Others To Us

a. If the insured has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after a loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. Recoveries shall be applied to reimburse:

(1) First, any interest (including the Named Insured) that paid any amount in excess of our limit of liability:

(2) Second, us, along with any other insurers having a quota share interest at the same level;

(3) Third, such interests (including the Named Insured) of whom this insurance is excess.

However, a different apportionment may be made to effect settlement of a claim by agreement signed by all interests.

c. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

### I. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. Notice to any agent, or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this policy, or stop us from asserting any rights under the terms of this policy.

The Named Insured first shown in the Declarations is authorized on behalf of all "insureds" to agree with us on changes in the terms of this policy.

Form SX 80 02 04 01

UMBRELLA LIABILITY PROVISIONS

If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

**J.   Separation Of Insureds**

Except with respect to the Limits of Liability, and any rights or duties specifically assigned in this policy to the Named Insured first shown in the declarations, this insurance applies:

a.   As if each Named Insured were the only Named Insured; and

b.   Separately to each insured against whom claim is made or "suit" is brought.

**K.   Maintenance of Underlying Insurance**

Policies affording in total the coverage and limits stated in the Schedule of Underlying Insurance Policies shall be maintained in full effect during the currency of this policy. Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable only to the extent that we would have been liable had you complied herewith.

The Named Insured first shown in the Declarations shall give us written notice as soon as practicable of any of the following:

1.   Any change in the coverage or in the limits of any "underlying insurance", including but not limited to a change from occurrence coverage to claims made coverage;

2.   Termination of part or all of one or more of the policies of "underlying insurance";

3.   Reduction or exhaustion of an aggregate limit of liability of any "underlying insurance".

The "self-insured retention" shall not apply should the "underlying insurance" be exhausted by the payment of claims or "suits" which are also covered by this policy.

**L.   Cancellation**

1.   The Named Insured first shown in the Declarations may cancel this policy by mailing or delivering to us or to any of our authorized agents advance written notice of cancellation.

2.   We may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations at the address shown in this policy, written notice of cancellation at least:

a.   10 days before the effective date of cancellation if such Named Insured fails to pay the premium or any installment when due; or

b.   30 days before the effective date of cancellation if we cancel for any other reason.

3.   If notice is mailed, proof of mailing will be sufficient proof of notice. Notice will state the effective date of cancellation. The "policy period" will end on that date. Delivery of such notice by the Named Insured first shown in the Declarations or by us will be equivalent to mailing.

4.   If the Named Insured first shown in the Declarations cancels, the refund may be less than pro rata, but we will retain any minimum premium stated as such in the Declarations. If we cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**M.   Nonrenewal**

1.   If we decide not to renew, we will mail or deliver to the Named Insured first shown in the Declarations, at the address shown in this policy, written notice of nonrenewal at least 30 days before the end of the "policy period".

2.   If notice is mailed, proof of mailing will be sufficient proof of notice.

3.   If we offer to renew but such Named Insured does not accept, this policy will not be renewed at the end of the current "policy period".

**N.   Workers' Compensation Agreement**

With respect to "bodily injury" to any officer or other employee arising out of and in the course of employment by you, you represent and agree that you have not abrogated and will not abrogate your common-law defenses under any Workers' Compensation Law by rejection of such law or otherwise. If at any time during the "policy period" you abrogate such defenses, the insurance for "bodily injury" to such officer or other employee automatically terminates at the same time.

**O.   Bankruptcy or Insolvency**

In the event of the bankruptcy or insolvency of the "insured" or any entity comprising the "insured", we shall not be relieved of any of our obligations under this policy.

**P.   Representations**

By accepting this policy, you agree:

a.   The statements in the Declarations are accurate and complete;

b.   The statements in the Extension Schedule Of Underlying Insurance Policies are accurate and complete;

c.   The statements in a. and b. are based upon representations you made to us:

Form SX 80 02 04 01

UMBRELLA LIABILITY PROVISIONS

d. We have issued this policy in reliance upon your representations; and

e. If unintentionally you should fail to disclose all hazards at the inception of this policy, we shall not deny coverage under this policy because of such failure.

## SECTION VII - DEFINITIONS

**Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.**

"Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

"Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

"Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand or order; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) That are, or that are contained in any property that is:

a. Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

b. Otherwise in the course of transit by or on behalf of the "insured"; or

c. Being stored, disposed of, treated or processed in or upon any "auto"; or

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

"Damages" include prejudgment interest awarded against the "insured" on that part of the judgment we pay.

"Damages" do not include:

1. Fines;

2. Penalties; or

3. Damages for which insurance is prohibited by the law applicable to the construction of this policy.

Subject to the foregoing, "damages" include damages for any of the following which result at any time from "bodily injury" to which this policy applies:

1. Death;

2. Mental anguish;

3. Shock;

4. Disability; or

5. Care and loss of services or consortium.

"Insured" means any person or organization qualifying as an insured in the applicable WHO IS AN INSURED provision of this policy. The insurance afforded applies separately to each "insured" against whom claim is made or "suit" is brought, except with respect to the limit of our liability under LIMITS OF INSURANCE (SECTION IV).

"Occurrence" means:

1. With respect to "bodily injury" or "property damage": an

UMBRELLA LIABILITY PROVISIONS

accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury" or "property damage" neither expected nor intended from the standpoint of the "insured" and includes the use of reasonable force to protect persons or property; and

2. With respect to "personal and advertising injury" an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

"Policy period" means the period beginning with the inception date stated as such in the Declarations and ending with the earlier of:

1. The date of cancellation of this policy; or

2. The expiration date stated as such in the Declarations.

"Self-insured retention" means the amount stated as such in the Declarations which is retained and payable by the "insured" with respect to each "occurrence".

"Underlying insurance" means the insurance policies listed in the Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which

provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of "underlying insurance" includes:

1. Any deductible amount;

2. Any participation of any "insured"; and

3. Any "self-insured retention" above or beneath any such policy;

Less the amount, if any, by which the aggregate limit of such insurance has been reduced by any payment relating to any act, error, omission, injury, damage or offense for which insurance is provided by this policy, including Medical Payments Coverage as described in the "underlying insurance". The coverages and limits of such policies and any such deductible amount, participation or "self-insured retention" shall be deemed to be applicable regardless of:

1. Any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

2. The actual or alleged insolvency or financial impairment of any underlying insurer or any "insured".

The risk of insolvency or financial impairment of any underlying insurer or any "insured" is borne by you and not by us.

# EXTENSION SCHEDULE OF UNDERLYING INSURANCE POLICIES



This extension schedule forms a part of the policy designated in the Declarations.

**Carrier, Policy Number and Policy Period:**

A. HARTFORD CASUALTY INSURANCE COMPANY

   44 SBA TE6003   09/01/05  TO 09/01/06

   **Type of Coverage**

   ( X ) Comprehensive Business Liability - including:

| | **Applicable Limits** |
|---|---|
| | Bodily Injury and Property Damage Liability Combined |
| | $1,000,000   each occurrence |
| | $2,000,000   general aggregate |

   Employees as Additional Insureds
   Contractual Liability
   Limited Non-Owned Watercraft
   Non-Owned Snowmobiles
   Additional Insureds
   Damages To Premises Rented To You

   Property Damage Liability
   $   300,000   each occurrence
   $1,000,000
   $1,000,000

   ( X ) Personal Injury

   ( X ) Advertising Injury

   ( X ) Products/Completed Operations
   $2,000,000   Prod./Comp. Ops. aggregate
   Limit of Liability

   ( ) Non-Owned Automobile - Hired Car

B. HARTFORD UNDERWRITERS INS CO     44UECGF2767     09/01/05  TO 09/01/06

   ( X ) Comprehensive Automobile Liability -   Bodily Injury Liability
         Owned Automobiles

                                                           each person
                                                           each accident
                                            Property Damage Liability
                                                           each accident
   ( ) Non-Owned Automobiles
                                            Bodily Injury and Property Damage
   ( ) Hired Automobiles                    $1,000,000   Liability Combined
                                                           each accident
   ( ) Uninsured Motorist                                  each occurrence

C. TWIN CITY FIRE INSURANCE CO     44WECKE0523     09/01/05  TO 09/01/06

   ( X ) Employers' Liability
                                            $   500,000   each accident*
                                            $   500,000   each employee by disease*

                                            $   500,000   total policy by disease*

D.

   ( ) Liquor Law Legal Liability

An "X" marked in the box indicates the coverage is provided in the Underlying Policies.

**(Note Maintenance of Underlying Insurance Condition SX 80 02.)**

*Except that in any jurisdiction where the amount of Employers Liability Coverage afforded by the underlying insurer is by law unlimited, the limit stated does not apply and the policy of which this extension schedule forms a part shall afford no insurance with respect to Employers Liability in such jurisdiction.

Form SX 80 04 03 00   Printed in U.S.A.  (NS)

Process Date: 07/25/05

Policy Expiration Date: 09/01/06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY ENDORSEMENT
# (CLAIMS MADE)

This endorsement modifies insurance provided under the

### SPECTRUM UMBRELLA SUPPLEMENTAL CONTRACT

### SCHEDULE I

| Coverage | Limits of Insurance | |
|---|---|---|
| Employee Benefits Liability | $ 1,000,000 | each claim limit |
| | $ 1,000,000 | aggregate limit |

### SCHEDULE II
"Controlling Underlying Insurance Policy"

Insurer: HARTFORD CASUALTY INSURANCE COMPANY

| Policy No. | Policy Period | Retroactive Date |
|---|---|---|
| 44 SBA TE6003 | 09/01/05   TO   09/01/06 | 09/01/03 |

| Coverage | Limits of Insurance | |
|---|---|---|
| Employee Benefits Liability | $ 1,000,000 | each claim limit |
| | $ 2,000,000 | aggregate limit |

This policy is extended to apply to Employee Benefits Liability, subject to the following additional provisions:

1. Except as otherwise provided by this endorsement, the insurance afforded herein shall follow all the terms, definitions and exclusions of the "controlling underlying insurance policy" designated in Schedule II.

2. **SECTION I - COVERAGE EB**

   A. We will pay those sums that the insured must legally pay as "damages:"

      1. Because of "employee benefits injury" to which this endorsement applies; and

      2. That are in excess of the limits of insurance in the "controlling underlying insurance policy."

   B. This insurance does not apply to "employee benefits injury" which occurred before the

Retroactive Date, if any, shown in Schedule II or which occurs after the "policy period."

3. **SECTION III - LIMITS OF INSURANCE**

   A. The Limits of Insurance shown in Schedule I and the rules below fix the most we will pay regardless of the number of:

      1. Insureds;

      2. Claims made or "suits" brought; or

      3. Persons or organizations making claims or bringing "suits."

   B. The Aggregate Limit is the most we will pay for all "damages" to which this endorsement applies.

   C. Subject to B. above the Each Claim Limit is the most we will pay for all "damages" with respect to any one claim.

Form SX 04 15 06 97 Printed in U.S.A. (NS)

Page 1 of 3

© 1997, The Hartford

Process Date: 07/25/05

Expiration Date: 09/01/06

D. Our obligations under this endorsement and when the applicable Limit of Insurance is used up. If we pay for any "damages" in excess of that Limit of Insurance, you agree to reimburse us for such amounts.

E. The Limits of Insurance shown in Schedule I apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in Schedule II, unless the endorsement is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

## 4. EXTENDED REPORTING PERIODS

A. We will provide one or more Extended Re-porting Periods, as described below, if:

1. This endorsement is cancelled or not renewed; or

2. We renew or replace this endorsement with insurance that:

   i. Has a Retroactive Date later than the date shown in the Declaration of this endorsement; or

   ii. Does not apply to "employee benefits injury" on a claims-made basis.

B. A Basic Extended Reporting Period is auto-matically provided without additional charge. This period starts with the end of the "policy period" and lasts for:

1. One year for "claims" arising out of an "employee benefits injury" reported to us, not later than 60 days after the end of the "policy period";

2. Sixty days for all other "claims."

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims."

C. A Supplemental Extended Reporting Period of three years duration is available, but only by an

endorsement and for an extra charge. This supplemental period starts:

1. One year after the end of the "policy period" for "claims" arising out of an "occurrence" reported to us, not later than 60 days after the end of the "policy period" or

2. Sixty days after the end of the "policy period" for all other "claims."

You must give us a written request for the endorsement within 60 days after the end of the "policy period." The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

1. The exposures insured;

2. Previous types and amounts of insurance;

3. Limits of Insurance available under this endorsement for future payment of "damages" and

4. Other related factors.

The additional premium will not exceed 200% of the annual premium for this endorsement.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

D. Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. They apply only to "claims" for "employee benefits injury" that occur before the end of the "policy period" (but not before the Retroactive Date, if any, shown in the Declarations).

"Claims" for such injury which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the "policy period."

Once in effect, Extended Reporting Periods may not be cancelled by us.

E. Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any "claim" to which this endorsement applies, except to the extent described in paragraph F. of this Section.

F. If the Supplemental Extended Reporting Period is in effect, we will provide the separate aggregate limit of insurance described below, but only for "claims" first received and recorded during the Supplemental Extended Reporting Period.

Page 2 of 3

Form SX 04 15 06 97  Printed in U.S.A.  (NS)

© 1997, The Hartford

The separate aggregate limit of insurance will be equal to the dollar amount shown in Schedule I in effect at the end of the "policy period" of this endorsement.

Paragraph B. of **SECTION III - LIMITS OF INSURANCE** will be amended accordingly.

5. **ADDITIONAL DEFINITIONS**

"Controlling underlying insurance policy" means the policy of "underlying insurance" designated in Schedule II providing coverage and limits for Employee Benefits Liability.

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - CARE, CUSTODY OR CONTROL OF PERSONAL PROPERTY

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to "property damage" to personal property:
1. Rented to;
2. Used by; or
3. In the care, custody or control;

Of any "insured" or as to which any "insured" is for any purpose exercising physical control.

Form SX 21 04 06 97   Printed in U.S.A.

© 1997, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - CARE, CUSTODY OR CONTROL OF REAL PROPERTY

This endorsement modifies insurance provided under the

### UMBRELLA LIABILITY PROVISIONS

This policy does not apply to "property damage" to real property:
1. Owned by;
2. Occupied by;
3. Rented to; or
4. In the care, custody or control;

Of any "insured" or as to which any "insured" is for any purpose exercising physical control.

Form SX 21 05 06 97  Printed in U.S.A.

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

### UMBRELLA LIABILITY PROVISIONS

A. With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Form SX 21 09 06 03

Page 1 of 1

© 2003, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - SECURITIES TRANSACTIONS

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to any liability:

1. Imposed under the common or statutory law of any state or under any applicable federal law, including any rules or regulations adopted under such laws and any amendments thereto, involving the purchase, transfer or sale of any securities; or

2. Imposed under the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended or the Investment Company Act of 1940, as amended, including any rules or regulations adopted under these laws and any amendments thereto.

**Form SX 21 27 06 97** Printed in U.S.A.

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE - FINANCIAL INSTITUTIONS

This endorsement modifies insurance provided under the following:

### UMBRELLA LIABILITY PROVISIONS

This insurance does not apply to liability:

1. Arising out of the ownership, control, maintenance or use of property (real or personal) held by the "insured" in any fiduciary capacity.

   This could be as trustee, guardian, executor, administrator, custodian, escrow agent, or in any capacity similar to any of these.

2. For "property damage" to any property (real or personal):

   a. Held by the "insured" in any fiduciary capacity described in paragraph 1. above;

   b. Over which the "insured" exercises physical control; or

   c. Otherwise:

      i. Deposited with;

      ii. Entrusted to; or

      iii. Placed in the care, custody or control of;

      the "insured."

3. Assumed by an "insured" or any employee or agent of an "insured" under any:

   a. Insurance binder; or

   b. Contract of:

      i. Insurance;

      ii. Suretyship; or

      iii. Reinsurance.

4. Resulting from errors or omissions in writing or failing to write or procure contracts of the type described in paragraph 3. above.

5. For injury arising out of error or mistake of:

   a. The "insured"; or

   b. Any person for whose acts or omissions the "insured" is legally responsible:

   In rendering or failing to render services or advice of a:

   a. Professional;

   b. Fiduciary;

   c. Administrative; or

   d. Similar;

   nature in the conduct of any "insured's" business.

**Form SX 21 31 09 01**

© 2001, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEE RETIREMENT INCOME SECURITY ACT

This endorsement modifies insurance provided under the

### UMBRELLA LIABILITY PROVISIONS

This policy does not apply to liability imposed on the "insured" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001-1381 (1976) (ERISA) or any changes to it.

Form SX 21 61 06 97   Printed in U.S.A.

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the

## UMBRELLA LIABILITY PROVISIONS

This policy does not apply to any "damages," judgments, settlements, loss, costs or expenses that:

1. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2. Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of any asbestos hazard; or

3. Arise out of any claim or "suit" for "damages" because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

Form SX 21 75 06 97   Printed in U.S.A.   (NS)

©1997, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

### SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT

This policy does not apply to any damages, judgments, settlements, loss, cost or expenses that:

a. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred in whole or in part but for the lead hazard; or

b. Arise out of any request, demand or order to:

1. Identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to or assess the effects of the lead hazard; or

2. As a result of such effects, repair, replace or improve any property.

c. Arise out of any claim or any "suit" for damages because of:

1. Identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing or mitigating or in any way responding to or assessing the effects of the lead hazard; or

2. As a result of such effects, repairing, replacing or improving any property.

As used in this exclusion, lead hazard means an exposure or threat of exposure to the actual or alleged properties of lead and includes the mere presence or suspected presence of lead in any for or combination.

Form SX 21 82 06 97    Printed in U.S.A. (NS)

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROFESSIONAL LIABILITY EXCLUSION - ELECTRONIC DATA PROCESSING SERVICES AND COMPUTER CONSULTING OR PROGRAMMING SERVICES

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of, or failure to render:

1. Electronic data processing;

2. Computer consulting; or

3. Computer programming

services, advice or instruction by:

1. The "insured;" or

2. Any person or organization:

   a. For whose acts, errors or omissions the "insured" is legally responsible; or

   b. From whom the "insured" assumed liability by reason of a contract or agreement.

© 2000, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FOLLOWING FORM ENDORSEMENT
# AUTOMOBILE LIABILITY

This endorsement modifies insurance provided under the

## UMBRELLA LIABILITY PROVISIONS

This policy does not apply to liability arising out of the:

1. Ownership;
2. Operation;
3. Maintenance;
4. Use;
5. Entrustment to others; or
6. Loading or unloading;

Of any "auto."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the injury or damage involved the ownership, maintenance, use, entrustment to others, or loading or unloading of any "auto".

## EXCEPTION

This exclusion does not apply if "underlying insurance" is maintained providing coverage for such "auto" with minimum underlying limits as described for Commercial Automobile Liability in the Schedule of Underlying Insurance Policies.

Condition K. - Maintenance of Underlying Insurance applies to this exception.

Form SX 24 01 04 01

© 2001, The Hartford

POLICY NUMBER:



THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

| SCHEDULE |
| --- |
| Terrorism Premium (Certified Acts): $ |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

Form SS 83 76 06 03





**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

Paragraph A. of INSURING AGREEMENTS (SECTION I – COVERAGES) is replaced by the following:

**INSURING AGREEMENTS**

A. **Umbrella Liability Insurance**

1. We will pay those sums that the "insured" becomes legally obligated to pay as "damages":

    a. In excess of the "underlying insurance"; or of

    b. The "self-insured retention" when no "underlying insurance" applies,

    because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies, caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in SECTION IV – LIMITS OF INSURANCE.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION II – INVESTIGATION, DEFENSE, SETTLEMENT.

2. This insurance applies to:

    a. "Bodily injury" and "property damage" only if the "bodily injury" or "property damage" occurs during the "policy period".

    b. "Personal and advertising injury" caused by an offense arising out your business, but only if the offense was committed during the "policy period".

Form SX 80 12 07 03

© 2003, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UMBRELLA LIABILITY PROVISIONS

This supplemental contract modifies insurance provided under the policy to which it is attached.

In this policy the words "you" and "your" refer to the Named Insured first shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. "We", "us" and "our" refer to the stock insurance company member of The Hartford Financial Services Group Inc. shown in the Declarations.

Other words and phrases that appear in quotation marks also have special meanings. Refer to DEFINITIONS (Section VII).

IN RETURN FOR THE PAYMENT OF THE PREMIUM, in reliance upon the statements in the Declarations made a part hereof and subject to all of the terms of this policy, we agree with you as follows:

## SECTION I - COVERAGES

### INSURING AGREEMENTS

**A. Umbrella Liability Insurance**

We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance", or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies caused by an "occurrence".

**B. Exclusions**

This policy does not apply to:

1. **Pollution**

   To any obligation:

   a. To pay for the cost of investigation, defense or settlement of any claim or "suit" against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard; or

   b. To pay any "damages", judgments, settlements, loss, costs or expenses that may be awarded or incurred:

      i. By reason of any such claim or "suit" or any such injury or damage; or

      ii. In complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion, pollution hazard means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal:

a. Pollutants;

b. Contaminants;

c. Irritants; or

d. Toxic substances;

Including:

Smoke;

Vapors;

Soot;

Fumes;

Acids;

Alkalis;

Chemicals, and

Waste materials consisting of or containing any of the foregoing. Waste includes materials to be recycled, reconditioned or reclaimed.

**EXCEPTION**

This exclusion does not apply:

a. To "bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

b. To injury or damage as to which valid and collectible "underlying insurance" with at least the minimum limits shown in the Schedule of

© 2001, The Hartford

**UMBRELLA LIABILITY PROVISIONS**

Underlying Insurance Policies is in force and applicable to the "occurrence". In such event, any coverage afforded by this policy for the "occurrence" will be subject to the pollution exclusions of the "underlying insurance" and to the conditions, limits and other provisions of this policy. In the event that "underlying insurance" is not maintained with limits of liability as set forth in the Extension Schedule of Underlying Insurance Policies, coverage under any of the provisions of this exception does not apply.

Exception **b.** does not apply to:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) That are, or that are contained in any property that is:

    a. Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

    b. Otherwise in the course of transit by or on behalf of the "insured"; or

    c. Being stored, disposed of, treated or processed in or upon any "auto";

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph (1) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

(a) The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(b) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b** and **6.c.** of the definition of "mobile equipment".

Paragraphs (2) and (3) above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. **Workers Compensation and Similar Laws**

To any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law, except for liability of others assumed by the "insured" under any contract or agreement.

3. **Contractual Liability**

To liability assumed by the "insured" under any contract or agreement with respect to an "occurrence" taking place before the contract or agreement is executed.

4. **Personal and Advertising Injury**

This policy does not apply to "personal and advertising injury".

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

5. **Underlying Insurance**

To any injury or damage:

    a. Covered by "underlying insurance" but for any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

    b. For which "damages" would have been payable by "underlying insurance" but for the actual or alleged insolvency or financial impairment of an underlying insurer.

6. **Aircraft**

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any aircraft:

    a. Owned by any "insured"; or

    b. Chartered or loaned to any "insured".

Form SX 80 02 04 01

UMBRELLA LIABILITY PROVISIONS

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any aircraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to aircraft that is:

a. Hired, chartered or loaned with a paid crew; but

b. Not owned by any "insured".

This exclusion does not apply to "bodily injury" to any of your "employees" arising out of and in the course of their employment by you.

7. **Watercraft**

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any watercraft.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any watercraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to:

a. Watercraft you do not own that is:

i. Less than 51 feet long; and

ii. Not being used to carry persons for a charge;

b. "Bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

c. Any watercraft while ashore on premises owned by, rented to or controlled by you.

8. **War**

To "bodily injury" or "property damage" due to war (whether war be declared or not). War includes invasion, act of foreign power, hostilities, civil war, rebellion, revolution, riot, riot attending a strike, civil commotion, insurrection or military power.

This exclusion applies only to "occurrences" which take place outside the United States of America, its territories or possessions, Puerto Rico or Canada.

9. **Damage to Property**

To "property damage" to property you own.

10. **Damage to Your Product**

To "property damage" to "your product" arising out of it or any part of it.

11. **Damage to Your Work**

To "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

12. **Damage to Impaired Property or Property Not Physically Injured**

To "property damage" to "impaired property" or property that has not been physically injured arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

13. **Recall of Products, Work or Impaired Property**

To "damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a. "Your product";

b. "Your work"; or

c. "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

14. **Employer Liability**

With respect to coverage afforded any of your employees to "bodily injury" or "personal and advertising injury":

a. To other "employees" arising out of and in the course of their employment;

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of such "bodily injury" to that "employee";

Form SX 80 02 04 01

UMBRELLA LIABILITY PROVISIONS

c. To you, or any of your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company); or

d. Arising out of the providing or failing to provide professional health care services.

EXCEPTION

Subparagraphs a. and b. of this exclusion apply:

a. Whether the "insured" may be liable as an employer or in any other capacity; and

b. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

Subparagraphs a. and b. of this exclusion do not apply if "underlying insurance" is maintained providing coverage for such liability with minimum underlying limits, as described in the Schedule of Underlying Insurance Polices.

15. **Property Damage to Employee's Property**

With respect to coverage afforded any of your "employees" to "property damage" to property owned or occupied by or rented or loaned to:

a. That "employee";

b. Any of your other "employees";

c. Any of your partners or members (if you are a partnership or joint venture);

d. Any of your members (if you are a limited liability company);

16. **Uninsured or Underinsured Motorists**

To any claim for:

a. Uninsured or Underinsured Motorists Coverage;

b. Personal injury protection;

c. Property protection; or

d. Any similar no-fault coverage by whatever name called;

unless this policy is endorsed to provide such coverage.

17. **Employment Practices Liability**

For any injury or damage to:

1. A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation,

harassment, humiliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person, as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

i. Whether the "insured" may be liable as an employer or in any other capacity; and

ii. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

18. **Expected or Intended**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

SECTION II - INVESTIGATION, DEFENSE, SETTLEMENT

A. With respect to "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies (whether or not the "self-insured retention" applies) and

1. For which no coverage is provided under any "underlying insurance"; or

2. For which the underlying limits of any "underlying insurance" policy have been exhausted solely by payments of "damages" because of "occurrences" during the "policy period",

We:

1. Will have the right and the duty to defend any "suit" against the "insured" seeking "damages" on account thereof, even if such "suit" is groundless, false or fraudulent; but our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under coverages afforded by this policy;

2. May make such investigation and settlement of any claim or "suit" as we deem expedient;

3. Will pay all expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the entire amount of any judgment therein which accrues after the entry of the judgment and before we have paid or tendered or deposited in court that part of the judgment which does not exceed the applicable limit of insurance;

Form SX 80 02 04 01

UMBRELLA LIABILITY PROVISIONS

4. Will pay all premiums on appeal bonds required in any such "suit", premiums on bonds to release attachments in any such "suit" for an amount not in excess of the applicable limit of insurance, and the cost of bail bonds required of the "insured" because of an accident or traffic law violation arising out of the operation of any vehicle to which this policy applies, but we will have no obligation to apply for or furnish any such bonds;

5. Will pay all reasonable expenses incurred by the "insured" at our request in assisting us in the investigation or defense of any claim or "suit", including actual loss of earnings not to exceed $500 per day per "insured";

and the amounts so incurred, except settlement of claims and "suits", are not subject to the "self-insured retention" and are payable in addition to any applicable limit of insurance.

The "insured" agrees to reimburse us promptly for amounts paid in settlement of claims or "suits" to the extent that such amounts are within the "self-insured retention".

B. You agree to arrange for the investigation, defense or settlement of any claim or "suit" in any country where we may be prevented by law from carrying out this agreement. We will pay defense expenses incurred with our written consent in connection with any such claim or "suit" in addition to any applicable limit of insurance. We will also promptly reimburse you for our proper share, but subject to the applicable limit of insurance, of any settlement above the "self-insured retention" made with our written consent.

C. If a judgment is rendered in excess of the limits of "underlying insurance" and we are willing to contribute to it but the underlying insurers elect to appeal it:

1. The cost and the duty of obtaining an appeal bond with respect to liability in excess of the limits of "underlying insurance"; and

2. The taxable costs, disbursements and additional interest incidental to such appeal;

shall be borne by the "insured" and its underlying insurers.

D. We will have the right to associate at our expense with the "insured" or any underlying insurer in the investigation, defense or settlement of any claim or "suit" which in our opinion may require payment hereunder. In no event, however, will we contribute to the cost and expenses incurred by any underlying insurer.

SECTION III - WHO IS AN INSURED

A. If you are doing business as:

1. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

3. A limited liability company, you are an "insured". Your members are also "insureds", but with only respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

5. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts:

a. Within the scope of their employment by you or while performing duties related to the conduct of your business; and

b. Only if such "employees" are insureds in the "underlying insurance" with limits of liability at least as high as set forth in the Extension Schedule of Underlying Insurance Policies, subject to all the limitations upon coverage and all other policy terms and conditions of such "underlying insurance" and this policy.

2. Any person or organization with whom you agreed, because of a written contract, agreement or permit, to provide insurance, such as is afforded under this supplemental contract, but only with respect to your operations, "your work" or facilities owned or used by you. This provision does not apply unless the written contract or agreement has been executed, or the permit has been issued prior to the "bodily injury", "property damage", or "personal and advertising injury".

3. Any person or organization having proper temporary custody of your property if you die, but only:

Form SX 80 02 04 01

UMBRELLA LIABILITY PROVISIONS

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

   4. Your legal representative if you die, but only with respect to his or her duties as such. That representative will have all your rights and duties under this policy.

C. With respect to any "auto", any "insured" in the "underlying insurance" is an "insured" under this insurance policy, subject to all the limitations of such "underlying insurance".

D. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   1. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   2. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

E. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will be deemed to be an "insured" if there is no other similar insurance available to that organization.

   However:

   1. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   2. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   3. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

F. Each person or organization, not included as an "insured" in Paragraphs A., B., C., D., or E., who is an "insured" in the "underlying insurance" is an "insured" under this insurance subject to all the limitations, other than the limits of the underlying insurer's liability, of such "underlying insurance".

No person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

With respect to any person or organization who is not an "insured" under "underlying insurance", coverage under this policy shall apply only to loss in excess of the amount of the "underlying insurance" or "self-insured retention" applicable to you.

## SECTION IV - LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made or "suits" brought; or

   3. Persons or organizations making claims or bringing "suits".

B. The Limit of Insurance stated as the General Aggregate Limit is the most we will pay for the sum of "damages", other than "damages":

   1. Because of injury or damage included within the "products-completed operations hazard";

   2. Because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you; and

   3. Because of "bodily injury" and "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any "auto".

C. The Limit of Insurance stated as the Products Completed Operations Aggregate Limit is the most we will pay for "damages" because of injury or damage included within the "products-completed operations hazard".

D. The Limit of Insurance stated as the Bodily Injury By Disease Aggregate Limit is the most we will pay for "damages" because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you.

E. Subject to B., C., or D. above, whichever applies, the Each Occurrence Limit is the most we will pay for "damages" because of all "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

F. Our obligations under this insurance end when the applicable Limit of Insurance available is used up. If we pay any amounts for "damages" in excess of that Limit of Insurance, you agree to reimburse us for such amounts.

G. The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations. However, if the "policy period" is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

## SECTION V - NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)

A. The insurance does not apply:

1. To "bodily injury" or "property damage":

   a. With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

   a. The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the

## UMBRELLA LIABILITY PROVISIONS

United States of America, its territories or possessions or Canada, this exclusion (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

B. As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

UMBRELLA LIABILITY PROVISIONS

SECTION VI - CONDITIONS

A. Premium

All premiums for this policy shall be computed in accordance with the Premium Section of the Declarations. The premium stated as such in the Declarations is a deposit premium only which shall be credited to the amount of any earned premium. At the close of each "policy period", the earned premium shall be computed for such period, and upon notice thereof to the Named Insured first shown in the Declarations shall become due and payable by such Named Insured. If the total earned premium for the "policy period" is less than the premium previously paid and more than the minimum premium, we shall return to such Named Insured the unearned portion paid by such Named Insured.

The Named Insured first shown in the Declarations shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the "policy period" and at such times during the "policy period" as we may direct.

B. Inspection and Audit

We shall be permitted but not obligated to inspect your property and operations at any time. Neither our right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on your behalf or for your benefit or that of others to determine or warrant that such property or operations are:

1. Safe;

2. Healthful; or

3. In compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the "policy period" and extensions thereof and within three years after the final termination of this policy, insofar as they relate to the subject matter of this policy.

C. Duties In The Event Of Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim under this policy. This requirement applies only when such "occurrence" is known to any of the following:

   (a) You, if you are an individual;

   (b) A partner, if an insured is a partnership;

   (c) A manager, if a limited liability company; or

   (d) An "executive officer" or insurance manager, if you are a corporation.

To the extent possible, notice should include:

   (a) How, when and where the "occurrence" took place;

   (b) The names and addresses of any injured persons and witnesses; and

   (c) The nature and location of any injury or damage arising out of the "occurrence" or "offense".

2. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us in writing as soon as practicable if the claim is likely to exceed the amount of the "self-insured retention" or "underlying insurance", whichever applies.

3. You and any other involved insured must:

   (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of any "self-insured retention" or "underlying insurance", whichever applies";

   (b) Authorize us to obtain records and other information;

   (c) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (d) Assist us, upon our request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this policy or any "underlying insurance" or "self-insured retention" may apply.

4. No insured will, except at that insured's own cost, make or agree to any settlement for a sum in excess of:

   (a) The total limits of "underlying insurance"; or

   (b) The "self-insured retention" if no "underlying insurance" applies

   without our consent.

5. No insureds will, except at that insured's own cost, make a payment, assume any obligation, or incur any expenses, other than first aid, without our consent.

D. Assistance and Cooperation of the Insured

The "insured" shall:

1. Cooperate with us and comply with all the terms and conditions of this policy; and

UMBRELLA LIABILITY PROVISIONS

2. Cooperate with any of the underlying insurers as required by the terms of the "underlying insurance" and comply with all the terms and conditions thereof.

The "insured" shall enforce any right of contribution or indemnity against any person or organization who may be liable to the "insured" because of "bodily injury", "property damage" or "personal and advertising injury" with respect to this policy or any "underlying insurance".

### E.  Legal Action Against Us

No person or organization has a right under this policy:

a.  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.  To sue us on this policy unless all of its terms and those of the "underlying insurance" have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but, we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the limit of liability.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### F.  Appeals

In the event the "insured" or the "insured's" underlying insurer elects not to appeal a judgment in excess of the "underlying insurance" or the "self-insured retention", we may elect to make such appeal, at our cost and expense.  If we so elect, we shall be liable in addition to the applicable Limit of Insurance, for the:

1.  Taxable costs;

2.  Disbursements; and

3.  Additional interest incidental to such appeal;

but in no event will we be liable for "damages" in excess of the .. applicable aggregate Limit of Insurance.

### G.  Other insurance

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible.  It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1.  Primary;

2.  Contributing;

3.  Excess; or

4.  Contingent;

Provided that if such other insurance provides umbrella coverage in excess of underlying insurance or a self-insured retention, this policy shall contribute therewith with respect to "damages".

However, we shall not be liable for a greater proportion of such loss than the amount which would have been payable under this policy bears to the sum of:

1.  Said amount; and

2.  The amounts which would have been payable under each other umbrella policy applicable to such loss, had each such policy been the only policy so applicable.

### H.  Transfer Of Rights Of Recovery Against Others To Us

a.  If the insured has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us.  The insured must do nothing after a loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b.  Recoveries shall be applied to reimburse:

(1) First, any interest (including the Named Insured) that paid any amount in excess of our limit of liability;

(2) Second, us, along with any other insurers having a quota share interest at the same level;

(3) Third, such interests (including the Named Insured) of whom this insurance is excess.

However, a different apportionment may be made to effect settlement of a claim by agreement signed by all interests.

c.  Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

### I.  Changes

This policy contains all the agreements between you and us concerning the insurance afforded.  Notice to any agent, or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this policy, or stop us from asserting any rights under the terms of this policy.

The Named Insured first shown in the Declarations is authorized on behalf of all "insureds" to agree with us on changes in the terms of this policy.

Form SX 80 02 04 01

## UMBRELLA LIABILITY PROVISIONS

If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

**J. Separation Of Insureds**

Except with respect to the Limits of Liability, and any rights or duties specifically assigned in this policy to the Named Insured first shown in the declarations, this insurance applies:

a. As if each Named Insured were the only Named Insured: and

b. Separately to each insured against whom claim is made or "suit" is brought.

**K. Maintenance of Underlying Insurance**

Policies affording in total the coverage and limits stated in the Schedule of Underlying Insurance Policies shall be maintained in full effect during the currency of this policy. Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable only to the extent that we would have been liable had you complied herewith.

The Named Insured first shown in the Declarations shall give us written notice as soon as practicable of any of the following:

1. Any change in the coverage or in the limits of any "underlying insurance", including but not limited to a change from occurrence coverage to claims made coverage;

2. Termination of part or all of one or more of the policies of "underlying insurance";

3. Reduction or exhaustion of an aggregate limit of liability of any "underlying insurance".

The "self-insured retention" shall not apply should the "underlying insurance" be exhausted by the payment of claims or "suits" which are also covered by this policy.

**L. Cancellation**

1. The Named Insured first shown in the Declarations may cancel this policy by mailing or delivering to us or to any of our authorized agents advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations at the address shown in this policy, written notice of cancellation at least:

a. 10 days before the effective date of cancellation if such Named Insured fails to pay the premium or any installment when due; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. If notice is mailed, proof of mailing will be sufficient proof of notice. Notice will state the effective date of cancellation. The "policy period" will end on that date. Delivery of such notice by the Named Insured first shown in the Declarations or by us will be equivalent to mailing.

4. If the Named Insured first shown in the Declarations cancels, the refund may be less than pro rata, but we will retain any minimum premium stated as such in the Declarations. If we cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**M. Nonrenewal**

1. If we decide not to renew, we will mail or deliver to the Named Insured first shown in the Declarations, at the address shown in this policy, written notice of nonrenewal at least 30 days before the end of the "policy period".

2. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. If we offer to renew but such Named Insured does not accept, this policy will not be renewed at the end of the current "policy period".

**N. Workers' Compensation Agreement**

With respect to "bodily injury" to any officer or other employee arising out of and in the course of employment by you, you represent and agree that you have not abrogated and will not abrogate your common-law defenses under any Workers' Compensation Law by rejection of such law or otherwise. If at any time during the "policy period" you abrogate such defenses, the insurance for "bodily injury" to such officer or other employee automatically terminates at the same time.

**O. Bankruptcy or Insolvency**

In the event of the bankruptcy or insolvency of the "insured" or any entity comprising the "insured", we shall not be relieved of any of our obligations under this policy.

**P. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. The statements in the Extension Schedule Of Underlying Insurance Policies are accurate and complete;

c. The statements in a. and b. are based upon representations you made to us;

Form SX 80 02 04 01

UMBRELLA LIABILITY PROVISIONS

d. We have issued this policy in reliance upon your representations; and

e. If unintentionally you should fail to disclose all hazards at the inception of this policy, we shall not deny coverage under this policy because of such failure.

## SECTION VII - DEFINITIONS

**Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.**

"Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

"Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

"Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand or order; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) That are, or that are contained in any property that is:

  a. Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

  b. Otherwise in the course of transit by or on behalf of the "insured"; or

  c. Being stored, disposed of, treated or processed in or upon any "auto"; or

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

"Damages" include prejudgment interest awarded against the "insured" on that part of the judgment we pay.

"Damages" do not include:

1. Fines;

2. Penalties; or

3. Damages for which insurance is prohibited by the law applicable to the construction of this policy.

Subject to the foregoing, "damages" include damages for any of the following which result at any time from "bodily injury" to which this policy applies:

1. Death;

2. Mental anguish;

3. Shock;

4. Disability; or

5. Care and loss of services or consortium.

"Insured" means any person or organization qualifying as an insured in the applicable WHO IS AN INSURED provision of this policy. The insurance afforded applies separately to each "insured" against whom claim is made or "suit" is brought, except with respect to the limit of our liability under LIMITS OF INSURANCE (SECTION IV).

"Occurrence" means:

1. With respect to "bodily injury" or "property damage": an

UMBRELLA LIABILITY PROVISIONS

accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury" or "property damage" neither expected nor intended from the standpoint of the "insured" and includes the use of reasonable force to protect persons or property; and

2. With respect to "personal and advertising injury" an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

"Policy period" means the period beginning with the inception date stated as such in the Declarations and ending with the earlier of:

1. The date of cancellation of this policy; or

2. The expiration date stated as such in the Declarations.

"Self-insured retention" means the amount stated as such in the Declarations which is retained and payable by the "insured" with respect to each "occurrence".

"Underlying insurance" means the insurance policies listed in the Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which

provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of "underlying insurance" includes:

1. Any deductible amount;

2. Any participation of any "insured"; and

3. Any "self-insured retention" above or beneath any such policy;

Less the amount, if any, by which the aggregate limit of such insurance has been reduced by any payment relating to any act, error, omission, injury, damage or offense for which insurance is provided by this policy, including Medical Payments Coverage as described in the "underlying insurance". The coverages and limits of such policies and any such deductible amount, participation or "self-insured retention" shall be deemed to be applicable regardless of:

1. Any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

2. The actual or alleged insolvency or financial impairment of any underlying insurer or any "insured".

The risk of insolvency or financial impairment of any underlying insurer or any "insured" is borne by you and not by us.

Form SX 80 02 04 01

# EXTENSION SCHEDULE OF UNDERLYING INSURANCE POLICIES



This extension schedule forms a part of the policy designated in the Declarations.

**Carrier, Policy Number and Policy Period:**

A. HARTFORD CASUALTY INSURANCE COMPANY

   44 SBA TE6003   09/01/05   TO   09/01/06

**Type of Coverage**

( X ) Comprehensive Business Liability - including:

**Applicable Limits**

Bodily Injury and Property Damage Liability Combined

$1,000,000    each occurrence
$2,000,000    general aggregate

          Employees as Additional Insureds
          Contractual Liability
          Limited Non-Owned Watercraft
          Non-Owned Snowmobiles
          Additional Insureds
          Damages To Premises Rented To You

Property Damage Liability

$   300,000    each occurrence

( X ) Personal Injury

$1,000,000

( X ) Advertising Injury

$1,000,000

( X ) Products/Completed Operations

$2,000,000    Prod./Comp. Ops. aggregate

(  ) Non-Owned Automobile - Hired Car

Limit of Liability

B. HARTFORD UNDERWRITERS INS CO   44UECGF2767   09/01/05  TO  09/01/06

( X ) Comprehensive Automobile Liability -
    Owned Automobiles

Bodily Injury Liability

each person
each accident

Property Damage Liability

each accident

(  ) Non-Owned Automobiles

Bodily Injury and Property Damage

(  ) Hired Automobiles

$1,000,000    Liability Combined
each accident

(  ) Uninsured Motorist

each occurrence

C. TWIN CITY FIRE INSURANCE CO   44WECKE0523   09/01/05  TO  09/01/06

( X ) Employers' Liability

$   500,000    each accident*

$   500,000    each employee by disease*

$   500,000    total policy by disease*

D.

(  ) Liquor Law Legal Liability

An "X" marked in the box indicates the coverage is provided in the Underlying Policies.

(Note Maintenance of Underlying Insurance Condition SX 80 02.)

*Except that in any jurisdiction where the amount of Employers Liability Coverage afforded by the underlying insurer is by law unlimited, the limit stated does not apply and the policy of which this extension schedule forms a part shall afford no insurance with respect to Employers Liability in such jurisdiction.

Form SX 80 04 03 00   Printed in U.S.A.  (NS)
Process Date: 07/25/05

Policy Expiration Date: 09/01/06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY ENDORSEMENT (CLAIMS MADE)

This endorsement modifies insurance provided under the

## SPECTRUM UMBRELLA SUPPLEMENTAL CONTRACT

### SCHEDULE I

| Coverage | Limits of Insurance | |
|---|---|---|
| Employee Benefits Liability | $ 1,000,000 | each claim limit |
| | $ 1,000,000 | aggregate limit |

### SCHEDULE II
"Controlling Underlying Insurance Policy"

Insurer: HARTFORD CASUALTY INSURANCE COMPANY

| Policy No.<br>44 SBA TE6003 | Policy Period<br>09/01/05    TO    09/01/06 | Retroactive Date<br>09/01/03 |
|---|---|---|
| Coverage | | Limits of Insurance |
| Employee Benefits Liability | $ 1,000,000 | each claim limit |
| | $ 2,000,000 | aggregate limit |

This policy is extended to apply to Employee Benefits Liability, subject to the following additional provisions:

1. Except as otherwise provided by this endorsement, the insurance afforded herein shall follow all the terms, definitions and exclusions of the "controlling underlying insurance policy" designated in Schedule II.

2. **SECTION I - COVERAGE EB**

   A. We will pay those sums that the insured must legally pay as "damages:"

      1. Because of "employee benefits injury" to which this endorsement applies; and

      2. That are in excess of the limits of insurance in the "controlling underlying insurance policy."

   B. This insurance does not apply to "employee benefits injury" which occurred before the Retroactive Date, if any, shown in Schedule II or which occurs after the "policy period."

3. **SECTION III - LIMITS OF INSURANCE**

   A. The Limits of Insurance shown in Schedule I and the rules below fix the most we will pay regardless of the number of:

      1. Insureds;

      2. Claims made or "suits" brought; or

      3. Persons or organizations making claims or bringing "suits."

   B. The Aggregate Limit is the most we will pay for all "damages" to which this endorsement applies.

   C. Subject to B. above the Each Claim Limit is the most we will pay for all "damages" with respect to any one claim.

Form SX 04 15 06 97 Printed in U.S.A. (NS)

Page 1 of 3

© 1997, The Hartford

Process Date:  07/25/05

Expiration Date: 09/01/06

21740

*2100044TE60030106*

D. Our obligations under this endorsement and when the applicable Limit of Insurance is used up. If we pay for any "damages" in excess of that Limit of Insurance, you agree to reimburse us for such amounts.

E. The Limits of Insurance shown in Schedule I apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in Schedule II, unless the endorsement is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

4. **EXTENDED REPORTING PERIODS**

A. We will provide one or more Extended Re-porting Periods, as described below, if:

  1. This endorsement is cancelled or not renewed; or

  2. We renew or replace this endorsement with insurance that:

    i. Has a Retroactive Date later than the date shown in the Declaration of this endorsement; or

    ii. Does not apply to "employee benefits injury" on a claims-made basis.

B. A Basic Extended Reporting Period is auto-matically provided without additional charge. This period starts with the end of the "policy period" and lasts for:

  1. One year for "claims" arising out of an "employee benefits injury" reported to us, not later than 60 days after the end of the "policy period";

  2. Sixty days for all other "claims."

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims."

C. A Supplemental Extended Reporting Period of three years duration is available, but only by an

endorsement and for an extra charge. This supplemental period starts:

  1. One year after the end of the "policy period" for "claims" arising out of an "occurrence" reported to us, not later than 60 days after the end of the "policy period" or

  2. Sixty days after the end of the "policy period" for all other "claims."

You must give us a written request for the endorsement within 60 days after the end of the "policy period." The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

1. The exposures insured;

2. Previous types and amounts of insurance;

3. Limits of Insurance available under this endorsement for future payment of "damages" and

4. Other related factors.

The additional premium will not exceed 200% of the annual premium for this endorsement.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

D. Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. They apply only to "claims" for "employee benefits injury" that occur before the end of the "policy period" (but not before the Retroactive Date, if any, shown in the Declarations).

"Claims" for such injury which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the "policy period."

Once in effect, Extended Reporting Periods may not be cancelled by us.

E. Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any "claim" to which this endorsement applies, except to the extent described in paragraph F. of this Section.

F. If the Supplemental Extended Reporting Period is in effect, we will provide the separate aggregate limit of insurance described below, but only for claims" first received and recorded during the Supplemental Extended Reporting Period.

Form SX 04 15 06 97 Printed in U.S.A. (NS)

© 1997, The Hartford

The separate aggregate limit of insurance will be equal to the dollar amount shown in Schedule I in effect at the end of the "policy period" of this endorsement.

Paragraph B. of **SECTION III - LIMITS OF INSURANCE** will be amended accordingly.

5.  ADDITIONAL DEFINITIONS

"Controlling underlying insurance policy" means the policy of "underlying insurance" designated in Schedule II providing coverage and limits for Employee Benefits Liability.

**Form SX 04 15 06 97**  Printed in U.S.A.  (NS)

**Page 3 of 3**

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - CARE, CUSTODY OR CONTROL OF PERSONAL PROPERTY

This endorsement modifies insurance provided under the

### UMBRELLA LIABILITY PROVISIONS

This policy does not apply to "property damage" to personal property:
1.  Rented to;
2.  Used by; or
3.  In the care, custody or control;

Of any "insured" or as to which any "insured" is for any purpose exercising physical control.

Form SX 21 04 06 97   Printed in U.S.A.

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - CARE, CUSTODY OR CONTROL OF REAL PROPERTY

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to "property damage" to real property:

1.  Owned by;
2.  Occupied by;
3.  Rented to; or
4.  In the care, custody or control;

Of any "insured" or as to which any "insured" is for any purpose exercising physical control.

**Form SX 21 05 06 97**   Printed in U.S.A.

© 1997, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

## UMBRELLA LIABILITY PROVISIONS

A. With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© 2003, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - SECURITIES TRANSACTIONS

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to any liability:

1. Imposed under the common or statutory law of any state or under any applicable federal law, including any rules or regulations adopted under such laws and any amendments thereto, involving the purchase, transfer or sale of any securities; or

2. Imposed under the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended or the Investment Company Act of 1940, as amended, including any rules or regulations adopted under these laws and any amendments thereto.

Form SX 21 27 06 97 Printed in U.S.A.

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE -
# FINANCIAL INSTITUTIONS

This endorsement modifies insurance provided under the following:

## UMBRELLA LIABILITY PROVISIONS

This insurance does not apply to liability:

1. Arising out of the ownership, control, maintenance or use of property (real or personal) held by the "insured" in any fiduciary capacity.

   This could be as trustee, guardian, executor, administrator, custodian, escrow agent, or in any capacity similar to any of these.

2. For "property damage" to any property (real or personal):

   a. Held by the "insured" in any fiduciary capacity described in paragraph 1. above;

   b. Over which the "insured" exercises physical control; or

   c. Otherwise:

      i. Deposited with;

      ii. Entrusted to; or

      iii. Placed in the care, custody or control of;

      the "insured."

3. Assumed by an "insured" or any employee or agent of an "insured" under any:

   a. Insurance binder; or

   b. Contract of:

      i. Insurance;

      ii. Suretyship; or

      iii. Reinsurance.

4. Resulting from errors or omissions in writing or failing to write or procure contracts of the type described in paragraph 3. above.

5. For injury arising out of error or mistake of:

   a. The "insured"; or

   b. Any person for whose acts or omissions the "insured" is legally responsible:

   In rendering or failing to render services or advice of a:

   a. Professional;

   b. Fiduciary;

   c. Administrative; or

   d. Similar;

   nature in the conduct of any "insured's" business.

Form SX 21 31 09 01

© 2001, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEE RETIREMENT INCOME SECURITY ACT

This endorsement modifies insurance provided under the

### UMBRELLA LIABILITY PROVISIONS

This policy does not apply to liability imposed on the "insured" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001-1381 (1976) (ERISA) or any changes to it.

Form SX 21 61 06 97   Printed in U.S.A.

© 1997, The Hartford



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the

## UMBRELLA LIABILITY PROVISIONS

This policy does not apply to any "damages," judgments, settlements, loss, costs or expenses that:

1.  May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2.  Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of any asbestos hazard; or

3.  Arise out of any claim or "suit" for "damages" because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

Form SX 21 75 06 97   Printed in U.S.A.   (NS)

©1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

## SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT

This policy does not apply to any damages, judgments, settlements, loss, cost or expenses that:

a. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred in whole or in part but for the lead hazard; or

b. Arise out of any request, demand or order to:

1. Identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to or assess the effects of the lead hazard; or

2. As a result of such effects, repair, replace or improve any property.

c. Arise out of any claim or any "suit" for damages because of :

1. Identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing or mitigating or in any way responding to or assessing the effects of the lead hazard; or

2. As a result of such effects, repairing, replacing or improving any property.

As used in this exclusion, lead hazard means an exposure or threat of exposure to the actual or alleged properties of lead and includes the mere presence or suspected presence of lead in any for or combination.

Form SX 21 82 06 97   Printed in U.S.A. (NS)

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROFESSIONAL LIABILITY EXCLUSION - ELECTRONIC DATA PROCESSING SERVICES AND COMPUTER CONSULTING OR PROGRAMMING SERVICES

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of, or failure to render:

1. Electronic data processing;

2. Computer consulting; or

3. Computer programming

services, advice or instruction by:

1. The "insured;" or

2. Any person or organization:

   a. For whose acts, errors or omissions the "insured" is legally responsible; or

   b. From whom the "insured" assumed liability by reason of a contract or agreement.

Form SX 22 84 03 00

Page 1 of 1

© 2000, The Hartford



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FOLLOWING FORM ENDORSEMENT
# AUTOMOBILE LIABILITY

This endorsement modifies insurance provided under the

## UMBRELLA LIABILITY PROVISIONS

This policy does not apply to liability arising out of the:

1. Ownership;
2. Operation;
3. Maintenance;
4. Use;
5. Entrustment to others; or
6. Loading or unloading;

Of any "auto."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the injury or damage involved the ownership, maintenance, use, entrustment to others, or loading or unloading of any "auto".

### EXCEPTION

This exclusion does not apply if "underlying insurance" is maintained providing coverage for such "auto" with minimum underlying limits as described for Commercial Automobile Liability in the Schedule of Underlying Insurance Policies.

Condition K. - Maintenance of Underlying Insurance applies to this exception.

Form SX 24 01 04 01

© 2001, The Hartford

POLICY NUMBER:



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

| SCHEDULE |
| --- |
| Terrorism Premium (Certified Acts): <br> $ |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

Form SS 83 76 06 03



Form G-3185-0

# EXHIBIT B

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| WILCOX & FETZER LTD., <br> a Delaware corporation, <br><br>     Plaintiff, <br><br>   v. <br><br> EVC, INC. and ECRW, INC., d/b/a <br> CORBETT & WILCOX, <br><br>     Defendants | ) <br> ) <br> ) <br> )  Civil Action No. 2037-N <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiff Wilcox & Fetzer Ltd. ("Wilcox & Fetzer" or "Plaintiff") by and through its

attorneys Richards, Layton & Finger, P.A., for its complaint against Defendants alleges as

follows:

### Nature of the Action

1.    This is an action brought to enjoin Defendants' ongoing use of the name

"Wilcox" in the firm name Corbett & Wilcox in a manner which deprives Plaintiff of the

valuable trademark and trade name rights it owns in the name and mark "Wilcox & Fetzer"

which rights arise through more than 15 years of exclusive and continuous use of the name and

mark to offer high quality services to the Bar. Plaintiff also bargained and paid for, specifically

the right to use the name "Wilcox" in its firm name on a royalty-free basis in perpetuity. This

action also seeks injunctive relief and damages under the Uniform Deceptive Trade Practices

Act, 6 *Del. C.*§ 2531, *et seq.* (the "Act") for Defendants' wrongful and highly damaging

advertising campaign suggesting that Plaintiff and Corbett & Wilcox have merged or otherwise "joined forces."

2.    Plaintiff also seeks further orders of the Court requiring Defendants to take all reasonable steps to mitigate the confusion that has been created through its wrongful use of the Corbett & Wilcox trade name. Finally, Plaintiff seeks limited damages under the Deceptive Trade Practices Act relating to the injuries caused by Defendants' misleading advertising campaign.

### The Parties

3.    Plaintiff is a Delaware corporation that has offered freelance court reporting services in the State of Delaware since 1989. At all times relevant hereto prior to 2004, Robert W. Wilcox, Sr. ("Wilcox") and Kurt Fetzer ("Fetzer") were the two stockholders of Plaintiff. As small business owners in a small legal community, both Messrs. Wilcox and Fetzer personally became known to many members of the Bar. Members of the legal community came to associate both Messrs. Wilcox and Fetzer with the successful court reporting business that they worked together to build.

4.    Over the years that Plaintiff operated under the name Wilcox & Fetzer, it succeeded in establishing an excellent reputation among members of the Bar for its rendition of high quality and professional freelance court reporting and related services. Plaintiff has sought to differentiate itself from its competition in the state (principally Corbett & Associates, predecessor in name to Defendant EVC, Inc.) on the basis that it offers high quality reporting services from a highly skilled staff of reputable, certified court reporters.

5.    Defendants EVC, Inc. ("EVC") and ECRW, Inc. ("ECRW"), collectively referred to under their shared trade name Corbett & Wilcox, also provide court reporting services in the

state of Delaware and have engaged in the course of dealing in the state complained of herein. Corbett & Associates, the former trade name of EVC, has been Plaintiff's primary competitor in the Wilmington court reporting market for many years. EVC changed its trade name from Corbett & Associates to Corbett & Wilcox following the hiring of Wilcox in early 2006, and is owned solely by Ellie Corbett Hannum ("Hannum"). ECRW was formed in late 2005 and provides court reporting services in the Dover, Delaware area. Wilcox and Hannum together own the majority interest in ECRW.

### Jurisdiction

6.    Defendants carry on a regular course of business in the State of Delaware, including the course of conduct complained of herein.

7.    This Court also has jurisdiction over defendants pursuant to 10 *Del. C.* §3104, as well as the *Uniform Deceptive Trade Practices Act*, 6 *Del. C.* §2531, et seq. The acts and transactions complained of herein took place in the State of Delaware, as did the business harm which flows from these acts.

### Background

8.    Plaintiff has continuously done business under the trade name "Wilcox & Fetzer," offering court reporting services from its office in Wilmington, Delaware for more than 15 years.

9.    Plaintiff's name has become associated in the minds of the consumers of its services with the provision of high quality court reporting services.

10.    Plaintiff has acquired "goodwill" in the name "Wilcox & Fetzer" through more than 15 years of continuous and exclusive use of the name and mark.

11.    In 2004, Wilcox retired from Wilcox & Fetzer after triggering a "buy/sell" agreement between the principals. Upon leaving the firm, Wilcox, in exchange for substantial

consideration, sold his interest in the firm to Fetzer. As part of the agreement of sale, Wilcox agreed to a one-year non-compete agreement. Wilcox also granted Wilcox & Fetzer a perpetual royalty-free license to any and all rights in the trade name "Wilcox & Fetzer Ltd." or any derivative or style thereof.

12.    In early 2006, after completion of his non-competition period, Wilcox was hired by EVC as an employee for hire.

13.    Shortly after hiring Wilcox as an employee, and seeking to trade on the goodwill built up in the name "Wilcox & Fetzer" – goodwill for which Wilcox personally was paid – Hannum caused EVC to change its trade name from Corbett & Associates to Corbett & Wilcox, despite the fact that Wilcox is not actually a partner in this entity, and began the campaign which gives rise to this lawsuit.

14.    To promote the name change, members of the Delaware Bar were sent an announcement prominently featuring an image of Wilcox and Hannum (owner of defendant), which trumpeted that Corbett and Wilcox had "joined forces to become ... [the] single source" for court reporting services. The use of Wilcox's name and image in the manner used, as well as the misleading text of the advertising copy, were consciously designed to suggest that Wilcox & Fetzer had merged with or been acquired by Corbett & Associates, which is false.

15.    As a result of this announcement, Wilcox & Fetzer has been the recipient of numerous communications from members of the Delaware Bar, as well as attorneys in other states, legal secretaries and other support staff, (who often are responsible for scheduling Plaintiff's services), both inside and outside Delaware, and other court reporting firms outside the state inquiring as to whether Wilcox & Fetzer had merged with or been acquired by Corbett & Associates.    Indeed, several clients of Defendants have recently contacted Plaintiff to

complain about the work product, or failure to appear by reporters, of Corbett & Wilcox, wrongly assuming that the two firms were now merged.

16.    On February 9, 2006, counsel for Wilcox & Fetzer contacted Defendants demanding that they cease and desist using any advertising or other communications which suggest, directly or indirectly, that Corbett & Associates has bought, merged with, or otherwise taken over Wilcox & Fetzer.

17.    Thereafter, counsel for Defendants contacted counsel for Plaintiff to explore the demands set forth in Plaintiff's letter. As a result of that communication, counsel for Plaintiff wrote a further letter demanding specific steps be taken to avoid the confusion and business harm being caused by Defendants.

18.    During these communications, counsel for Defendants informed counsel for Plaintiff that Wilcox had no ownership interest in EVC and was merely an employee. Notwithstanding counsel's representation, the Corbett & Wilcox website misleadingly holds Wilcox out to be a "principal" of Corbett & Wilcox and prominently displays his image, without making any distinction between EVC, of which Wilcox is not a partner, and ECRW.

19.    Despite demands to cease and desist, Defendants caused a full page advertisement to be placed in the Winter 2005/06 issue of the *Delaware Lawyer*. Precisely like the earlier announcement to the Bar, the *Delaware Lawyer* advertisement prominently features the images of Wilcox and Hannum and repeats the advertising copy that they have "joined forces to become the area's most renowned, most experienced court reporting business now at your service."

20.    Rather than respond to Plaintiff's constructive attempts to resolve this matter short of litigation, and despite repeated demands that they cease and desist, the front page of the Delaware Business section of the February 24, 2006 edition of the *News Journal* carried a lead

article titled "Two court-reporting firms merge" reporting that "[t]wo court reporting firm owners in Wilmington have announced a merger to form a new company, Corbett & Wilcox." No such merger took place. Thereafter, the *News Journal* published a correction of its story, but did so in an inconspicuous manner, not in the Business Section and placed the correction immediately above an advertisement for funeral services. In short, while Defendants' original misleading story was prominently placed, the subsequent correction was buried in a remote corner of the newspaper.

21.     Notwithstanding Defendants' repeated representations, including through counsel, that they never led anyone to believe that Plaintiff had "merged" with the Defendants, Plaintiff has come into possession of the press release disseminated by Defendants, which begins: "Two well-known court reporting firm owners have just announced they have merged to form a new company..." Thus, Defendants' actions were calculated from the outset to mislead the market in which their services are sold and to harm Plaintiff. Defendants' misleading form of press release is attached hereto as Exhibit A.

22.     Following the publication of the *News Journal* article, counsel for Plaintiff again contacted counsel for Defendants and demanded that Defendants cease their wrongful conduct.

23.     Thereafter, at least two additional news articles were published suggesting that Defendants had "merged" with Plaintiff.

24.     In its March, 2006 issue, the *Cecil Business Ledger* ran an article titled "Seasoned court reporting firms form Corbett & Wilcox." That article begins: "Two well-known court reporting firm owners have announced they have merged. . ." In fact, no such merger took place.

25.    A third article, titled "Court reporting firms merge" appeared in the March, 2006 issue of *The Business Ledger* along with pictures of Hannum and Wilcox. No such merger took place.

26.    Like the *News Journal* article, the articles which appeared in the *Cecil Business Ledger* and *The Business Ledger* are evidence of the confusion caused by Defendants' conduct.

27.    Plaintiff is also aware that, on at least one occasion, Wilcox wrongfully and incorrectly represented orally that the two firms had merged, which they have not.

28.    Plaintiff has suffered injury to its business reputation and prospective business opportunities due to the confusion generated by Defendants' conduct.

29.    Plaintiff has been approached by numerous clients inquiring why the firm has merged with its competitor and still others who have inquired whether the firm still existed. This confusion has created actual and ongoing harm to Plaintiff's business and business prospects.

30.    Notwithstanding Plaintiff's numerous demands, Defendants initially made no effort to mitigate the confusion associated with the change in its name. In fact, it magnified the confusion by repeatedly causing advertising to be published stating that Wilcox and Corbett have "joined forces".

31.    Moreover, upon information and belief, Defendants caused misleading information to be released in the press to the effect that the two firms had "merged" which was knowingly false and designed to cause injury to Plaintiff, Defendants' primary competitor.

32.    Thereafter, after receiving a draft of this Complaint through counsel and in the face of a demand that this matter be submitted to binding arbitration, EVC first replaced its counsel, then temporized until it could be in a position to send a unilateral mailing to the Bar explaining that it had not combined with Plaintiff. Indeed, however, even the Defendants'

communication to the Bar was inaccurate. That communication represented "it was not our intent to in any way insinuate that Corbett & Associates and/or Corbett & Wilcox had bought, merged with or otherwise taken over Wilcox & Fetzer." Defendants' protestations ring hollow in light of their misleading press release quoted above, and attached hereto.

33.    Defendants' recent mailing has not addressed the confusion caused by Defendants' misleading campaign. For example, even though the letter dissembles as to the intent of the Defendants, it was not sent to Government attorneys, for whom Plaintiff performs substantial business services; out of town attorneys or court reporting firms; who regularly refer work to Plaintiff; or legal support staff, who often are responsible for scheduling of Plaintiff's services. Defendants' mailing is too little and too late to address the serious harm it has caused.

34.    For example, Plaintiff recently received several checks made out to "Wilcox & Fetzer" from local members of the Bar which enclosed copies of Corbett & Wilcox invoices. Plaintiff, of course, turned these checks over to counsel for Defendants.

35.    In addition to the foregoing, Defendants' web page, www.corbettreporting.com continued to utilize the misleading "joined forces" language until after the filing of this suit, and holds out Robert Wilcox, Sr. as a "principal" of the firm, notwithstanding that he is merely an employee for hire. Thus, clients from across the country who seek to access reporting services through internet searches are continuing to be subject to precisely the same confusion which has been rampant at the Delaware Bar, and caused solely by Defendants' campaign to trade on Plaintiff's goodwill. Notwithstanding Defendants' letter to selected members the Bar, they have taken no steps to correct precisely the same misleading information on their web page.

36.    Likewise, a web search conducted for "Wilcox Court Reporting" performed at the time of the filing of this Complaint on Google returns first two hits for Corbett & Wilcox,

- 8 -

demonstrating that the use of the Wilcox name in a firm in which he has no ownership interest is causing active, ongoing harm to Plaintiff's business, a not immaterial portion of which originates from out of town attorneys.

37.     The fact that the Plaintiff and Defendants engage in exactly the same business in the same geographic area greatly magnifies both the opportunity for confusion and the reputational impact of Defendants' wrongful conduct.

<div align="center">

**COUNT I**
(For Preliminary and Permanent Injunctive Relief)

</div>

38.     The allegations of paragraphs 1 through 37 of the Complaint are incorporated by reference as if fully set forth herein.

39.     Plaintiff owns a valuable and protectable common law trademark and trade name: "Wilcox & Fetzer." As the sole owner of this name and mark, Plaintiff enjoys the exclusive right to trade on the goodwill built up in the mark.

40.     Defendants' use of a confusingly similar trade name creates a likelihood of confusion in the market for Plaintiff's services.

41.     Plaintiff also paid substantial consideration for its interest in the goodwill associated with Plaintiff's name, mark and business. In connection with the transaction, Plaintiff also received a perpetual, royalty-free license to use the name.

42.     Plaintiff owns a valuable right, for which it paid substantial consideration, the right to use the name "Wilcox" in its trade name and to trade on the many years of goodwill built in that trade name and mark.

43.     The use of the name "Wilcox" in the new Corbett & Wilcox firm name wrongfully dilutes the value of the license held by Plaintiff and misappropriates the value built up in the Wilcox & Fetzer name and mark; creates confusion in the marketplace for the goods

and services offered by Plaintiff; and associates Plaintiff's goods and services with identical goods and services of arguably inferior quality.

44.    The use of the image of Robert W. Wilcox, Sr. as part of Defendants' advertising, as well as its patently misleading advertising copy, and misleading communications with the press were and are consciously designed to mislead the public at large and the marketplace for services addressed by both Plaintiff and Defendants.

45.    The public at large, and the legal community specifically, have an interest in easily identifying and distinguishing the firms offering court reporting services to the local legal community.

46.    Plaintiff is entitled to preliminary and permanent injunctive relief such that all confusion regarding the identity of the two competing firms is mitigated.

47.    Plaintiff has no adequate remedy at law.

## COUNT II
### (For a Permanent Injunctive Relief and Damages Pursuant to the Uniform Deceptive Trade Practices Act )

48.    The allegations of paragraphs 1 through 47 of the Complaint are incorporated by reference as if fully set forth herein.

49.    Under the Uniform Deceptive Trade Practices Act, 6 *Del. C.* § 2531 *et seq*, a person engages in a deceptive trade practice when, among other instances, that person causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; or causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another. 6 *Del. C.* § 2532

50.    By virtue of the course of conduct set forth above, Defendants have caused the likelihood of confusion, misunderstanding, and actual confusion relating to the source, sponsorship and affiliation of the services that they provide.

51.    Moreover, having continued in the course of conduct after being advised of Plaintiff's claims, Defendants have engaged in conduct warranting imposition of treble damages under the Act. However, in light of the difficulty in proving loss of future work in a matter such as this, Plaintiff is seeking only its out of pocket costs in hiring an advertising agency and related expenses to address Defendants' campaign (trebled), plus its attorney's fees herein.

52.    Plaintiff seeks preliminary and permanent injunctive relief and damages as set forth above.

53.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff Wilcox & Fetzer Ltd. demands that the Court enter its Orders, Judgments, and Decrees:

    a.    Preliminarily and permanently enjoining Defendants from using the name Corbett & Wilcox;

    b.    Preliminary and permanently enjoining Defendants from using advertising copy, for any purpose at any time, which suggest that it has merged or "joined forces" with Wilcox & Fetzer;

    c.    Requiring all stationery including transcript pages, covers and binders, mailings, advertisements, invoices, telephone listings, directory listings, invoices, web sites, business cards, printings of any sort, signs and announcements containing the firm name to contain the following conspicuously placed legend in easily readable type

size: "[FIRM NAME] is not affiliated in any way with Wilcox & Fetzer, Court Reporters";

d.     Requiring Defendants to publish, at their cost, a retraction of the same size and placement as their original advertisement in the next issue of the *Delaware Lawyer* which carries the aforementioned legend and makes clear that Plaintiff and Defendants have never "joined forces";

e.     Requiring a correction to be placed conspicuously on the first page of the *News Journal* Delaware Business section, the *Cecil Business Ledger, The Business Ledger* and any other press outlet in which Defendant's misleading statements are reported, at Defendants' expense making clear that Plaintiff and Defendant have not merged or agreed to do so;

f.     Requiring Defendants to correspond directly in a non-misleading manner with all Delaware government attorneys and all attorneys in Cecil County, Maryland.

g.     Requiring Defendants to correct their web site to omit misleading information contained therein.

h.     Requiring Defendants to place a full page announcement in the *Journal of Court Reporting* making clear that they did not merge or "join forces with" Plaintiff;

i.     Awarding treble damages for violation of the Act, together with pre and post judgment interest;

j.     Awarding Plaintiff its costs, fees and expenses incurred in prosecuting this action, including attorneys' fees; and

k.     Granting Plaintiff such other and further relief as may be just or equitable in the circumstances.

Gregory V. Varallo (#2242)
Geoffrey G. Grivner (#4711)
Richards, Layton & Finger, P.A.
One Rodney Square
10th & King Streets
Wilmington, Delaware 19801
302-651-7700
Attorneys for Plaintiff Wilcox & Fetzer, Ltd.

Dated: July 14, 2006

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were caused to be served on counsel

of record on July 14, 2006 by E-File/Service at the addresses indicated below:

### VIA E-FILE AND EMAIL

Jcp@pgslaw.com
bef@pgslaw.com

John C. Phillips, Jr. (DSBA #110)
Brian E. Farnan (DSBA # 4089)
Phillips Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806


Geoffrey G. Grivner (#4711)

## CERTIFICATE OF SERVICE

I, William M. Kelleher, certify that I have this day served a true and correct copy

of the below described pleading or motion upon opposing counsel at the address listed below:

Pleading or Motion served:               Answer to Complaint

Opposing Counsel:                        John C. Phillips, Jr., Esquire
                                         Brian E. Farnan, Esquire
                                         **Phillips, Goldman & Spence, P.A.**
                                         1200 North Broom Street
                                         Wilmington, DE  19806


Mode of Service:                         Via first class mail


                                         /s/ William M. Kelleher
                                         William M. Kelleher, Esquire (No. 3961)


Dated: September 11, 2006